1  Douglas J. Melton, Bar No. 161353
   Shane M. Cahill, Bar No. 227972
2  LONG & LEVIT LLP
   dmelton@longlevit.com
3  scahill@longlevit.com
   465 California Street, 5th Floor
4  San Francisco, California  94104
   Telephone:     (415) 397-2222
5  Facsimile:     (415) 397-6392

6  ATTORNEYS FOR PLAINTIFFS

7

8                     UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12  DEJA VU-SAN FRANCISCO, LLC; BIJOU-      Case No. 3:20-cv-03982
    CENTURY, LLC; SAN FRANCISCO
13  GARDEN OF EDEN, LLC; DEJA VU            PLAINTIFFS' AMENDED NOTICE OF
    SHOWGIRLS OF SAN FRANCISCO, LLC;       MOTION AND MOTION FOR TEMPORARY
14  GOLD CLUB-SF, LLC; DEJA VU             RESTRAINING ORDER AND PRELIMINARY
    COLORADO SPRINGS, INC.; ROUGE         INJUNCTION PURSUANT TO CIVIL L.R. 65-
15  PORTLAND, LLC; DEJA VU SPOKANE,        1; MEMORANDUM OF POINTS AND
    INC.; DREAMGIRLS OF LAKE CITY, LLC;    AUTHORITIES IN SUPPORT THEREOF
16  DEJA VU SEATTLE, LLC; DEJA VU LAKE
    CITY, INC.; DREAMGIRLS OF TACOMA,
17  LLC; AND DREAMGIRLS OF SEATTLE,        Date:           July 30, 2020
    LLC.                                   Time:           9:30 a.m.
18                                         Courtroom:      B – 15th Floor
                                           Judge:          Hon. Magistrate Laurel
19              Plaintiffs,                                Beeler

20         v.

21  UNITED STATES SMALL BUSINESS
    ADMINISTRATION, et al.
22
                Defendants.
23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ....................................................................................................4

ARGUMENT ........................................................................................................................8

    I.      TRO AND PRELIMINARY INJUNCTION STANDARDS ....................................8

    II.     THE REGULATIONS ARE REVIEWABLE BY THIS COURT .............................9

    III.    PLAINTIFFS ARE ENTITLED TO A TRO AND PRELIMINARY
           INJUNCTION ......................................................................................... 10

        A.      Plaintiffs Have a Substantial Likelihood of Success ......................................10

            i.   The SBA Lacks the Authority to Restrict the Scope of the
                 Emergency EIDL Provisions of the CARES Act .......................................10

            ii.  The Regulation is Not the Product of Reasoned Decision-Making ...........13

            iii.  The Regulation Violates the First Amendment ...........................................16

                 a.   The Regulation is an Impermissible Content-Based
                    Restriction on Speech ......................................................................16

                 b.   The Regulation is an Impermissible Viewpoint-Based
                      Restriction on Speech ......................................................................18

                 c.   The Regulation is Unconstitutionally Overbroad ..................................21

                 d.   The Regulation Fails to Conform to the Constitutional
                     Standards of Obscenity ....................................................................22

                 e.   The Regulation Violates the Doctrine of Unconstitutional
                     Conditions and Effectuates a Prior Restraint Upon Speech and
                     Expression ......................................................................................27

             iv.  The Regulation is Impermissibly Vague ....................................................29

             v.   The Regulation Violates the Equal Protection and Occupational
                   Liberty Components of the Fifth Amendment ............................................31

         B.      Plaintiffs Will Suffer Irreparable Harm if this Court does Not Issue an
             Injunction ........................................................................................................33

ii

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

C.      An Injunction Would Cause No Harm to Others and the Public Interest
Weighs in Favor of the Entry of an Injunction ...................................................34

IV.      NO BOND SHOULD BE REQUIRED ....................................................................35

CONCLUSION.............................................................................................................................35

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

iii

## **TABLE OF AUTHORITIES**

## **Cases**

Allgeyer v. La., 165 U.S. 578, 590 (1897)............................................................ 32

Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue ("Altera"), 926 F.3d 1061, 1080 (9th Cir. 2019) ......................................................................................... 15, 16

Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1474 (9th Cir. 1985).......... 33

American Booksellers Association v. Hudnut, 771 F.2d 323, 324-25 (7th Cir. 1985), aff'd 475 U.S. 1001 (1986)....................................................................................... 19

Ascot Dinner Theatre, Ltd. v. Small Bus. Admin., 887 F.2d 1024 (10th Cir. 1989)................... 15

Barnes v. Glen Theatre, Inc., 501 U.S. 560, 565 (1991)................................................ 17

Bennett v. Spear, 520 U.S. 154, 178 (1997) ............................................................ 10

Book Friends, Inc. v. Taft, 223 F.Supp.2d 932, 936 (S.D. Ohio 2002)................................. 23

Bowen v. Am. Hosp. Ass'n, 476 U.S. 610, 626 (1986).................................................. 12

Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 498-99 (1985)...................................... 24

California Teachers Ass'n v. State Bd. of Educ., 271 F.3d 1141, 1150 (9th Cir. 2001)... 29, 30, 31

Californians for Renewable Energy v. United States Envtl. Prot. Agency, No. C 15-3292 SBA, 2018 WL 1586211, at *5 (N.D. Cal. Mar. 30, 2018)................................................. 11

Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin., -- F. Supp. 3d --, No. 20-C-0601, 2020 WL 2088637 (E.D. Wis. May 1, 2020) ....................................... passim

Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin., No. 20-1729 (7th Cir., May 20, 2020) ..................................................................................... 8

Cammarano v. United States, 358 U.S. 498, 513 (1959)................................................ 21

Camreta v. Greene, 563 U.S. 692, 705 (2011)........................................................... 17

Capital Cities Media, Inc. v. Toole, 463 U.S. 1303, 1305 (1983) ..................................... 28

Carey v. Populations Services Int'l, 431 U.S. 678, 701 (1977)......................................... 23

Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc. ("Chevron"), 467 U.S. 837, 842 (1984) . 11, 12

Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948) ......................... 10

Cincinnati Bell Tel. Co. v. F.C.C., 69 F.3d 752, 763-65 (6th Cir. 1995) ............................ 14

Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 429 (1993).................................... 18

iv

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

City & Cty. of San Francisco v. U.S. Citizenship & Immigration Servs., 408 F. Supp. 3d 1057, 1121 (N.D. Cal. 2019) ........................................................................................... 11, 12

City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) ................................ 32

City of Erie v. Pap's A.M., 529 U.S. 277, 289 (2000)................................................................. 17

City of Los Angeles v. Barr, 929 F.3d 1163, 1174 (9th Cir. 2019)............................................. 28

Comite de Jornaleros de Redondo Beach v. City of Redondo Beach ("Comite"), 657 F.3d 936, 944 (9th Cir. 2011).............................................................................................................. 22

Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 379 (6th Cir. 2011) .................. 31

Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville, 274 F.3d 377, 396-97 (6th Cir. 2001). 17

Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011) ................................................................. 35

Doe v. Harris, No. C12-5713 TEH, 2012 WL 6101870, at *1 (N.D. Cal. Nov. 7, 2012) ........... 34

Dream Palace v. Cty. of Maricopa, 384 F.3d 990, 1001 (9th Cir. 2004)..................................... 28

DV Diamond Club of Flint, LLC v. United States Small Bus. Admin., -- F. Supp. 3d --, No. 20-CV-10899, 2020 WL 2315880 (E.D. Mich. May 11, 2020).............................................. passim

DV Diamond Club of Flint, LLC v. United States Small Bus. Admin., No. 20-1437 (6th Cir., May 15, 2020)........................................................................................................................ 8

E. Bay Sanctuary Covenant v. Barr ("East Bay"), 385 F. Supp. 3d 922, 938, 951-52 (N.D. Cal.), order reinstated, 391 F. Supp. 3d 974 (N.D. Cal. 2019) .......................................... 15, 16

Elrod v. Burns, 427 U.S. 347, 373 (1976) .................................................................................. 33

Enquist v. Oregon Dep't of Agric., 478 F.3d 985, 997 (9th Cir. 2007), aff'd sub nom. Enquist v. Oregon Dep't of Agr., 553 U.S. 591 (2008)........................................................................ 32

F.C.C. v. Pacifica Foundation, 438 U.S. 726, 745 (1978) .......................................................... 23

First Resort, Inc. v. Herrera, 860 F.3d 1263, 1277 (9th Cir. 2017) ............................................ 19

Fraihat v. U.S. Immigration & Customs Enf't, No. EDCV191546JGBSHKX, 2020 WL 2759848, at *13 (C.D. Cal. Apr. 15, 2020)........................................................................................... 11

FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 225-26 (1990)..................................................... 28

G&V Lounge v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1077-78 (6th Cir. 1994) ... 28, 29

Ginsberg v. New York, 390 U.S. 676, 707 (1968) ................................................................. 25, 30

Goldie's Bookstore, Inc. v. Superior Court of State of Cal., 739 F.2d 466, 471 (9th Cir. 1984).. 33

Gonzales v. Oregon, 546 U.S. 243, 258, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006)...................... 12

v

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)...................................................... 29, 30

Harris v. McRae, 448 U.S. 297, 307 (1980) ................................................................. 17

Iancu v. Brunetti, 139 S. Ct. 2294, 2299 (2019) ............................................................ 19

J-R Distributors, Inc. v. Eikenberry, 725 F.2d 482, 492 (9th Cir. 1984)..................................... 24

Keyishian v. Board of Regents, 385 U.S. 589, 603-04 (1967) ................................................. 30

Klein v. City of San Clemente, 584 F.3d 1196, 1208 (9th Cir. 2009) .......................................... 34

Kolender v. Lawson, 461 U.S. 352, 358 (1983) .............................................................. 29

Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 757 (1988) ......................................... 29

Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001) .............................................. 31

Llewlyn v. Parkland Cty. Pros., 402 F. Supp. 1379, 1393 (E.D. Mich. 1975) ............................... 34

Luke Records, Inc. v. Navarro, 960 F.2d 134, 135 (11th Cir. 1992)....................................... 11, 25

Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445 (1988)................................. 17

Mahar v. Roes, 432 U.S. 464, 476 (1977) ..................................................................... 21

Marchese v. Shearson Hayden Stone, Inc., 822 F.2d 876, 878 (9th Cir. 1987)........................... 13

Matal v. Tam, 137 S. Ct. 1744, 1763 (2017) ................................................................. 19

Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) ................................................. 34

Miller v. California, 413 U.S. 15 (1973)........................................................ 7, 23, 24, 26

Mission Trace Inv., Ltd. v. Small Bus. Admin. ("Mission Trace"), 622 F. Supp. 687, 701 (D. Colo. 1985), rev'd in part sub nom. Ascot Dinner Theatre, Ltd. v. Small Bus. Admin., 887 F.2d 1024 (10th Cir. 1989) ................................................................. 15, 21

Moralez v. Vilsack, No. 1:16-CV-0282-AWI-BAM, 2016 WL 7404756, at *11 (E.D. Cal. Dec. 21, 2016), aff'd sub nom. Moralez v. Perdue, 770 F. App'x 348 (9th Cir. 2019) ................... 13

Moss v. U.S. Secret Serv., 572 F.3d 962, 970 (9th Cir. 2009) .............................................. 19

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co. ("State Farm"), 463 U.S. 29, 52 (1983)........................................................................ 14, 15, 16

NAACP v. Button, 371 U.S. 415, 138 (1963) .............................................................. 32

Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 812 (2003)........................................ 11

Near v. Minnesota, 283 U.S. 697, 711-13 (1931)........................................................... 28

Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976) ................................................. 28

vi

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

Penthouse Intern., Ltd. V. McAuliffe, 610 F.2d 1353, 1363 (5th Cir. 1980) ........................ 23, 26

Perry v. Sindermann, 408 U.S. 593, 597 (1972).......................................................... 28

Pope v. Illinois, 481 U.S. 497, 500-01 & n.3 (1987) ..................................................... 23

Port of Bos. Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970) .................................................................................................................. 10

Prison Legal News v. Stolle, 319 F.Supp.3d 830, 835 (E.D. Va. 2015)....................................... 19

Recycle for Change v. City of Oakland, 856 F.3d 666, 670 (9th Cir. 2017).............................. 17

Reed v. Town of Gilbert, 135 S. Ct. 2218, 2226-27 (2015) ....................................... 17, 18, 19, 32

Regan v. Taxation Without Representation of Wash., 461 U.S. 540 (1983)......................... 20, 21

Reno v. ACLU, 521 U.S. 844, 873 (1997) ................................................................ 23, 24, 26, 30

Rosenberger v. Rector & Visitors of Univ. of Virginia, 515 U.S. 819 (1995) ........................... 19

Roth v. United States, 354 U.S. 476, 487 n.20 (1957).................................................... 24

Sable Commc'ns of California, Inc. v. FCC, 492 U.S. 115, 126 (1989) ..................................... 23

Sammaranto v. First Judicial District Court, 303 F.3d 959, 974 (9th Cir. 2002) ....................... 34

San Diego Comm. V. Governing Bd., 790 F.2d 1471 (9th Cir. 1986) ......................................... 33

Sands N., Inc. v. City of Anchorage, Alaska, 537 F. Supp. 2d 1032, 1036 (D. Alaska 2007) ..... 28

SBA v. McClellan, 364 U.S. 446, 447 (1960) .......................................................... 14

Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 65-66 (1981) .................................... 17

Schurz Communications v. F.C.C. ("Schurz"), 982 F.2d 1043, 1049 (7th Cir. 1992) ........... 14, 15

Schwartzmiller v. Gardner, 752 F.2d 1341, 1345 (9th Cir. 1984)........................................... 29

Se. Promotions, Ltd. v. Conrad, 420 U.S. 546, 553 (1975) ................................................. 28

Sidney Coal Co. v. Soc. Sec. Admin., 427 F.3d 336, 341–42 (6th Cir. 2005) ........................... 11

Smith v. Goguen, 415 U.S. 566, 573 (1974)........................................................... 30

Smith v. United States, 431 U.S. 291, 300 n.6 (1977)........................................................ 23, 25

Spector Motor Serv. v. McLaughlin, 323 U.S. 101, 104 (1944) ................................................. 17

Trinity Lutheran Church of Columbia, Inc. v. Comer, 137 S. Ct. 2012, 2022 (2017) ............... 28

Twitter, Inc. v. Sessions, 263 F. Supp. 3d 803, 809 (N.D. Cal. 2017) ................................. 28, 29

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

United States v. Playboy Entm't Grp., Inc., 529 U.S. 803, 816-17 (2000) .................................. 18

United States v. Stevens, 559 U.S. 460, 473, 130 (2010) ............................................................ 21

Viacom Int'l Inc. v. F.C.C., 828 F. Supp. 741, 744 (N.D. Cal. 1993) ......................................... 33

Virginia v. Black, 538 U.S. 343, 358 (2003) ............................................................................... 17

Virginia v. Hicks, 539 U.S. 113, 119 (2003) ............................................................................... 22

Washington State Grange v. Washington State Republican Party ("Grange"), 552 U.S. 442, 449 n.6 (2008)........................................................................................................................... 22

Williams v Rhodes, 393 U.S. 23, 31 (1968) ................................................................................ 32

## Statutes

15 U.S.C. 633 .............................................................................................................................. 15

15 U.S.C.A. § 636 ..................................................................................................................... 3, 13

15 U.S.C.A. § 9009 ............................................................................................................... passim

28 U.S.C §§ 1391(c)(2) & (e)(1)(C); 1402(a) (2018) ................................................................. 11

28 USC § 1391 ............................................................................................................................. 11

5 U.S.C. § 702 (2018) .................................................................................................................. 10

5 U.S.C. § 704 (2018) .................................................................................................................. 10

5 U.S.C. § 706(2) (2018) .............................................................................................................. 10

CARES Act, Pub. L. 116-136 (Mar. 27, 2020), 134 Stat. 281 ................................................ 3, 34

Paycheck Protection Program and Health Care Enhancement Act, Pub. L. 116-136 (Apr. 24, 2020), 134 Stat. 621 (to be codified as 15 U.S.C. § 9009) ..................................................... 14

## Other Authorities

60 Fed. Reg. 58018-19 .................................................................................................................. 8

60 Fed. Reg. 64356 ........................................................................................................................ 7

60 Fed. Reg. 64360 ............................................................................................................... passim

63 Fed. Reg. 20140 ...................................................................................................................... 18

Coffman v. Queen of Valley Med. Ctr., 895 F.3d 717, 725 (9th Cir. 2018) ................................. 9

Coronavirus (COVID-19), SBA.gov, https://www.sba.gov/funding-programs/disaster-assistance/coronavirus-covid-19 (last visited Jun. 4, 2020) ................................................... 34

viii

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

Disaster Loan Program, 60 Fed. Reg. 58013 ................................................................. 8

Disaster Loan Program, 63 Fed. Reg. 46643 (Sept. 2, 1998) ...................................... 9, 10, 15, 16

<u>FREQUENTLY ASKED QUESTIONS REGARDING PARTICIPATION OF FAITH-BASED
ORGANIZATIONS IN . . . ECONOMIC INJURY DISASTER LOAN PROGRAM (EIDL)</u>,
https://www.sba.gov/sites/default/files/2020-04/SBA%20Faith-Based% 20FAQ%20Final.pdf
(last accessed Jun 9, 2020).................................................................................................. 20

Gwen Aviles, <u>Fifty Shades of Grey was the Best-Selling Book of the Decade</u>, NBC News (Dec.
20, 2019, 11:17 AM), https://www.nbcnews.com/pop-culture/books/fifty-shades-grey-was-
best-selling-book-decade-n1105731 (last accessed Jun. 9, 2020) ............................................ 22

<u>Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.</u>, 240 F.3d 832, 839 n.7 (9th Cir. 2001).. 10

<u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008) ...................................................... 9

**Rules**

Fed. R. Civ. P. 65 ...................................................................................................................... 35

**Treatises**

17 Moore's Federal Practice – Civil § 110.31 (2019) ................................................................ 11

**Regulations**

13 C.F.R § 123.301 ............................................................................................................ passim

13 C.F.R. § 120.110 ........................................................................................................... passim

13 C.F.R. § 123.201 ........................................................................................................... passim

13 C.F.R. § 123.303 .................................................................................................................. 13

SBA Interim Final Rule, 85 Fed. Reg. 21751 (Apr. 20, 2020).................................................. 22

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

Whether 13 C.F.R. § 123.201(f), as incorporated under 13 C.F.R § 123.301 as eligibility criteria for Economic Injury Disaster Loan qualification, is unconstitutional, both facially and as applied; is overbroad; and/or exceeds the regulatory authority provided to the Small Business Administration by the Emergency EIDL Grants component of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) to broadly address the economic catastrophe caused by the current pandemic?

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

x

1

### <u>INDEX OF EXHIBITS</u>

2

3

EXHIBIT A   <u>DV Diamond Club of Flint, LLC v. United States Small Bus. Admin.</u>, -- F. Supp.
3d --, No. 20-CV-10899, 2020 WL 2315880 (E.D. Mich. May 11, 2020)

4

5

EXHIBIT B   <u>Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.</u>, -- F. Supp. 3d
--, No. 20-C-0601, 2020 WL 2088637 (E.D. Wis. May 1, 2020)

6

EXHIBIT C   <u>DV Diamond Club of Flint, LLC v. United States Small Bus. Admin.</u>, No. 20-
1437 (6th Cir., May 15, 2020)

7

8

EXHIBIT D   <u>Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.</u>, No. 20-1729
(7th Cir., May 20, 2020)

9

10

11

12

EXHIBIT E   US Small Business Administration, Faith-Based Organizations FAQ -
FREQUENTLY ASKED QUESTIONS REGARDING PARTICIPATION OF
FAITH-BASED ORGANIZATIONS IN . . . ECONOMIC INJURY DISASTER
LOAN PROGRAM (EIDL), https://www.sba.gov/sites/default/files/2020-
04/SBA%20Faith-Based% 20FAQ%20Final.pdf (last accessed Jun 9, 2020)

13

14

15

EXHIBIT F   Defendants' Brief in Opposition to Plaintiffs' Renewed Emergency Motion For
Temporary Restraining Order and Preliminary Injunction, <u>DV Diamond Club of
Flint, LLC v. United States Small Bus. Admin.</u>, -- F. Supp. 3d --, No. 20-CV-
10899, 2020 WL 2315880 (E.D. Mich. May 11, 2020), ECF No. 24, PgID.687,
711

16

EXHIBIT G   SBA Interim Final Rule, 85 Fed. Reg. 21747, 51 (Apr. 20, 2020)

17

18

EXHIBIT H   Government's Emergency Motion for Stay Pending Appeal and Immediate
Administrative Stay, <u>Camelot Banquet Rooms, Inc. v. United States Small Bus.
Admin.</u>, No. 20-1729 (7th Cir., May 20, 2020), Doc. 4, pp. 12-14, 17

19

20

EXHIBIT I   First Amended Complaint

21

EXHIBIT J   Code of Federal Regulations, Title 13, Part 123, sections 123.1 through
123.303—Disaster Loan Program

22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on July 30, 2020 at 9:30 a.m. in Courtroom B – 15th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 9410s, Plaintiffs, by and through their undersigned counsel of record and pursuant to Fed. R. Civ. P. 65 and Civil L.R. 65-1, will and do hereby move this Honorable Court for entry of an Emergency Restraining Order ("TRO") and Preliminary Injunction prohibiting the Small Business Administration ("SBA") and Jovita Carranza in her official capacity as the Administrator thereof (collectively "Defendants") from enforcing 13 C.F.R. § 123.201(f) (1998) (the "Regulation") against Plaintiffs and their interests under the Emergency EIDL [Economic Injury Disaster Loans] Grant program (hereafter, "EIDL" or "Emergency EIDL Grant Program") of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").

For the reasons set forth herein and in the materials attached and cited herein, the verified pleadings, and such other materials and argument as may be presented in connection with the hearing on this motion, Plaintiffs respectfully request this Honorable Court:

A.      Issue a Temporary Restraining Order and Preliminary Injunction enjoining Defendants, as well as their employees, agents, and representatives, from enforcing or utilizing in any fashion or manner whatsoever, 13 C.F.R. § 123.201(f) in regard to EIDL applications made by Plaintiffs pursuant to the Emergency EIDL Grant Program of the CARES Act.  As part of that relief, Plaintiffs further request this Honorable Court to:

1.      Order the Defendants, as well as their employees, agents, and representatives, to notify, as expeditiously as possible, all SBA district and regional offices, as well as the Application Processing Department of the Disaster Assistance Office, to immediately discontinue

- 1-

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

utilizing 13 C.F.R. § 123.201(f) in their EIDL applications and as criteria for determining

eligibility thereof, and to fully process EIDL applications without reference to that Regulation;

2.     Order the Defendants to remove from the Online and print Emergency EIDL

Application the Regulation's language from the eligibility criteria box;

3.     Order the Defendants, as well as their employees, agents, and representatives, to

reconsider and grant all EIDL applications of the Plaintiffs if they are otherwise qualified for such

loans but for the Regulation;

4.     Order the Defendants, as well as their employees, agents, and representatives,

including the Application Processing Department of the Disaster Assistance Office, to restore

Plaintiffs to their place in the application queue as they were at the time that their applications

were electronically received by the SBA and before they were improperly denied because of the

Regulation; and

B.     Enter such other and further relief as this Court may deem to be warranted in these

circumstances.

Pursuant to Civil L.R. 65-1(b), counsel for Plaintiffs provided notice to Eric Adams,

Christina Goebelsmann, James Gilligan and Indraneel Sur, counsel for Defendants, on June 15,

2020 by e-mail. Counsel for Plaintiffs will promptly send a copy of these filings to the same by

email.

## **INTRODUCTION**

The coronavirus pandemic has affected virtually every business in our country and every

person employed thereby.  This Court needs no supporting authority to know that this is nothing

short of an economic catastrophe.  As a result of these financial difficulties, Congress passed the

Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act" or simply "the Act"),

which created, among other things, 15 U.S.C.A. § 9009 (West 2020), the Emergency EIDL Grant

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Program (hereafter, "EIDL" or the "Emergency EIDL").  *See,* CARES Act, Pub. L. 116-136 (Mar. 27, 2020), 134 Stat. 281.  Specifically, the CARES Act allocated $10 billion to the Emergency EIDL ("Economic Injury Disaster Loans") Grant Program administered by the Small Business Administration ("SBA") and *expanded* the eligibility criteria thereto.  Id.

Plaintiffs – who are engaged in First Amendment protected businesses – sought EIDL's, with the SBA recently denying such funds because it disagrees with Plaintiffs' speech.  This action, therefore, was initiated to obtain an immediate injunction against one short provision of 13 C.F.R. § 123.201 (2020)[1] (in particular, subsection (f) thereof; hereafter referred to as the "Regulation") that the SBA is using to deny Plaintiffs EIDL's which bars *general* or *traditional* SBA disaster loans to businesses that present, or derive a non-*de minimus* portion of their gross revenues from, entertainment that is of an *undefined* "prurient sexual nature."

First, this prohibition is *not* contained in the recent pandemic legislation and was imposed upon the Emergency EIDL program by the SBA through actions that exceeded congressional authority.  This is established by the recent decisions of other courts involving different but similar parts of the CARES Act.

The Regulation's particular exclusion is also found in the SBA's eligibility criteria for its "Section 7(a)" general small business loans.  13 C.F.R. § 120.110(p) (2020).  Under the CARES Act, Congress passed the Paycheck Protection Program ("PPP"), which provided forgivable loans to small businesses in order to maintain their payroll.  *See generally*, 15 U.S.C.A. § 636(a)(36) (West 2020).  Although not contained in the PPP portion of the CARES Act, the SBA nevertheless applied 13 C.F.R. § 120.110(p) (2020) -- which contains nearly identical language as the Regulation -- to disqualify adult entertainment venues similar to the Plaintiffs from PPP

---

[1] The traditional EIDL eligibility criteria is found 13 C.F.R. § 123.301 (2020), which in turn incorporates the eligibility criteria for "Physical Disaster Business Loans" found in 13 C.F.R. § 123.201 (2020).

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

funds.  The Eastern District of Michigan and the Eastern District of Wisconsin both found this regulatory exclusion to have exceeded the authority granted to the SBA by Congress when it enacted the very broad emergency economic relief contained in the PPP portion of the CARES Act (**Ex.'s A** and **B**, respectively), with the Sixth and Seventh Circuits declining to enter stays requested by the SBA (**Ex.'s C** and **D**).  Plaintiffs assert the same conclusion is mandated here in regard to the SBA's application of this Regulation to the CARES Act's Emergency EIDL program.

Second, the Regulation is unconstitutional, both facially and as applied here, in numerous regards.  It violates the First Amendment in that it is content and viewpoint discriminatory, it fails to conform to the legal standards of obscenity, it is impermissibly overbroad (as a result of how the SBA has "interpreted" these provisions in the litigation referenced above) and it effectuates an impermissible prior restraint upon speech and expression;  it is impermissibly vague and provides *no standards whatsoever* to permit either applicants or SBA officials to determine whether a loan application should be denied based on its proscriptions; it violates the doctrine of unconstitutional conditions; and it violates both the Equal Protection Clause and the occupational Liberty Clause of the Fifth Amendment.  The Wisconsin district court found in favor of a number of these claims.  See **Ex. B** at pp. 7-9.

Injunctive relief is warranted for a number of reasons.  First, infringement of Plaintiffs' First Amendment rights is irreparable as a matter of law and stopping ongoing enforcement of unconstitutional regulations is always in the public's interest.  Plaintiffs also present a compelling case of economic injury that is irreparable.  Moreover, because the total amount of money available for Emergency EIDLs is limited by statute and because that amount is quickly being depleted by the loan applications of others, unless this Court *immediately* grants the emergency relief requested herein the Plaintiffs *and more importantly their employees* will be irreparably

- 4 -

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

harmed by being denied the economic assistance afforded under the broad relief as ordered by

Congress.  Finally, Plaintiffs have a strong likelihood of success on both their administrative

challenges and their constitutional claims as evinced by the two district court decisions referenced

above.

## STATEMENT OF FACTS

Plaintiffs own and operate venues that present constitutionally protected clothed, semi-

nude, and/or nude performance entertainment.   Verified First Amended Complaint for

Declaratory and Injunctive Relief ("Complaint") (Exhibit I), ¶70.  Neither Plaintiffs' businesses

nor the entertainers who perform on their premises have *ever* been charged, let alone convicted,

of any crimes of obscenity. Id. at ¶71.

The CARES Act became law on March 27, 2020.[2]  Section 1110 thereof created the

Emergency EIDL program (Complaint, ¶47, codified as 15 U.S.C. § 9009), funded the same to a

maximum of $10,000,000,000[3] (CARES Act, Sec. 1107(a)(6); 15 U.S.C.A. § 9006 (West 2020)),

and generally grants the SBA oversight authority of the program.  The EIDL also explicitly

increases eligibility for small businesses and organizations to be able to obtain these types of

emergency loans from the SBA; prescribes certain allowable uses for EIDL grants; outlines

grant/loan caps, repayment requirements, and required documentation; and details the terms of

the loans. *See generally* 15 U.S.C.A. § 9009 (West 2020).

The Emergency EIDL program defines "eligible entity[ies]" as including:

**(A)** a business with not more than 500 employees;

---

[2] For a complete Congressional Record of the Bill, see Summary on H.R. 748, https://www.congress.gov/bill/116th-congress/house-bill/748/actions?q={%22search%22:[%22hr+748%22]}&r=1&s=1&KWICView=false (last visited Jun. 2, 2020).

[3] The CARES Act originally funded the Grant portion, 15 U.S.C.A § 9009(e) (West 2020), to $10,000,000,000, but this portion was later increased $20,000,000,000 by the Paycheck Protection Program and Health Care Enhancement Act, Pub. L. 116-139 (Apr. 24, 2020), 134 Stat. 620; 15 U.S.C. § 9009(e)(8) (2020).

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**(B)** any individual who operates under a sole proprietorship, with or without employees, or as an independent contractor;

**(C)** a cooperative with not more than 500 employees;

**(D)** an ESOP (as defined in section 632 of this title) with not more than 500 employees;

**(E)** a tribal small business concern, as described in section 657a(b)(2)(C) of this title, with not more than 500 employees; or

**(F)** an agricultural enterprise (as defined in section 647(b) of this title) with not more than 500 employees.

15 U.S.C.A. § 9009(a)(2)(A)-(F) (West 2020).  It then states: "During the covered period, *in addition to* small business concerns, private nonprofit organizations, and small agriculture cooperatives, an eligible entity *shall be eligible* for a loan made under section 636(b)(2) of this title."  15 U.S.C.A § 9009(b) (West 2020) (emphasis added).

The SBA then, without promulgating a formal rule or administrative guidance, began applying the *traditional* Economic Injury Disaster Loan requirements found in 13 C.F.R. § 123.201 (2020) to Emergency EIDL program applicants, including the provisions of 13 C.F.R. § 123.301 (2020) (Exhibit J) which, in pertinent part, states: "Your business is not eligible for an economic disaster loan if you (or any principal of the business) fits into any of the categories in §§ 123.101 and *123.201* . . . ." 13 C.F.R. § 123.301 (2020) (emphasis added) (Exhibit J).  13 C.F.R. § 123.201 states, in pertinent part:

(f) You are not eligible if your business presents live performances of a *prurient sexual nature* or derives directly or indirectly more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a *prurient sexual nature*.

13 C.F.R. § 123.201 (2020) (emphasis added) (again, the Regulation challenged here).

In fact, this exclusion language appears on the SBA's Emergency EIDL application and ascribes sanctions for falsifying information.  The application states, in relevant part:

The Applicant understands that the SBA is relying upon the self-certifications contained in this application to verify that the Applicant is an eligible entity to receive the advance, and that the Applicant is providing this self-certification

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

under penalty of perjury pursuant to 28 U.S.C. 1746 for verification purposes.

\* \* \*

Applicant must review and check all of the following (if Applicant is unable to check all of the following, Applicant is not an Eligible Entity):

\* \* \*

Applicant does not present live performances of a prurient sexual nature or derive directly or indirectly more than de minimus gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature.

Complaint, ¶¶67-68.[4]

As stated above, this exclusion is similar to other SBA regulations that apply to other loan programs.  In the mid-1990s the SBA undertook a consolidation and revision of its regulatory scheme.  Following the promulgation of a Proposed Rule, *see generally*, 60 Fed. Reg. 64356 et seq., and in particular 60 Fed. Reg. 64360; Complaint, ¶59, it adopted 13 C.F.R. § 120.110 in 1996 as applicable to all then-existing SBA general *business* loans.  In particular, 13 C.F.R. § 120.110 reads:

The following types of businesses are *ineligible*:
. . .
(p) Businesses which:
(1) Present live performances of a *prurient sexual nature*; or
(2) Derive directly or indirectly more than *de minimis* gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a *prurient sexual nature*.

13 C.F.R. § 120.110(p) (2020) (emphasis added and in original) (Exhibit J).

The reasoning behind this newly created (in 1996) section of the code is detailed in the Proposed Rule on 60 Fed. Reg. 64360, Complaint, ¶59, which specifically invoked the landmark "obscenity" case, <u>Miller v. California</u>, 413 U.S. 15 (1973).  Notably, multiple courts have held this exclusion found in the SBA's *general* business loan regulations to be legally *inapplicable* to the PPP established in the CARES Act, with one court also finding it to be blatantly unconstitutional.  *See* <u>DV Diamond Club of Flint, LLC v. United States Small Bus. Admin.</u>, -- F.

---

[4] Also found at https://covid19relief.sba.gov/#/ (last visited Jun. 12, 2020).

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Supp. 3d --, No. 20-CV-10899, 2020 WL 2315880 (E.D. Mich. May 11, 2020) ("<u>Diamond Club</u>") (enjoining the SBA from enforcing 13 C.F.R. § 120.110(p) against PPP applicants by finding that the SBA had exceeded congressional authority) (**Ex. A**); <u>DV Diamond Club of Flint, LLC v. United States Small Bus. Admin.</u>, No. 20-1437 (6th Cir., May 15, 2020) (denying the SBA's motion for stay of the district court's injunction precluding the SBA from enforcing 13 C.F.R. § 120.110(p) against PPP applicants) (**Ex. C**); <u>Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.</u>, -- F. Supp. 3d --, No. 20-C-0601, 2020 WL 2088637 (E.D. Wis. May 1, 2020) ("<u>Camelot</u>") (also enjoining the SBA from enforcing 13 C.F.R. § 120.110(p) against PPP applicants for the same reason and also finding it to be unconstitutional) (**Ex. B**); <u>Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.</u>, No. 20-1729 (7th Cir., May 20, 2020) (similarly denying the SBA's motion for a stay pending an appeal) (**Ex. D**).  Irrespective of the detailed briefing below, a simple review by this Court of the two district court decisions, *supra*, establishes beyond doubt why this Regulation should be enjoined as well.

As it pertains to the Regulation at issue, as part of the same regulatory scheme restructuring the SBA reorganized the entire regulatory scheme covering the disaster loan program.  *See* Disaster Loan Program, 60 Fed. Reg. 58013 et seq., (proposed Nov. 24, 1995) (to be codified at 13 C.F.R. § 123 et seq.); Complaint, ¶61-62.  This was the first time 13 C.F.R. § 123.301 ("When would my business not be eligible to apply for an economic injury disaster loan?") referenced 13 C.F.R. § 123.201 as eligibility criteria.  At that time, the proposed version of 13 C.F.R. § 123.201 did *not* contain the current sub-category (f) (the Regulation at issue).  *See* 60 Fed. Reg. 58018-19; again, Complaint, ¶61-62.

In 1998, the SBA issued a Proposed Rule to amend the Disaster Loan Program to "codify the SBA's existing policy of using the same ineligibility criteria for its economic injury disaster and business loan program[s]." Disaster Loan Program, 63 Fed. Reg. 20140 (proposed Apr. 23,

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1998) (to be codified at 13 C.F.R. § 123 et seq.); Complaint, ¶63.  This Proposed Rule

incorporated the Regulation at issue for the first time into the SBA's Disaster Loan Program.  Id.

The Proposed Rule received only one comment, and the SBA issued a final rule codifying the

Regulation as it stands today.  *See* Disaster Loan Program, 63 Fed. Reg. 46643 (Sept. 2, 1998) (to

be codified at 13 C.F.R. § 123 et. seq.); Complaint, ¶64.

On April 16, 2020, Plaintiff Deja Vu – San Francisco, LLC ("DV San Francisco")

submitted an application for an EIDL containing a certification that it was *eligible* for an EIDL.

Complaint, ¶¶67-76.  On May 23, 2020, DV San Francisco received a letter from the SBA

denying its application for the reason:

> **Business activity not eligible. EIDL assistance is available only to a small business engaged in eligible business activity. Business activity means the nature of the business conducted by the applicant.**

Complaint, ¶78 (emphasis in original).  From information provided by the SBA, DV San

Francisco understands that the basis of the business "nature" rejection was the Regulation.

Complaint, ¶92.  All other Plaintiffs applied for EIDLs and received similar rejection letters.

Complaint, ¶¶78-94.  Plaintiffs are otherwise eligible for CARES Act EIDLs but for the

Regulation.  Complaint, ¶75.

## <u>ARGUMENT</u>

## I.     TRO AND PRELIMINARY INJUNCTION STANDARDS

When determining whether to grant or deny a motion for preliminary injunction, this

Court must weigh: (1) whether the movant has a strong likelihood of success on the merits; (2)

whether the movant would suffer irreparable harm in the absence of injunctive relief; (3) whether

a balance of equities favors the movant; and (4) whether the public interest would be advanced by

the issuance of the injunction.  <u>Coffman v. Queen of Valley Med. Ctr.</u>, 895 F.3d 717, 725 (9th

Cir. 2018) (citing <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008)).  The "analysis is

- 9 -

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1    substantially identical for [an] injunction and the TRO [temporary restraining order]."  Stuhlbarg

2    Int'l Sales Co., Inc. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001); see Lopez

3    Reyes v. Bonnar, 362 F. Supp. 3d 762, 771 (N.D. Cal. 2019) (noting the same).  These standards

4    warrant the entry of a TRO and preliminary injunction here.

5
6    **II.    THE REGULATION IS REVIEWABLE BY THIS COURT**

7            Plaintiffs invoke the Declaratory Judgment Act and ask the Court to declare their

8    constitutional, statutory, and regulatory rights in relation to the SBA's enforcement of the

9    Regulation. 28 U.S.C. § 2201 (2018).  Further, pursuant to 5 U.S.C. § 702 (2018), Plaintiffs seek

10   immediate emergency injunctive relief against Defendants.  5 U.S.C. § 701 et seq. provides a

11   waiver of federal sovereign immunity under certain circumstances.  One such waiver is for "final

12   agency actions for which there is no other adequate remedy in a court . . . ."  5 U.S.C. § 704

13   (2018).  Under this waiver, Plaintiffs request this Court to "hold unlawful and set aside" the

14   Regulation as "contrary to constitutional right, power, privilege, or immunity . . . in excess of

15   statutory jurisdiction, authority, or limitations, or short of statutory right [and] without observance

16   of procedure required by law." 5 U.S.C. § 706(2) (2018).

17
18           The Regulation is a final rule, see 63 Fed. Reg. 46643 (Sept. 2, 1998); Complaint, **¶60,**

19   and the questions presented to this Court are purely legal ones.[5]  Additionally, venue in this Court

20   is appropriate for all Plaintiffs as Plaintiff DV San Francisco and a number of the other Plaintiffs

21   reside within the Northern District of California. 28 U.S.C §§ 1391(c)(2) & (e)(1)(C); 1402(a)

22
23
24

---

25   [5] For an agency action to qualify as final, the action must 1) not be tentative or interlocutory in
26   nature, but must be the "'consummation' of the agency's decision-making process," Bennett v.
     Spear, 520 U.S. 154, 178 (1997) (quoting Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp., 333
27   U.S. 103, 113 (1948)), and 2) must be an action "by which 'rights or obligations have been
     determined,' or from which 'legal consequences will flow.'" Id. (quoting Port of Bos. Marine
28   Terminal Assn. v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970)).

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1   (2018).[6]  Therefore, this Court may properly hear this matter and issue the requested relief.

2   **III.      PLAINTIFFS ARE ENTITLED TO A TRO AND PRELIMINARY INJUNCTION**

3          **A.  Plaintiffs Have A Substantial Likelihood of Success**

4               **i.   The SBA Lacks the Authority to Restrict the Scope of the Emergency
5                      EIDL Provisions of the CARES Act**

6          Before the Court is the purely legal question of whether, under the CARES Act, the SBA

7   may apply regulations that deny eligibility for *traditional* EIDLs to the *Emergency* EIDL

8   program.  "When the question presented 'is a purely legal one' that 'constitutes final agency

9   action within the meaning of § 10 of the APA [Administrative Procedures Act, 5 U.S.C. §§ 701-

10  706],' that suggests the issue is fit for judicial decision."  City & Cty. of San Francisco v. U.S.

11  Citizenship & Immigration Servs., 408 F. Supp. 3d 1057, 1121 (N.D. Cal. 2019) (clarification

12  added) (quoting Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 812 (2003)).  Final

13  agency actions are reviewable under the familiar Chevron, U.S.A., Inc. v. Nat. Res. Def. Council,

14  Inc. ("Chevron"), 467 U.S. 837, 842 (1984) two-step analysis, which this Court recently

15  summarized:

16              "In the usual course, when an agency is authorized by Congress to issue
                regulations and promulgates a regulation interpreting a statute it enforces, the
17              interpretation receives deference if the statute is ambiguous and if the agency's
                interpretation is reasonable. This principle is implemented by the two-step analysis
18              set forth in Chevron." Encino Motorcars, LLC v. Navarro, ―― U.S. ――, 136 S.
                Ct. 2117, 2124, 195 L.Ed.2d 382 (2016) . . .  "At the first step, a court must
19              determine whether Congress has 'directly spoken to the precise question at issue.'
                If so, 'that is the end of the matter; for the court, as well as the agency, must give

_____

[6] A corporation is deemed to be a resident of "the judicial district in which it maintains its
principle place of business." 28 U.S.C. § 1391(c)(2). *See also* Fraihat v. U.S. Immigration &
Customs Enf't, No. EDCV191546JGBSHKX, 2020 WL 2759848, at *13 (C.D. Cal. Apr. 15,
2020) (quoting 17 Moore's Federal Practice – Civil § 110.31 (2019) ("Only one plaintiff must
reside in the district in order for venue to be proper with respect to any additional plaintiffs."); *see
also* Californians for Renewable Energy v. United States Envtl. Prot. Agency, No. C 15-3292
SBA, 2018 WL 1586211, at *5 (N.D. Cal. Mar. 30, 2018) (discussing the issue and citing Sidney
Coal Co. v. Soc. Sec. Admin., 427 F.3d 336, 341–42 (6th Cir. 2005)).

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1
2
3

effect to the unambiguously expressed intent of Congress.' If not, then at the second step the court must defer to the agency's interpretation if it is 'reasonable.' " <u>Encino Motorcars</u>, 136 S. Ct. at 2124–25 (citations omitted) (quoting <u>Chevron</u>, 467 U.S. at 842–44, 104 S.Ct. 2778).

4
5
6
7
8
9
10
11

'If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." <u>Chevron</u>, 467 U.S. at 843, 104 S.Ct. 2778 . . . The <u>Chevron</u> analysis calls upon the court to "employ[ ] traditional tools of statutory construction" to fulfill its role as "the final authority on issues of statutory construction[.]" <u>Chevron</u>, 467 U.S. at 843 n.9, 104 S.Ct. 2778 . . . "<u>Chevron</u> deference, however, is not accorded merely because the statute is ambiguous and an administrative official is involved. To begin with, the rule must be promulgated pursuant to authority Congress has delegated to the official." <u>Gonzales v. Oregon</u>, 546 U.S. 243, 258 (2006). "The starting point for this inquiry is, of course, the language of the delegation provision itself. In many cases authority is clear because the statute gives an agency broad power to enforce all provisions of the statute." <u>Id.</u>

12

<u>City & Cty. of San Francisco</u>, 408 F. Supp. 3d at 1079–80.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Section 1110 of the CARES Act, codified as 15 U.S.C. § 9009, defines the "covered period" from January 31, 2020 – December 31, 2020.  Additionally, an "eligible entity"—the sole eligibility criteria for Emergency EIDLs found in the CARES Act—is defined, as applicable to the instant motion, as "a business with not more than 500 employees . . . ."  15 U.S.C.A. § 9009(a)(2)(A) (West 2020).  The CARES Act also mandates that "[d]uring the covered period, ***in addition to*** small business concerns, private nonprofit organizations, and small agricultural cooperatives, an ***eligible entity*** **shall be eligible for a loan** made under section 636(b)(2) of this title." 15 U.S.C. § 9009(b) (West 2020) (emphasis added).  That's it; businesses meeting the definition of an "eligible entity" cited above "*shall be eligible for a loan*."  15 U.S.C. § 9009 (West 2020) (emphasis added).  However, the SBA then imposed its own, additional, eligibility criteria on top of the CARES Act's clearly defined broad criteria; citing absolutely *no authority* granted it to do so.  *See* <u>Bowen v. Am. Hosp. Ass'n</u>, 476 U.S. 610, 626 (1986) (noting the requirement that an agency provide an explanation of the basis for its decisions).

28

"Congress is presumed to be aware of 'existing administrative regulations' when it

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

legislates on that subject-matter." Moralez v. Vilsack, No. 1:16-CV-0282-AWI-BAM, 2016 WL

7404756, at *11 (E.D. Cal. Dec. 21, 2016), *aff'd sub nom.* Moralez v. Perdue, 770 F. App'x 348

(9th Cir. 2019) (quoting Marchese v. Shearson Hayden Stone, Inc., 822 F.2d 876, 878 (9th Cir.

1987)). Thus, it is presumed, and facially apparent from the CARES Act, that Congress was

aware of 13 CFR § 123.301 and its incorporation of 13 C.F.R. § 123.201's eligibility criteria,

feared its use to disqualify businesses from receiving *Emergency* EIDLs under the new program it

was creating, and wrote explicit *expansive* eligibility criteria for the Emergency EIDL program

separate and apart from the traditional EIDL program.

Moreover, a cursory examination of the purpose and scope of the two different loans

(traditional EIDLs and the Emergency EIDLs) demonstrates why Congress did not see fit to

include the Regulation's exclusions as part of its statute. Traditional EIDLs, 15 U.S.C.A. §

636(b), can be used for virtually anything; Congress placed no restrictions in the statute creating

the traditional EIDL program and under the SBA's own regulations traditional EIDLs may be

used for nearly any purpose, save for five specifically identified prohibited reasons. 13 C.F.R. §

123.303 (2020) (**Exhibit J**). In contrast, Congress, aware of the existing administrative

regulations, tailored the purposes for which the EIDL grants could be used for this particular

national emergency—the global pandemic. 15 U.S.C.A. § 9009(4)(A)-(E) (West 2020) (noting

authorized uses of the loans for paid sick leave, payroll, covering increased material costs due to

supply chain issues, making rent or mortgage payments, and repaying unmet obligations due to

revenue losses). Employees, suppliers, landlords, and mortgage holders should not be made to

suffer as a result of the Regulation. They have no connection to the form of entertainment

Plaintiffs present and these persons/entities have their *own bills* to pay. Congress' intentional

'overriding' of the traditional loan program's authorized uses in this Emergency EIDL context

clearly indicates Congress' knowledge of the SBA's regulatory scheme and desire to broaden

- 13 -

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

eligibility of the EIDL program.[7]

The Government will no doubt argue the Administrator has "extraordinarily broad," <u>SBA v. McClellan</u>, 364 U.S. 446, 447 (1960), authority, as it did against parallel restrictions it improperly applied to the PPP.  However, no agency head has such broad authority as to enact or apply rules in conflict with Congressional acts.  *See* <u>Diamond Club</u>, at *9; **Ex. A**, at p. 7.  Simply put, the authority the SBA had with respect to its legacy programs does not apply to the Emergency EIDL program when Congress has so clearly spoken on the eligibility issue.  And, rather than further briefing this issue here, this Court is rather referred to the *extensive* discussions on this topic in the <u>Diamond Club</u> and <u>Camelot</u> decisions attached as **Ex.'s A** (pp. 7-12) and **B** (pp. 4-6) respectively.

## ii.  <u>The Regulation Is Not the Product of Reasoned Decision-Making</u>

The SBA must do more than simply *claim* the Regulation is reasonable and within its authority.  Under the APA, the SBA's "statement accompanying the regulation 'must demonstrate that'" the regulation "'was a reasonable response to a problem that the agency was charged with solving.'"  <u>Camelot</u>, at *10 n.3 (quoting <u>Schurz Communications v. F.C.C.</u> ("<u>Schurz</u>"), 982 F.2d 1043, 1049 (7th Cir. 1992)); *see also* <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u> ("<u>State Farm</u>"), 463 U.S. 29, 52 (1983) (noting the requirement for "reasoned decisionmaking"); <u>Cincinnati Bell Tel. Co. v. F.C.C.</u>, 69 F.3d 752, 763-65 (6th Cir. 1995) (citing <u>Schurz</u> for the same propositions).

<u>Schurz</u> involved an F.C.C. regulation where the enabling statute similarly provided for the agency to act in accordance with the "public interest, convenience, or necessity." *Compare* 15

---

[7] Further evincing Congress' intent to solely control eligibility criteria for the Emergency EIDL Program, less than a month after passing the CARES Act it further expanded eligibility for this program to include "agricultural enterprise[s]."  Paycheck Protection Program and Health Care Enhancement Act, Pub. L. 116-136 (Apr. 24, 2020), 134 Stat. 621 (to be codified as 15 U.S.C. § 9009).

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

U.S.C. 633(d).  Still, the court explained:

> The difficult question presented by the petitions to review is not whether the Commission is authorized to restrict the networks' participation in program production and distribution. *It is whether the Commission has said enough to justify . . . the particular restrictions that it imposed in the order here challenged.* … It is not enough that a rule might be rational; *the statement accompanying its promulgation must show that it is rational—must demonstrate that a reasonable person upon consideration of all the points urged pro and con the rule would conclude that it was a reasonable response **to a problem that the agency was charged with solving**.* . . . The agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'

Id. at 1049 (emphasis added and citations omitted) (quoting State Farm, 463 U.S. at 52).[8]

As in Schurz, the "rule[] flunk[s] this test" for several reasons.  Id. at 1050. First, entertainment of the "prurient sexual nature" is not a 'problem' that the SBA is tasked with 'solving.'[9]  Second, the SBA's proffered justification for the Regulation is … lacking.  It justifies the Regulation stating the rule "codif[ies] [the] SBA's existing policy of using the same ineligibility criteria for SBA's disaster and business loan programs."  63 Fed. Reg. 46643.  This *presumes* the validity of the rationale behind the "existing policy," presumably being 13 C.F.R. § 120.110 (2020).  Interestingly, when the SBA issued an interim final rule making § 120.110(p) applicable to the PPP, the SBA justified the same "prurient" restrictions with the empty *pro forma* justification that the rule was "consistent with its obligation" to "direct its limited resources . . . [to] serve the public interests."  60 Fed. Reg. 64360, Complaint, ¶57.  Further, when the SBA promulgated 13 C.F.R. § 120.110(p), it cited the same justification:

---

[8] This jurisdiction follows these principles as well.  *See, e.g.*, E. Bay Sanctuary Covenant v. Barr ("East Bay"), 385 F. Supp. 3d 922, 938, 951-52 (N.D. Cal.), *order reinstated*, 391 F. Supp. 3d 974 (N.D. Cal. 2019) (noting the standards for a State Farm challenge); Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue ("Altera"), 926 F.3d 1061, 1080 (9th Cir. 2019) (same).

[9] This was pointed out to the SBA by at least one court back in 1985: "[t]he SBA does not have a legitimate interest in preventing government sponsorship of speech that it views as offensive to the public welfare." Mission Trace Inv., Ltd. v. Small Bus. Admin. ("Mission Trace"), 622 F. Supp. 687, 701 (D. Colo. 1985), *rev'd in part sub nom.* Ascot Dinner Theatre, Ltd. v. Small Bus. Admin., 887 F.2d 1024 (10th Cir. 1989).

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1
2
3
4

> SBA considers this proposed rule to be consistent with its obligation to direct its limited resources and financial assistance to small businesses in ways which will best accomplish the SBA's mission, serve its constituency, and serve the public interest. Applicants' First Amendment freedoms are in no way abridged. [except, as discussed *infra*, when they are].

5
6
7

60 Fed. Reg. 64360 (brackets added).  The public policy Congress made clear with the CARES

Act was, in summary, to keep businesses afloat through a deadly global pandemic regardless of

the type, content, and viewpoint of the speech the businesses promote.  Third, the SBA's

8
9
10
11

administrative record with regards to 13 C.F.R. §§ 120.110, 123.301, and 123.201, is tellingly

void of any "relevant data" presented with which the SBA could have attempted to "rationally

connect" to the "facts found and the choice made" to enact the Regulation, let alone to apply it to

Emergency EIDL applicants.  East Bay, 385 F. Supp. 3d at 951 (quoting State Farm, 463 U.S. at

12
13

43); *see also* 63 Fed. Reg. 46643; 60 Fed. Reg. 64360; 60 Fed. Reg. 64360.

14
15
16
17
18
19
20
21
22
23

The Regulation must stand, "if at all, on the basis articulated by the agency itself"; "post

hoc attempts to rewrite the Rule's supporting findings" will not save the SBA's lack of a reasoned

purpose.  East Bay, 385 F. Supp. 3d at 952.  The SBA presented no data whatsoever and merely

concluded that the exclusion of lawful businesses based on the enigmatically defined term

"prurient," *see* discussion in Sec. III.A.iii, *infra*, is: 1) within its authority, 2) in the public

interest, and 3) somehow reasoned.  Conclusions without reasoning simply cannot constitute

"'reasoned decision-making'" Altera, 926 F.3d at 1080 (quoting State Farm, 463 U.S. at 52).  For

the same reasons articulated by the district court in Camelot (**Ex. B**, at pp. 9, 12-13) the

Regulation fails the Schurz standards.

24
25
26
27

For these two reasons alone, the application of the Regulation to the Emergency EIDL

program is unlawful and this Court need go no further if it follows the approach of the district

court in Michigan.[10]

28

[10] There is a "longstanding principle of judicial restraint" that "requires that courts avoid reaching

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### iii.  The Regulation Violates the First Amendment

#### a.  The Regulation is an Impermissible Content-Based Restriction on Speech

The live performance dance entertainment at issue receives protections under *both* the Free Speech and Freedom of Association Clauses of the First Amendment. *See, e.g.,* Barnes v. Glen Theatre, Inc., 501 U.S. 560, 565 (1991) (even fully nude dance receives protections under the Constitution);[11] Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville, 274 F.3d 377, 396-97 (6th Cir. 2001).  "A content-based law is one that 'target[s] speech based on its communicative content' or 'applies to particular speech because of the topic discussed or the idea or message expressed.'" Recycle for Change v. City of Oakland, 856 F.3d 666, 670 (9th Cir. 2017) (quoting Reed v. Town of Gilbert, 135 S. Ct. 2218, 2226-27 (2015)).  "The 'crucial first step' in determining whether a law is content based is to 'consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys.'" Id. (quoting Reed, 135 S. Ct. at 2227-28).  A facially content-neutral law, however, will still be subjected to "strict scrutiny if the law . . . 'cannot be justified without reference to the content of the regulated speech, or [was] adopted by the government because of disagreement with the message [the speech] conveys.'" Id. (quoting Reed, 135 S. Ct. at 2227).

constitutional questions in advance of the necessity of deciding them." Camreta v. Greene, 563 U.S. 692, 705 (2011) (quoting Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445 (1988); *see also* Harris v. McRae, 448 U.S. 297, 307 (1980) ("It is well settled that if a case may be decided on either statutory or constitutional grounds, [courts] for sound jurisprudential reasons, [should] inquire first into the statutory question. This practice reflects the deeply rooted doctrine 'that [courts] ought not to pass on questions of constitutionality [] unless such adjudication is unavoidable.'") (quoting Spector Motor Serv. v. McLaughlin, 323 U.S. 101, 104 (1944)).

[11]  *Accord,* City of Erie v. Pap's A.M., 529 U.S. 277, 289 (2000) (same); Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 65-66 (1981) ("Nor may an entertainment program be prohibited solely because it displays the nude human figure.  '[N]udity alone' does not place otherwise protected material outside the mantle of the First Amendment. . . . Furthermore, . . . nude dancing is not without its First Amendment protections from official regulation").  *See also* Virginia v. Black, 538 U.S. 343, 358 (2003) ("the First Amendment affords protection to symbolic or expressive conduct as well as actual speech").

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The Regulation is clearly content-based on its face; it distinguishes applicants based upon whether the content of their entertainment is of a "prurient sexual nature." A cursory review at the administrative record demonstrates the SBA's aversion to Plaintiffs' message. The Regulation was introduced to "codify the SBA's *existing policy* of using the same ineligibility criteria for its economic injury disaster and *business loan program*." 63 Fed. Reg. 20140 (emphasis added). The SBA justified the 'existing policy' found in the 'business loan program' by concluding "the public interest in granting or denying applications for financial assistance" empowered it to "exclude small businesses engaging in lawful activities of an obscene, pornographic, or prurient sexual nature," 60 Fed. Reg. 64360 (Proposed Dec. 15, 1995), thereby demonstrating the SBA's disagreement with Plaintiffs' message.

Content-based distinctions "***are presumptively <u>unconstitutional</u>*** and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." <u>Reed</u>, 135 S. Ct. at 2226-27 (emphasis added). "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive content-neutral justification, or 'lack of animus towards the ideas contained' in the regulated speech.'" <u>Id.</u> (citing <u>Cincinnati v. Discovery Network, Inc.</u>, 507 U.S. 410, 429 (1993)).

Businesses engaged in "live or recorded performances of a prurient sexual nature" are excluded from eligibility for an Emergency EIDL. This determination must be made based upon a review of the *content* of the entertainment, and because the SBA cannot justify this differential eligibility criterion, the Regulation is unconstitutional under strict scrutiny. Moreover, Plaintiffs are not obligated to establish the <u>un</u>constitutionality of the Regulation; rather, the burden in this action *is upon the Defendants* to prove its constitutional validity. *See, e.g.,* <u>United States v. Playboy Entm't Grp., Inc.</u>, 529 U.S. 803, 816-17 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions. . . . [T]he

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Government bears the burden of identifying a substantial interest and justifying the challenged

restriction  . . . .  [this] imposes an especially heavy burden on the Government to explain why a

less restrictive provision would not be as effective. . . ." (citations omitted)).

There is no compelling governmental interest here.  The coronavirus puts everyone in the

same boat.  Nor is the Regulation narrowly tailored.  A narrowly tailored regulation might

prohibit, for example, loans to businesses purveying *illegal* materials which have been

determined to be obscene by a jury (and, in fact, *it does*; *see* 13 C.F.R. § 123.201(d) (precluding

loans to any business "engaged in any illegal activity") (Exhibit J)).  This Regulation is a content-

based restriction on speech and expression, it is *presumed* to be unconstitutional, and it is.

### b.  The Regulation is an Impermissible Viewpoint-Based Restriction on Speech

If a content-based distinction is presumptively unconstitutional, then a viewpoint-based

law, the "'more blatant' and 'egregious form of content discrimination,'" surely adds to the

presumption of unconstitutionality.  First Resort, Inc. v. Herrera, 860 F.3d 1263, 1277 (9th Cir.

2017) (quoting Reed, 135 S. Ct. at 2230).  "Viewpoint discrimination occurs when the

government prohibits speech by particular speakers, thereby suppressing a particular view about a

subject." Moss v. U.S. Secret Serv., 572 F.3d 962, 970 (9th Cir. 2009) (quoting Giebel v.

Sylvester, 244 F.3d 1182, 1188 (9th Cir. 2001)) (internal quotation marks removed).[12]

---

[12] Viewpoint discrimination need not be inordinately overt. In fact, it has been found in quite subtle ways. *See, e.g.*, Iancu v. Brunetti, 139 S. Ct. 2294, 2299 (2019) (holding the Lanham Act's bar on registration of "immoral" or "scandalous" trademarks is viewpoint discriminative); Matal v. Tam, 137 S. Ct. 1744, 1763 (2017) (holding that the government denying registration of a trademark based on whether it is "disparaging" is "viewpoint discrimination: Giving offense is a viewpoint"); Rosenberger v. Rector & Visitors of Univ. of Virginia, 515 U.S. 819 (1995) (holding state school Guidelines defining "religious activity" as "promotes or manifests a particular belief in or about a deity" to be viewpoint based); Id. at 831-32 (rejecting assertion that viewpoint discrimination only applies if "the Guidelines discriminate against an entire class of viewpoints"); American Booksellers Association v. Hudnut, 771 F.2d 323, 324-25 (7th Cir. 1985), *aff'd* 475 U.S. 1001 (1986) (holding a city ordinance's definition of pornography, which related to presenting women as "sexual objects" who enjoy various sexual acts, to be viewpoint based); Prison Legal News v. Stolle, 319 F.Supp.3d 830, 835 (E.D. Va. 2015) (prison banning publication due to "sexually suggestive" advertisements was viewpoint based restriction).

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

"[R]egulations that discriminate on [a viewpoint] basis are subject to strict scrutiny," Herrera, 860 F.3d at 1277, and as such "government suppression of speech based on the speaker's motivating ideology, opinion, or perspective is impermissible." Id.

The Regulation is certainly viewpoint-based. In fact, while attempting to justify the Regulation the SBA admits as much. Regardless of precluding loan funding, "[a]pplicants' First Amendment freedoms are in no way abridged. They remain free to express their **views** . . . ." 60 Fed. Reg. 64360 (emphasis added). Further, not all facilities presenting live entertainment are to be denied loans; only those that present entertainment of an undefined "prurient sexual nature" are. Nor is all *provocative* entertainment barred; only that which fits the Regulation is. Moreover, the SBA has clearly taken one side of the debate when it comes to the presentation of erotic entertainment since it freely funds entities that advocate *against* the message of eroticism.[13] This is all the very definition of a viewpoint-based law.

Furthermore, calling EIDLs a subsidy (as the government will here) cannot transmute the Regulation into a constitutionally sound viewpoint-neutral law. The SBA, in Diamond Club, cited to Regan v. Taxation Without Representation of Wash., 461 U.S. 540 (1983) as evidence of a lawful "subsidy" program. *See* Diamond Club SBA Brief, **Ex. F**, at p. 2. There, the plaintiff challenged a portion of the Internal Revenue Code that prohibited tax-exempt status for businesses whose activities, in substantial part, consisted of attempting to influence legislation.

---

[13]  It is no secret that numerous conservative religious institutions are vehemently opposed to adult businesses and the presentation of erotic entertainment. Nevertheless, churches are free to obtain SBA funding, and in doing so can engage in *their* government funded advocacy *against* the Plaintiffs' establishments, even as Plaintiffs' speech is placed on an unequal footing for loan purposes because it represents a disfavored viewpoint. *See* US Small Business Administration, Faith-Based Organizations FAQ - FREQUENTLY ASKED QUESTIONS REGARDING PARTICIPATION OF FAITH-BASED ORGANIZATIONS IN . . . ECONOMIC INJURY DISASTER LOAN PROGRAM (EIDL), https://www.sba.gov/sites/default/files/2020-04/SBA%20Faith-Based%_20FAQ%20Final.pdf (last accessed Jun 9, 2020); attached hereto as **Ex. E**.

PLAINTIFFS' AMENDED MOTION AND MEMORANDOM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Id. at 542.  The <u>Regan</u> Court emphasized *"[t]he case would be different* if Congress were to discriminate invidiously in its subsidies in such a way as to 'aim[] at the suppression of dangerous ideas.'"  <u>Id.</u> at 548 (emphasis added) (citing <u>Cammarano v. United States</u>, 358 U.S. 498, 513 (1959)).  In quoting <u>Mahar v. Roes</u>, 432 U.S. 464, 476 (1977), and <u>Cammarano</u> (358 U.S. at 513), the <u>Regan</u> Court observed that "[w]here the governmental provision of subsidies is *not* 'aimed at the suppression of dangerous ideas,'" its "power to encourage actions deemed to be in the public interest is necessarily far broader."  <u>Regan</u>, 461 U.S. at 550 (emphasis added).  The SBA also made a subsidy argument against an older regulation that was challenged on First Amendment grounds in <u>Mission Trace</u>.  622 F. Supp. at 690, 696.  There, the court concluded the challenged rule "completely deprives otherwise qualified applicants of *all* their potential SBA benefits solely because they engage in a constitutionally protected activity . . . therefore, [] a First Amendment challenge" is appropriate.  <u>Id.</u> at 696.  The court succinctly stated the appropriate conclusion: "[a]n agency [the SBA] *established to promote economic well-being* by assisting viable small businesses <u>may not</u> deny benefits to applicants solely because they engage in constitutionally protected expression."  <u>Id.</u> at 702.  The same conclusion is warranted here.

As discussed immediately above with regard to the Regulation being content-based, there is no compelling government interest for this more egregious form of viewpoint-based discrimination, and the actions by the SBA here are therefore presumed to be unconstitutional.

### c.  The Regulation is Unconstitutionally Overbroad

"In the First Amendment context . . . a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'"  <u>United States v. Stevens</u>, 559 U.S. 460, 473, 130 (2010) (quoting <u>Washington State Grange v. Washington State Republican Party</u> ("<u>Grange</u>"), 552 U.S. 442, 449

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

n.6 (2008)).  "The overbreadth doctrine exists 'out of concern that the threat of enforcement of an overbroad law may deter or chill constitutionally protected speech . . . .'" " Comite de Jornaleros de Redondo Beach v. City of Redondo Beach ("Comite"), 657 F.3d 936, 944 (9th Cir. 2011) (quoting Virginia v. Hicks, 539 U.S. 113, 119 (2003)).  "The party challenging the law need not necessarily introduce admissible evidence of overbreadth, but generally must at least 'describe the instances of arguable overbreadth of the contested law.'" Id. (quoting Grange, 552 U.S. at 499 n.6).  Although overbreadth is doctrinally a facial challenge, the actual breadth of a law is judged by its text and "from actual fact."  Hicks, 539 U.S. at 122.

Here, the Regulation's undefined and pivotal term "prurient" has been construed, by the SBA, to include "*lawfully* activities," 60 Fed. Reg. 64360, including, apparently, Plaintiffs' protected expression.  The SBA took the same position with regard to the same term in the context of PPP loans.  Further, 'in actual fact' when forced to attempt to define the term, the SBA flip-flopped—*twice*—on how it defined "prurient" including, at first, "lustful" and "lascivious" and later "erotic."  Complaint, ¶¶98-101.  There is no shortage of examples as to why construing the Regulation to apply to "erotic" speech is overbroad.  Small casinos (which were added to the realm of eligible PPP applicants by SBA Interim Final Rule, 85 Fed. Reg. 21751 (Apr. 20, 2020) (**Ex. G**)) regularly present "erotic" entertainment.  And, would the SBA deny an EIDL to E.L. James, the author of the best-selling "Fifty Shades of Grey" trilogy, based on news outlets describing them as "erotic?"[14]  As to Plaintiffs, enforcement of this vague Regulation necessarily has a chilling effect on Plaintiffs' constitutionally protected expression through self-censorship in order to avoid contravening the ambiguous "prurient" requirement.

---

[14] *See* Gwen Aviles, Fifty Shades of Grey was the Best-Selling Book of the Decade, NBC News (Dec. 20, 2019, 11:17 AM), https://www.nbcnews.com/pop-culture/books/fifty-shades-grey-was-best-selling-book-decade-n1105731 (last accessed Jun. 9, 2020) (noting the book is a best-seller and is described as "E.L. James' erotic" trilogy).

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

### d. The Regulation Fails to Conform to the Constitutional Standards of Obscenity

Separating unlawful from lawful expression stands the legal test of obscenity. "Sexual expression which is indecent but not obscene is protected by the First Amendment." <u>Sable Commc'ns of California, Inc. v. FCC</u>, 492 U.S. 115, 126 (1989).[15]  The obscenity standard has developed over time, but is generally considered to be at present the following:

> Whether the average person, applying contemporary community standards, would find that the work, *taken as a whole*, appeals to the *prurient interest*;

> Whether the work, applying contemporary community standards, depicts or describes, in a patently offensive way, sexual conduct specifically defined by applicable state law; *and*

> Whether a reasonable person would find that the work lacks serious literary, artistic, political, or scientific value.

<u>Miller</u>, 413 U.S. at 24, *as clarified by* <u>Smith v. United States</u>, 431 U.S. 291, 300 n.6 (1977); and <u>Pope v. Illinois</u>, 481 U.S. 497, 500-01 & n.3 (1987) (collective here, the "<u>Miller</u> Test").

"[T]he three prongs of the <u>Miller</u> test are conjunctive, rather than being disjunctive; therefore . . . [entertainment] is not obscene unless *all three prongs* have been established."  *See, e.g.*, <u>Book Friends, Inc. v. Taft</u>, 223 F.Supp.2d 932, 936 (S.D. Ohio 2002) (emphasis added), *citing* <u>Reno v. ACLU</u>¸ 521 U.S. 844, 873 (1997) (emphasis added), *accord*, <u>Penthouse Intern., Ltd. V. McAuliffe</u>, 610 F.2d 1353, 1363 (5th Cir. 1980).

The Regulation is obviously keyed to the *first prong* of the <u>Miller</u> test; prurient appeal. *Nowhere* do courts address "prurience" outside of the context of legal obscenity.  In that context, the Supreme Court defines prurient subject matter as that which appeals to a "*shameful or morbid," and "unhealthy," interest in sex*, as opposed to a normal, healthy, sexual desire.  <u>Roth</u>

---

[15] *See also* <u>F.C.C. v. Pacifica Foundation</u>, 438 U.S. 726, 745 (1978) ("[T]he fact that society may find speech *offensive* is not a sufficient reason for suppressing it."); and <u>Carey v. Populations Services Int'l</u>, 431 U.S. 678, 701 (1977) ("[W]here obscenity is not involved, we have consistently held that the fact that protected speech may be *offensive* to some does not justify its suppression") (emphasis added).

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

v. United States, 354 U.S. 476, 487 n.20 (1957); and Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 498-99 (1985).  In Brockett, the Court clarified that the Roth standard should *not* be construed to extend obscenity to expression that invoked merely "lustful thoughts," *or that appealed to "normal, healthy sexual desires*."  Brockett, *supra* (emphasis added).  The Court clearly held that the government may not outlaw expression which, "taken as a whole, *does no more than arouse, 'good, old fashioned, healthy' interest in sex*."  Id. at 499 (emphasis added) (quoting the opinion being reversed there; J-R Distributors, Inc. v. Eikenberry, 725 F.2d 482, 492 (9th Cir. 1984)).  The Regulation fails to satisfy these constitutional standards.

First, it does not even comport with the *first element* of the obscenity test (prurient appeal).  Even assuming that "prurient sexual nature" has the same meaning as "prurient interest" under the Miller Test (which the SBA apparently denies),[16] the Regulation does not require the reviewing official to consider the entertainment as a "*whole*" (for example, here, where much of the live entertainment is *clothed*).  Nor does it require that "prurience" be considered in the context of the relevant contemporary community standards as mandated by the Miller Test.  *Cf.* Reno 521 U.S. at 873 (invalidating a section of the Communications Decency Act ("CDA") because, *inter alia*, while it included *part* of the second component of the Miller Test – patent offensiveness – it did not require, as the Miller Test mandates, the evaluation to be restricted to depictions "specifically defined by applicable state law").

These failings are critical because of the constitutional protections that are intentionally built into every component of the Miller test, including the "prurient appeal" element.  Reno 521 U.S. at 873 ("Each of Miller's additional two prongs . . . *critically limits the uncertain sweep of the obscenity definition*.") (emphasis added).  In addition, courts have made clear that a jury,

---

[16] If Miller does not apply, then there is effectively no definition of this term at all and, thus, no guidance for the SBA's content-based decisions.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

selected from the community at large, is presumed to know—*as a collective body*—what the contemporary community standards are.  *See, e.g.*, Smith, 431 U.S. at 302.  Accordingly, whether entertainment appeals to a "prurient appeal" *as measured by the contemporary community standards* is a question of fact for a *jury* to decide, where the substantive limitations of the obscenity test "are passed on to the jury in the form of *instructions*."  Id. at 293, 300-302 (emphasis added).  There is *nothing* to presume that a member of the ominous "Application Processing Department," the arbiters of eligibility for EIDLs, *individual* or *collectively*, has any knowledge or concept of the relevant community standards (and there is nothing in that law that permits the assumption that they do), *let alone that they even know that they are constitutionally required to apply them in considering eligibility for these EIDLs*.[17]  Nor are they given any guidance concerning how the phrase "prurient sexual nature" is to be defined or applied (discussed below).[18]

The legal presumption that a *jury* inherently knows the community standards is also subject to an additional "check" to protect speech.  The overseeing judge must independently evaluate, irrespective of the jury's finding of obscenity, the obscenity *vel non* of the entertainment in question.  *See, e.g.,* Ginsberg v. New York, 390 U.S. 676, 707 (1968) (Harlan J. concurring) (". . . the question of whether particular material is obscene inherently entails a constitutional judgment for which *the Court has ultimate responsibility*, and hence that is incumbent upon us to judge for ourselves, *de novo* as it were, the obscenity *vel non* of the challenged matter")

---

[17] Also notable is the fact that those applying the contemporary community standards to Plaintiffs' EIDL applications were, presumably, applying the community standards of Fort Worth, Texas (the location of SBA office denying the applications), to Plaintiffs in, for example, San Francisco, California. *See* Complaint, ¶¶77-89.

[18] *Compare* Luke Records, Inc. v. Navarro, 960 F.2d 134, 135 (11th Cir. 1992) (obscenity determination reversed where Sheriff only introduced a copy of the audio recording and Judge determined the issue without a jury based only on his own conception of community standards). Here, an SBA official may make a determination on the "prurient sexual nature" of the entertainment with *no factual evidence whatsoever to guide his or her decision*.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

(emphasis added, numerous citations omitted).  *Accord* <u>Penthouse</u>, 610 F.2d at 1363-64.

That searching inquiry required under obscenity law should be contrasted with the Regulation, which envisions that a small business can be barred from Emergency EIDL funds based on the opinion of the "Application Processing Department" which may have *no legal expertise whatsoever* and which receives no particularized instructions in regard to these difficult constitutional concepts.  Simply put, there is absolutely no judicial oversight mandated by the First Amendment, rendering this process constitutionally deficient.

Second, the Regulation unconstitutionally relaxes the stringent *three*-part standard to differentiate fully-protected (albeit even indecent) expression from the extremely limited class of obscene materials that the government may constitutionally ban.  The Regulation completely ignores the potential patent offensiveness and the "serious value" of the entertainment and, as stated above, expression is relieved of constitutional protection only if it violates <u>*all three*</u> prongs of the <u>Miller</u> Test. Here again, <u>Reno</u> is instructive.  Whereas the CDA included an incomplete patent offensive inquiry, it did not require evaluation of either the prurient appeal of the material or its "value."  "Just because a definition including *three* limitations is not vague, *it does not follow that one of these limitations, <u>standing by itself</u>, is not vague*." 521 U.S. at 873 (emphasis added).  *See also* separate vagueness discussion, *infra*.

There is no question that the Regulation is at least premised on the <u>Miller</u> Test for obscenity.  *See* 60 Fed. Reg. 64360 (proposed Dec. 15, 1995) (citing <u>Miller</u>) and 63 Fed. Reg. 20140 (citing the "existing policy" used in the "business loan program").  It is also equally clear that the SBA did not have a full understanding of obscenity jurisprudence when it considered the adoption of the Regulation. *See* 60 Fed. Reg. 64360 (proposed Dec. 15, 1995) (". . . SBA has determined that it may exclude businesses engaged in *lawful* activities of an *obscene*, pornographic, or prurient sexual nature") (emphasis added).  That's a non-sequitur.  If something

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

is *obscene* it is illegal, plain and simple, and can't qualify for an SBA loan anyway.  *See* 13 C.F.R. § 123.201(d) (Exhibit J).  Plaintiffs make no challenge to *that* provision.

Moreover, while the administrative commentary leading up to the adoption of the Regulation states that applicants' First Amendment rights would not be jeopardized by the rules because they may "*exercise their freedoms, operate their businesses, and obtain any other aid available to them*" (60 Fed. Reg. 64360, *supra*) (emphasis added), here Plaintiffs and others similarly situated *cannot* get "other aid" regarding the pandemic *because SBA has barred them from doing so*; there are no alternative sources of funding.  And, without this emergency relief, they may never open their doors again and will then be deprived of their ability to continue to engage in protected expression.

Third, the Regulation fails to provide *any standards whatsoever* to differentiate otherwise protected expression from illegal obscenity, other than a single undefined word ("prurient") taken completely out of its usual constitutional context.

### e.   The Regulation Violates the Doctrine of Unconstitutional Conditions and Effectuates a Prior Restraint Upon Speech and Expression

Plaintiffs are faced with a stark choice by the Regulation:  Abandon their chosen form of expression or forgo a government benefit available to nearly every other small business in America.  That is not a choice.  Rather, it represents a blatant violation of the doctrine of unconstitutional conditions:

> For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which (it) could not command directly.' <u>Speiser v. Randall</u>, 357 U.S. 513, 526 [(1958)]. Such interference with constitutional rights is

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

*impermissible*.

Perry v. Sindermann, 408 U.S. 593, 597 (1972) (emphasis added). *Accord*, G&V Lounge v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1077-78 (6th Cir. 1994) (municipal requirement of liquor license applicant that it waive its right to present topless dancing as a condition of license approval violated this doctrine). *See also* Trinity Lutheran Church of Columbia, Inc. v. Comer, 137 S. Ct. 2012, 2022 (2017) (quoting Sherbert v. Verner, 374 U.S. 398, 404 (1963) (internal quotation marks removed) (noting, in the analogous Free Exercise context, "liberties of religion and expression may [not] be infringed by the denial of or placing conditions upon a benefit or privilege"); City of Los Angeles v. Barr, 929 F.3d 1163, 1174 (9th Cir. 2019) ("conditions on the allocation of funds" must be done "unambiguously").

In this context, the withholding of otherwise available government benefits also represents a prior restraint on speech.  "A prior restraint exists when the enjoyment of protected expression is contingent upon the approval of government officials."  Dream Palace v. Cty. of Maricopa, 384 F.3d 990, 1001 (9th Cir. 2004) (citing Near v. Minnesota, 283 U.S. 697, 711-13 (1931)); *see also* Sands N., Inc. v. City of Anchorage, Alaska, 537 F. Supp. 2d 1032, 1036 (D. Alaska 2007) (citing Se. Promotions, Ltd. v. Conrad, 420 U.S. 546, 553 (1975)) ("A 'prior restraint' exists when speech is conditioned upon the prior approval of public officials.").  While not unconstitutional per se, they "are 'the most serious and the least tolerable infringement on First Amendment rights,'" Twitter, Inc. v. Sessions, 263 F. Supp. 3d 803, 809 (N.D. Cal. 2017) (quoting Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976)), and "come to this Court bearing a heavy presumption *against* [*their*] *constitutional validity*."  Capital Cities Media, Inc. v. Toole, 463 U.S. 1303, 1305 (1983).  A scheme that places "unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship."  FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 225-26 (1990), *citing* Lakewood v. Plain Dealer Publishing Co.,

- 28 -

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

486 U.S. 750, 757 (1988).  "In order to justify a prior restraint, the government must demonstrate that the restraint is justified without reference to the content of the speech, and is narrowly tailored to serve a compelling governmental interest."  Twitter, Inc., 263 F. Supp. 3d at 810.

The Regulation undeniably constitutes a prior restraint on expression. For an applicant to qualify for an EIDL, it must *eschew* its constitutional right to engage in the presentation of entertainment that is of a "prurient sexual nature" (whatever that may mean) in the future; a *classic* prior restraint.  *See, e.g.*, G&V Lounge, 23 F.3d at 1075 (municipal requirement of liquor license applicant that it waive its right to present topless dancing as a condition of license approval was a sufficient prior restraint to satisfy the "injury-in-fact" standard so as to warrant the entry of injunctive relief).  In addition, there certainly is "unbridled discretion" here since the SBA has *changed* its position on what "prurience" means just within the context of the recent CARES Act litigation referenced, *supra*.  Further, the Regulation will cause Plaintiffs (and others) to self-censor in order to avoid running afoul of the nebulous "prurient" requirement, thereby, chilling their constitutionally-protected message of eroticism.

### iv.   The Regulation is Impermissibly Vague

Statutes which are vague, and which are not subject to reasonable interpretation by common men, inherently deny due process and are therefore unconstitutional.  Grayned v. City of Rockford, 408 U.S. 104, 108 (1972).  To be constitutional, the law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly," and must provide clear guidance to officials so that there is not ad hoc, arbitrary, or discriminatory enforcement of the law.  Id.; Kolender v. Lawson, 461 U.S. 352, 358 (1983); California Teachers Ass'n v. State Bd. of Educ., 271 F.3d 1141, 1150 (9th Cir. 2001); Schwartzmiller v. Gardner, 752 F.2d 1341, 1345 (9th Cir. 1984).  These constitutional concerns are heightened when a vague statute "abuts upon sensitive areas of basic First Amendment

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

freedoms," Grayned, 408 U.S. at 109; *see also* Smith v. Goguen, 415 U.S. 566, 573 (1974);

California Teachers Ass'n, 271 F.3d at 1149, and when the law ascribes civil and/or criminal

penalties (as does the Regulation here).  Kashem v. Barr, 941 F.3d 358, 370 (9th Cir. 2019).

Succinctly put, *precision in draftsmanship* is the touchstone of constitutionality for a regulation

that impacts upon First Amendment rights.  *See, e.g.*, Keyishian v. Board of Regents, 385 U.S.

589, 603-04 (1967); California Teachers Ass'n, 271 F.3d at 1149.

The Regulation violates these standards.  It fails to supply intelligible guidelines for

businesses that may ultimately find themselves in need of relief administered by the SBA, it fails

to provide the objective guidance needed to avoid arbitrary application by the "Application

Processing Department," and it operates to inhibit Plaintiffs' protected exotic expression.

Further, the Regulation places Plaintiffs at risk of perjury charges should they "guess wrong" on

the prurience question in their loan application, which requires a certification that "the Applicant

is an eligible entity . . . under the penalty of perjury pursuant to 28 U.S.C. 1746."  Complaint,

¶¶67-68.

An individual seeking to apply or comply with the Regulation is first tasked with

determining which definition of "prurient" to apply.  Is it the legal definition contained in the

Miller Test above or, as the SBA first posited in the Diamond Club litigation, "lustful" and

"lascivious," or later, in the same litigation, "erotic" (*see,* Complaint ¶¶98-101; *see also* SBA

Motion for Stay in the Seventh Circuit (**Ex. H**, at pp. 2-5)), or something else?  No one knows.

Moreover, administering officials are provided *no guidance whatsoever* as to what definition *they*

should apply *and* how they are to apply it.

The Regulation also suffers from the vagueness identified in Reno, *supra*.  In

distinguishing the CDA before the Court from the law it upheld in Ginsberg, the Court noted that

the CDA lacked any definition of "indecent" or "patently offensive."  521 U.S. at 865, 871.  This

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1    parallels the undefined term "prurient" at bar.  Importantly the Court rejected the argument that

2    such terms were no more vague than the <u>Miller</u> Test itself.  The Court explained:

3
4        Because the CDA's "patently offensive" standard (and, we assume, *arguendo,* its
         synonymous "indecent" standard) is one part of the three-prong *Miller* test, the
5        Government reasons, it cannot be unconstitutionally vague.

6        The Government's assertion is incorrect as a matter of fact. The second prong of
         the *Miller* test—the purportedly analogous standard—contains a critical
7        requirement that is omitted from the CDA: that the proscribed material be
         "specifically defined by the applicable state law." This requirement reduces *the*
8        *vagueness inherent in the open-ended term "patently offensive" as used in the*
         *CDA*.
9            *       *       *

10       The Government's reasoning is also flawed. Just because a definition including
         three limitations is not vague, it does not follow that one of those limitations,
11       standing by itself, is not vague. (footnoted omitted). Each of *Miller 's* additional
         two prongs—(1) that, taken as a whole, the material appeal to the "prurient"
12       interest, and (2) that it "lac[k] serious literary, artistic, political, or scientific
         value"—critically *limits the **uncertain sweep** of the obscenity definition*.
13           *       *       *

14       In contrast to *Miller* and our other previous cases, the CDA thus presents a greater
         threat of censoring speech that, in fact, falls outside the statute's scope. Given *the*
15       *vague contours of the coverage of the statute*, it unquestionably silences some
         speakers whose messages would be entitled to constitutional protection.
16
17   <u>Id</u>. at 873-74 (emphasis added; footnotes omitted).  The Regulation invites "the attendant dangers

18   of arbitrary and discriminatory application" made on "ad hoc and subjective" bases, <u>California</u>

19   <u>Teachers Ass'n,</u> 271 F.3d at 1150, and is therefore invalid.

20                    **v.   <u>The Regulation Violates the Equal Protection and Occupational</u>**
                           **<u>Liberty Components of the Fifth Amendment</u>**
21

22       The Fifth Amendment "incorporates, as against the federal government, the Equal

23   Protection Clause of the Fourteenth Amendment," and the same analysis is applied in both

24   contexts. <u>Ctr. for Bio-Ethical Reform, Inc. v. Napolitano</u>, 648 F.3d 365, 379 (6th Cir. 2011); *see*

25   *also* <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 687 (9th Cir. 2001) ("The Due Process Clause of

26   the Fifth Amendment and the equal protection component thereof apply only to actions of the

27   federal government . . . ."); <u>City of Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439

28
                                             - 31 -

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

(1985).

The Regulation does not treat all people alike.  Those who are *not* associated with entertainment of a "prurient sexual nature" (again, whatever that may mean) are provided with financial assistance to hopefully survive this pandemic.  Those who engage in speech which the faceless "Applicant Processing Department" views as "prurient" are frozen out.  Strict scrutiny applies and there is no compelling governmental interest to justify this distinction, nor does the Regulation utilize the least restrictive means of regulating this program.[19]

Similarly, the Regulation violates the occupational Liberty component as found in the Fifth Amendment's Due Process Clause.  *See, e.g.,* Allgeyer v. La., 165 U.S. 578, 590 (1897). This right allows an individual:

> [T]o live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation; and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned.

Id. at 589.  Specifically, this jurisdiction has "recognized the liberty interest in pursuing an occupation of one's choice" and that "a plaintiff can make out a substantive due process claim if she is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis." Engquist v. Oregon Dep't of Agric., 478 F.3d 985, 997 (9th Cir. 2007), *aff'd sub nom.* Engquist v. Oregon Dep't of Agr., 553 U.S. 591 (2008).

By facially discriminating against Plaintiffs and professional entertainers—all entitled to First Amendment protections and to therefore a higher level of constitutional scrutiny—in denying them EIDLs, which would be available to them *but for* their engagement in a constitutionally protected activity, the Regulation violates these constitutional concepts and

---

[19] "[T]he decisions of this Court have consistently held that 'only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms.'" Williams v Rhodes, 393 U.S. 23, 31 (1968) (quoting NAACP v. Button, 371 U.S. 415, 138 (1963); *see also* Reed, 135 S.Ct. at 2231.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

should be enjoined.[20]

### B. **Plaintiffs Will Suffer Irreparable Harm if this Court does Not Issue an Injunction**

As this Court has stated, when a "suit raises serious First Amendment question, the Court has little difficulty finding the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in plaintiff['s] [] favor." Viacom Int'l Inc. v. F.C.C., 828 F. Supp. 741, 744 (N.D. Cal. 1993) (citing San Diego Comm. V. Governing Bd., 790 F.2d 1471 (9th Cir. 1986)); Elrod v. Burns, 427 U.S. 347, 373 (1976) (noting "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury").

Plaintiffs will surely suffer irreparable injury by both the deprivation of their constitutional rights and the ruination of their—constitutionally protected—businesses. Plaintiffs' doors are shuttered due to an unprecedented pandemic, and the glimmer of hope Congress offered through EIDLs will be denied based on the nature of Plaintiffs' protected expression. See Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1474 (9th Cir. 1985) (noting "[t]he threat of being driven out of business is sufficient to establish irreparable harm"). On the other hand, "if adequate compensatory relief will be available," then "mere financial injury [] does not constitute irreparable harm." Goldie's Bookstore, Inc. v. Superior Court of State of Cal., 739 F.2d 466, 471 (9th Cir. 1984). Here, however, money damages are likely unavailable based on governmental immunity. See U.S.C. § 702 (2018).

The only remedies available to Plaintiffs are declaratory and injunctive relief. Without the issuance of an injunction, Plaintiffs risk the ruination of their businesses. Moreover, because the

---

[20] Many of these constitutional arguments formed the basis of the district court's injunction against the virtually identical regulation under the PPP in Camelot, and this Court is referred to that court's discussions in **Ex. B** at pp. 7-9.

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

EIDL funds provided by the Act are to be issued on a 'first-come, first-served' basis[21] and because the available monies are being rapidly depleted as the Court reads this, immediate injunctive relief is necessary since once these funds are gone, Plaintiffs cannot recover even if the Regulation is later invalidated.  Plaintiffs and their employees will undeniably experience irreparable harm if an injunction is not granted.

### C. An Injunction Would Cause No Harm to Others and the Public Interest Weighs in Favor of the Entry of an Injunction

The Ninth Circuit has consistently recognized "that 'it is always in the public interest to prevent the violation of a party's constitutional rights.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Sammaranto v. First Judicial District Court, 303 F.3d 959, 974 (9th Cir. 2002); *see also* Doe v. Harris, No. C12-5713 TEH, 2012 WL 6101870, at *1 (N.D. Cal. Nov. 7, 2012) (quoting Klein v. City of San Clemente, 584 F.3d 1196, 1208 (9th Cir. 2009) ("the Ninth Circuit has 'consistently recognized the significant public interest in upholding free speech principles . . . .").  As one court noted, "it may be assumed that the Constitution is the *ultimate expression of the public interest*." Llewlyn v. Parkland Cty. Pros., 402 F. Supp. 1379, 1393 (E.D. Mich. 1975) (emphasis added).  Additionally, as the Ninth Circuit has recognized, "the 'ongoing enforcement of the unconstitutional regulations would infringe not only the free expression interests of' plaintiffs, 'but also the interests of other people' subject to the same restrictions," Klein, 584 F.3d at 1208 (quoting Sammaranto, 303 F.3d 974), consequently, the public interest clearly weighs in favor of granting the requested injunction.  Moreover, there would be no harm to others by entry of an injunction.  In fact, the failure to grant the injunction could result in harm

---

[21] "SBA has resumed processing EIDL applications . . . and will be processing these applications on a first-come, first-served basis." *Coronavirus (COVID-19)*, SBA.gov, https://www.sba.gov/funding-programs/disaster-assistance/coronavirus-covid-19 (last visited Jun. 4, 2020); *see also* Pub. L. 116-139 (Apr. 24, 2020) (allocating a total of $20,000,000,000 to the EIDL program).

- 34 -

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

  
to the Plaintiffs' employees, landlords, mortgage holders, and creditors.

## IV.     NO BOND SHOULD BE REQUIRED

Fed. R. Civ. P. 65(c) permits requiring the posting of a bond as a condition for the entry of a preliminary injunction.  However, when, as here, constitutional rights are at issue, no bond should be required.  *See, e.g.*, Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011); Diamond Club, **Ex. A** at p. 14 (no bond required to enjoin the virtually identical regulation under the PPP); and Camelot, **Ex. B** at p. 11-12 (same).

## CONCLUSION

Plaintiffs respectfully request this Honorable Court issue a TRO and preliminary injunction barring enforcement of 13 C.F.R. § 123.201(f) (2020).  Moreover, this Court should also order the Defendants to approve Plaintiffs' EIDL applications if they are otherwise eligible but for the enforcement of the Regulation, to restore Plaintiffs to their places in the application que as they were at the time of application, and to immediately notify the SBA's Application Processing Department and/or local field offices to discontinue using the aforementioned Regulation as criteria for determining EIDL applications.  Finally, no bond should be required.

Dated: June 18, 2020

*/s/ Douglas J. Melton*
Douglas J. Melton, Bar No. 161353
Shane M. Cahill, Bar No. 227972
LONG & LEVIT LLP
465 California Street, 5th Floor
San Francisco, California 94104
Telephone: (415) 397-2222
Facsimile:  (415) 397-6392
Email:     dmelton@longlevit.com
           scahill@longlevit.com

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

- 35 -

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRADLEY J. SHAFER (MI P36604)*
Brad@BradShaferLaw.com
MATTHEW J. HOFFER (MI P70495)*
Matt@BradShaferLaw.com
ZACHARY M. YOUNGSMA (MI P84148)*
Zack@BradShaferLaw.com
**SHAFER & ASSOCIATES, P.C.**
3800 Capital City Boulevard, Suite 2
Lansing, Michigan 48906
(517) 886-6560

Attorneys for Plaintiffs

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **CERTIFICATE OF SERVICE**

I certify that on June 18, 2020, I electronically filed the foregoing document with the Clerk of the

Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Douglas J. Melton*

4814-2186-4384, v. 1

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' AMENDED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION