1  Douglas J. Melton, Bar No. 161353
   Shane M. Cahill, Bar No. 227972
2  LONG & LEVIT LLP
   dmelton@longlevit.com
3  scahill@longlevit.com
    465 California Street, 5th Floor
4  San Francisco, California  94104
   (415) 397-2222
5  Telephone:     (415) 397-2222
   Facsimile:      (415) 397-6392
6
7  ATTORNEYS FOR PLAINTIFFS

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11

12  DEJA VU-SAN FRANCISCO, LLC; BIJOU-      Case No. 3:20-cv-03982
    CENTURY, LLC; SAN FRANCISCO
13  GARDEN OF EDEN, LLC; DEJA VU            **PLAINTIFFS' VERIFIED SECOND**
    SHOWGIRLS OF SAN FRANCISCO, LLC;       **AMENDED COMPLAINT FOR**
14  GOLD CLUB-SF, LLC; DEJA VU             **EMERGENCY TEMPORARY**
    COLORADO SPRINGS, INC.; ROUGE          **RESTRAINING ORDER, PRELIMINARY**
15  PORTLAND, LLC; DEJA VU SPOKANE,        **AND PERMANENT INJUNCTION, AND**
    INC.; DREAMGIRLS OF LAKE CITY, LLC;    **DECLARATORY RELIEF**
16  DEJA VU SEATTLE, LLC; DEJA VU LAKE
17  CITY, INC.; DREAMGIRLS OF TACOMA,      Assigned to:
    LLC; AND DREAMGIRLS OF SEATTLE,        Magistrate Judge Laurel Beeler
18  LLC.; SAW ENTERTAINMENT, LTD.; BT
    CALIFORNIA, LLC,
19
20            Plaintiffs,
21       v.

22  UNITED STATES SMALL BUSINESS
    ADMINISTRATION; JOVITA CARRANZA,
23  ADMINISTRATOR OF THE SMALL
    BUSINESS ADMINISTRATION, IN HER
24  OFFICIAL CAPACITY; AND THE UNITED
    STATES OF AMERICA,
25
26            Defendants.

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO, CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982

PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

**INTRODUCTION**

1.      This is a civil action wherein Plaintiffs seek injunctive relief to restrain Defendants from discriminating against businesses and workers who are entitled to benefit from Economic Injury Disaster Loans ("EIDL"), *see* 15 U.S.C.A. 636(b)(2) (West 2020)), especially the "Emergency EIDL Program" (15 U.S.C.A § 9009 (West 2020)) provisions of the Coronavirus, Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136 §§ 1101-03, 1107, 1110, 1114 (2020).  While Congress designed and enacted the CARES Act to speed broad relief to the economy through the businesses and workers who have been impacted by the COVID-19 pandemic, the Small Business Administration (the "SBA") and its Administrator have chosen to saddle those recovery efforts with the irrelevant ballast of decades-old regulations that impermissibly and unconscionably narrow the relief programs. Plaintiffs are First Amendment-protected businesses that have been denied, or that are at risk of being denied, EIDLs based on their expressive viewpoint and thereby the ability to participate in economic stabilization. Because their inability to access EIDL funds threatens their very existence, Plaintiffs, on an emergency basis, seek to restrain the SBA from continuing to violate the law and Plaintiffs' fundamental First Amendment rights.

2.      Because the funding of the Emergency EIDL Program is to occur on a first-come-first-serve basis until the fund is depleted, Plaintiffs bring this action on an emergency basis and will seek a Temporary Restraining Order to prevent irreparable injury to their workers, their businesses, the entertainers who perform on their premises, and all their constitutional rights.

**JURISDICTION AND VENUE**

3.      Jurisdiction is conferred on this Court for the resolution of the substantial constitutional questions presented here by virtue of 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(1), (3), (4); 28 U.S.C. § 1346(a)(2); and 28 U.S.C. § 1361.

4.      Authority for judicial review of agency action is further provided by 5 U.S.C. § 702, which states:

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                         - 2 -                    PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, that any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5.      The prayer for declaratory relief is founded in part on Rule 57 of the Federal Rules of Civil Procedure as well as 28 U.S.C. § 2201, the latter of which provides: ". . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . ."

6.      The jurisdiction of the Court to grant injunctive relief is conferred upon this Court by Rule 65 of the Federal Rules of Civil Procedure, and by 28 U.S.C. § 2202, the latter of which provides: "Further necessary or proper relief on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

7.      No other action, civil or criminal, is pending in any state court involving the Plaintiffs regarding the activities and events at issue here.

8.      This suit is authorized by law to redress deprivations of rights, privileges, and immunities secured by the First and Fifth Amendments to the United States Constitution, and for declaratory and injunctive relief.

9.      Pursuant to 28 U.S.C. § 1391(e) venue in this Court is appropriate as Plaintiff Deja Vu - San Francisco, LLC is located in the Northern District of California (as are the other "San

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                         - 3 -                 PLAINTIFFS' VERIFIED SECOND AMENDED
                                                                      COMPLAINT FOR EMERGENCY TEMPORARY
                                                                      RESTRAINING ORDER

Francisco Plaintiffs" identified below) and has applied for an EIDL within the District; the Small Business Administration operates in the District; and the injury complained of and acts causing that injury have occurred and will continue to occur in the District.

## PARTIES

10.     Plaintiff Deja Vu - San Francisco, LLC ("DV San Francisco") is a duly-organized Nevada Limited Liability Company duly organized under the laws of that state and authorized to conduct business in the State of California.  DV San Francisco does business as Centerfolds at 391 Broadway in San Francisco, California.

11.     DV San Francisco presents lawful entertainment in conformity with its various governmental licenses, permits, and other authorizations, including but not limited to:

    a.  City of San Francisco Occupancy Permit; and

    b.  City of San Francisco Board of Health Permit.

12.     Plaintiff Bijou - Century, LLC ("Bijou") is a Nevada Limited Liability Company duly organized under the laws of that state and authorized to conduct business in the State of California.  Bijou does business as New Century Theater at 816 Larkin Street in San Francisco, California.

13.     Bijou presents lawful entertainment in conformity with its various governmental licenses, permits, and other authorizations, including but not limited to:

    a.  City of San Francisco Occupancy Permit;

    b.  City of San Francisco Board of Health Permit; and

    c.  City of San Francisco Theater Permit.

14.     Plaintiff San Francisco Garden of Eden, LLC ("Garden of Eden"), is a Nevada Limited Liability Company duly organized under the laws of that state and authorized to conduct business in the State of California.  Garden of Eden does business as Garden of Eden at 529 Broadway in San Francisco, California.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                - 4 -                PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

15.   Garden of Eden presents lawful entertainment in conformity with its various governmental licenses, permits, and other authorizations, including but not limited to:

a.   City of San Francisco Occupancy Permit; and

b.   City of San Francisco Board of Health Permit.

16.   Plaintiff Deja Vu Showgirls of San Francisco, LLC ("DVS San Francisco") is a Nevada Limited Liability Company duly organized under the laws of that state and authorized to conduct business in the State of California.  DVS San Francisco does business as Little Darlings at 312 Columbus in San Francisco, California.

17.   DVS San Francisco presents lawful entertainment in conformity with its various governmental licenses, permits, and other authorizations, including but not limited to:

a.   City of San Francisco Occupancy Permit; and

b.   City of San Francisco Board of Health Permit.

18.   Plaintiff Gold Club - S.F., LLC ("Gold Club") is a Nevada Limited Liability Company duly organized under the laws of that state and authorized to conduct business in the State of California.  Gold Club does business as the Gold Club at 650 Howards Street in San Francisco, California.

19.   Gold Club presents lawful entertainment in conformity with its various governmental licenses, permits, and other authorizations, including but not limited to:

a.   Liquor License issued by the California Department of Alcoholic Beverage Control;

b.   City of San Francisco Occupancy Permit; and

c.   City of San Francisco Board of Health Permit.

20.   Plaintiff SAW Entertainment, LTD. ("SAW") is a California Corporation duly organized under the laws of the State of California and authorized to do business there.  SAW

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982          - 5 -          PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

1  does business as Larry Flynt's Hustler Club at 1031 Kearny Street in San Francisco, California
2  and as Condor Club at 560 Broadway, San Francisco, California.

3       21.    SAW presents lawful entertainment in conformity with its various governmental
4  licenses, permits, and other authorizations, including but not limited to:

5            a.    Liquor License issued by the California Department of Alcoholic Beverage
6                  Control;

7            b.    City of San Francisco Occupancy Permit; and
8
9            c.    City of San Francisco Board of Health Permit.

10      22.    Plaintiff BT California, LLC ("BT California") is a Nevada Corporation duly
11  organized under the laws of the State of Nevada and authorized to conduct business in the State of
12  California.  BT California does business as Vanity Nightclubat 412 Broadway, San Francisco,
13  California.

14      23.    BT California presents lawful entertainment in conformity with its various
15  governmental licenses, permits, and other authorizations, including but not limited to:

16           a.    Liquor License issued by the California Department of Alcoholic Beverage
17                 Control;

18           b.    City of San Francisco Occupancy Permit; and
19
20           c.    City of San Francisco Board of Health Permit.

21      24.    Plaintiff Deja Vu Colorado Springs, Inc. ("DV Colorado Springs") is a Colorado
22  corporation duly organized and authorized to conduct business in the State of Colorado.  DV
23  Colorado Springs does business as Deja Vu Showgirls at 2145 B Street in Colorado Springs,
24  California.

25      25.    DV Colorado Springs presents lawful entertainment in conformity with its various
26  governmental licenses, permits, and other authorizations, including but not limited to:

27           a.    El Paso County Public Health license/permit for Limited Food Service; and
28           b.    Colorado Department of Revenue Sales Tax License.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                - 6 -         PLAINTIFFS' VERIFIED SECOND AMENDED
                                                    COMPLAINT FOR EMERGENCY TEMPORARY
                                                    RESTRAINING ORDER

26.     Plaintiff Rouge Portland, LLC ("Rouge") is an Oregon Limited Liability Company duly organized and authorized to conduct business in the State of Oregon.  Rouge does business as Club Rouge at 403 SW Stark Street in Portland, Oregon.

27.     Rouge presents lawful entertainment in conformity with its various governmental licenses, permits, and other authorizations, including but not limited to:

    a.   Liquor License issued by the State of Oregon; and

    b.   County Restaurant License.

28.     Plaintiff Deja Vu Spokane, Inc. ("DV Spokane") is a Washington corporation duly organized and authorized to conduct business in the State of Washington.  DV Spokane does business as Deja Vu Showgirls at East 8722 Sprague Avenue in Spokane Valley, Washington.

29.     DV Spokane presents lawful entertainment in conformity with its various governmental licenses, permits, and other authorizations, including but not limited to:

    a.   Adult Entertainment Establishment Premises issued by the City of Spokane Valley Community Development Department;

    b.   General Business License issued by the City of Spokane Valley; and

    c.   Business License issued by the State of Washington.

30.     Plaintiff Dreamgirls of Lake City, LLC ("DG Lake City") is a Washington Limited Liability Company duly organized and authorized to conduct business in the State of Washington. DG Lake City does business as Dream Girls at Rick's at 11332 Lake City Way NE in Seattle, Washington.

31.     DG Lake City presents lawful entertainment in conformity with it is various governmental licenses, permits, and other authorizations, including but not limited to:

    a.   Adult Entertainment Premises Permit issued by the City of Seattle;

    b.   Business License Tax Certificate and Business License issued by the City of Seattle; and

    c.   Assembly Occupancy Permit issued by the City of Seattle.

32.     Plaintiff Deja Vu Seattle, LLC ("DV Seattle") is a Washington Limited Liability Company duly organized and authorized to conduct business in the State of Washington.  DV Seattle does business as Devil's Triangle at 2027 Westlake in Seattle, Washington.

33.     DV Seattle presents lawful entertainment in conformity with it is various governmental licenses, permits, and other authorizations, including but not limited to:

     a.   Admissions Tax Permit issued by the City of Seattle;

     b.   Adult Entertainment Premises Permit issued by the City of Seattle; and

     c.   Food Permit issued by the Public Health Department of Seattle & King County.

34.     Plaintiff Deja Vu Lake City, Inc. ("DV Lake City") is a Washington corporation duly organized and authorized to conduct business in the State of Washington.  DV Lake City does business as Deja Vu Showgirls at 14556 Bothell Way NE in Lake Forest Park, Washington.

35.     DV Lake City presents lawful entertainment in conformity with it is various governmental licenses, permits, and other authorizations, including but not limited to:

     a.   Adult Cabaret License issued by the City of Lake Forest Park;

     b.   Business License issued by the City of Lake Forest Park; and

     c.   Commercial Places of Assembly Permit issued by the Northshore Fire Department.

36.     Plaintiff Dreamgirls of Tacoma, LLC ("DG Tacoma") is a Washington Limited Liability Company duly organized and authorized to conduct business in the State of Washington. DG Tacoma does business as Dream Girls at Fox's at 10707 Pacific Avenue South, Suite G in Tacoma, Washington.

37.     DG Tacoma presents lawful entertainment in conformity with it is various governmental licenses, permits, and other authorizations, including but not limited to:

     a.   Adult Entertainment Premises Permit issued by Tacoma-Pierce County;

     b.   Place of Assembly Permit Issued by West Pierce Fire & Rescue; and

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                                 - 8 -                    PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

c.  Business License issued by the State of Washington.

38.    Plaintiff Dreamgirls of Seattle, LLC ("DG Seattle") is a Washington Limited Liability Company duly organized and authorized to conduct business in the State of Washington. DG Seattle does business as Dream Girls at 1530 First Avenue South in Seattle, Washington.

39.    DG Seattle presents lawful entertainment in conformity with it is various governmental licenses, permits, and other authorizations, including but not limited to:

a.  Adult Entertainment Premises Permit issued by the City of Seattle;

b.  Admission Tax Registration Permit issued by the City of Seattle;

c.  Business License Tax Certificate issued by the City of Seattle; and

d.  Business License issued by the State of Washington.

40.    Plaintiffs DV San Francisco, Bijou, Garden of Eden, DVS San Francisco, Gold Club, SAW, BT California, DV Colorado Springs, Rouge, DV Spokane, DG Lake City, DV Seattle, DV Lake City, DG Tacoma, DG Seattle are each a "Plaintiff" and are collectively referred to as "Plaintiffs."  DV San Francisco, Bijou, Garden of Eden, DVS San Francisco, Gold Club, SAW, and BT California will also be referred to as the "San Francisco Plaintiffs."  DV Spokane, DG Lake City, DV Seattle, DV Lake City, DG Tacoma, and DG Seattle will also be referred to as the "Washington Plaintiffs."

41.    Defendant United States Small Business Administration (the "SBA") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633, *et seq*.  The SBA maintains a branch office at 455 Market Street, Suite 600, San Francisco, California, which is within the Northern District of California.

42.    Defendant Jovita Carranza ("Carranza," or the "Administrator") is the Administrator of the SBA, a Cabinet-level position, and is sued in her official capacity only, as the Administrator of the SBA.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                              - 9 -                    PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

43.     Authority to sue the Administrator is granted by 15 U.S.C. § 634(b), which states, in part:

> In the performance of, and with respect to, the functions, powers, and duties vested
>
> in him by this chapter the Administrator may—
>
> (1) sue and be sued in any court of record of a State having general jurisdiction, or
>
> in any United States district court, and jurisdiction is conferred upon such district
>
> court to determine such controversies without regard to the amount in controversy
>
> . . . .

44.     Plaintiffs currently do not seek monetary damage but seek only to restrain the actions of the Administrator in her official capacity.

45.     The United States of America is a sovereign nation dedicated to the protection of life, liberty, and property, as set forth in the Bill of Rights and other provisions and amendments to the Constitution of the United States of America.

**RELEVANT STATUTORY PROVISIONS AND ADMINISTRATIVE REGULATIONS**

46.     Having been duly enacted by Congress and endorsed by the President, the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act" or simply the "Act"), Pub. L. 116-136, became law on or about March 27, 2020.

47.     The CARES Act created, *inter alia*, Emergency Economic Injury Disaster Loans provisions (the "Emergency EIDL Program") codified at 15 U.S.C. § 9009.

48.     The Emergency EIDL Program modified the then-existing Economic Injury Disaster Loan ("EDIL") program, codified at 15 U.S.C.A. 636(b)(2) (West 2020).

49.     A true and accurate copy of Section 1110 of the CARES Act, which sets forth the Emergency EIDL Program provisions, is attached hereto as **Exhibit A**.

50.     "Emergency EIDL Grant Program" is set forth in 15 U.S.C. § 9009(e). The Emergency EIDL Grant Program was originally funded by Congress to a maximum of $10,000,000,000.

51.     15 U.S.C.A. § 9009(a)(2) defines the term "eligible entity" to mean: (A) a business with not more than 500 employees;

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

Case No. 3:20-cv-03982                                    - 10 -                    PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

1    (B) any individual who operates under a sole proprietorship, with or without

2    employees, or as an independent contractor;

3    (C) a cooperative with not more than 500 employees;

4    (D) an ESOP (as defined in section 632 of this title) with not more than 500

5    employees;

6    (E) a tribal small business concern, as described in section 657a(b)(2)(C) of this

7    title, with not more than 500 employees; or

8    (F) an agricultural enterprise (as defined in section 647(b) of this title) with not

9    more than 500 employees.

10    52.    15 U.S.C.A. § 9009(b), entitled "Eligible entities," further states: "During the

11  covered period, in addition to small business concerns, private nonprofit organizations, and small

12  agricultural cooperatives, an eligible entity shall be eligible for a loan made under section

13  636(b)(2) of this title."

14    53.    Prior to the adoption of the CARES Act, the SBA was authorized to make and/or

15  guarantee loans for small business concerns including: "Section 7(a)" or "small business" loans,

16  *see* 15 U.S.C.A. 636(a) (West 2020); "Business Physical Damage Loans" ("BPDL"), see 15

17  U.S.C.A. 636(b)(1) (West 2020); and Economic Injury Disaster Loans ("EIDL"), also defined

18  above), see 15 U.S.C.A. 636(b)(2) (West 2020)

19    54.    13 C.F.R. § 123.301, applicable to the traditional EIDL program, states in part:

20  "Your business is not eligible for an economic disaster loan if you (or any principal of the

21  business) fits into any of the categories in §§ 123.101 and 123.201 . . . ."

22    55.    13 C.F.R. § 123.201, directly applicable to the traditional BPDL program, states in

23  part:

24    (f) You are not eligible if your business presents live performances of a prurient

25    sexual nature or derives directly or indirectly more than de minimis gross revenue

26    through the sale of products or services, or the presentation of any depictions or

27    displays, of a prurient sexual nature.

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                     - 11 -                PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

56.     Defendants, or any of them, take the position that 13 C.F.R. § 123.201 applies to loan made or sought pursuant to the Emergency EIDL Program.

57.     The SBA or its Administrator have traditionally excluded certain entities from receiving Section 7(a) loans.  Specific entity types excluded from receiving Section 7(a) loans are set forth in 13 C.F.R. § 120.110.

58.     13 C.F.R. § 120.110(p) excludes from Section 7(a) loan eligibility: "Businesses which: (1) Present live performances of a prurient sexual nature; or (2) Derive directly or indirectly more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, or a prurient sexual nature;".

59.     The SBA or its Administrator's record of promulgating 13 C.F.R. § 120.110 is set forth in 60 Fed. Reg. 64356 *et seq.*, a true and accurate but abridged copy of which, containing 60 Fed. Reg. 64360, is attached hereto as **Exhibit B**.

60.     The SBA or its Administrator promulgated rules that effectively adopted the 13 C.F.R. § 120.110 restrictions for Section 7(a) loans and apply them to EIDLs.

61.     In or about 1995, the SBA or its Administrator proposed certain rules applicable to the traditional EIDL program.  A true and accurate copy of 60 Fed. Reg. 58013 *et seq.*, (Nov. 24, 1995) is attached hereto as **Exhibit C**.

62.     The proposed rule lodged at 60 Fed. Reg. 58013 *et seq.*, *inter alia*, referenced using 13 C.F.R. § 123.201 BPDL eligibility criteria for the EIDL program.

63.     In or about 1998, the SBA issued a proposed rule to amend the EIDL program to "codify the SBA's existing policy of using the same ineligibility criteria for its economic injury disaster and business loan program[s]."  This proposed rule incorporated 13 C.F.R. § 123.201 to be applicable to EIDL loans.  A true and accurate copy of this proposed rule, located at 63 Fed. Reg. 20140, is attached hereto as **Exhibit D**.

64.     Ultimately, the SBA issued a final rule, located at 63 Fed. Reg. 46643 and codified in part at 13 C.F.R. § 123.301, making the eligibility criteria found at 13 C.F.R. § 123.201, including subsection 201(f) thereof, applicable to traditional EIDL loans.  A true and accurate copy of 63 Fed. Reg. 46643 *et seq.* is attached hereto as **Exhibit E**.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                    - 12 -                    PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

65.     The eligibility requirements and exclusion contained in 13 C.F.R. § 123.201(f) and 13 C.F.R. § 123.301, as they relate to or are applied to the EIDL program or the Emergency EIDL Program, are referred to as the "Regulations."

66.     The SBA and or its Administrator has further adopted and implemented certain mandatory forms that an entity must complete to apply for an EIDL loan including as part of the Emergency EIDL program.

67.     The SBA's mandatory application for an EIDL includes the following language:

> The Applicant understands that the SBA is relying upon the self-certifications contained in this application to verify that the Applicant is an eligible entity to receive the advance, and that the Applicant is providing this self-certification under penalty of perjury pursuant to 28 U.S.C. 1746 for verification purposes.

> *        *        *

> Applicant must review and check all of the following (if Applicant is unable to check all of the following, Applicant is not an Eligible Entity):

> *        *        *

> Applicant does not present live performances of a prurient sexual nature or derive directly or indirectly more than de minimus gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature.

68.     A true and accurate copy of a portion of the SBA's online application process is attached hereto as **Exhibit F**.

69.     As of at least June 15, 2020, the SBA's website states that "only agricultural business applications will be accepted due to limited funding availability . . . ." A true and accurate copy of the SBA's COVID-19 online information portal is attached hereto as **Exhibit G**. Upon information and belief, the SBA began limiting its acceptance of EIDL applications to only agricultural businesses (the "Agriculture-Only Policy") after Plaintiffs submitted their EIDL applications.

## GENERAL ALLEGATIONS

70.     Plaintiffs are commercial establishments open to the consenting adult public which are in the business of, have presented, and desire to continue to present in the future, live female

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

Case No. 3:20-cv-03982                        - 13 -                        PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

performance dance entertainment which is fully-clothed, at times topless, and at times for certain Plaintiffs, fully nude.

71.     None of the live performances at Plaintiffs' establishments are unlawful or obscene.  No Plaintiff, nor any of the entertainers who have performed on their premises have ever been charged, let alone convicted, of any crimes of obscenity.

72.     Plaintiffs present lawful entertainment in conformity with their various licenses, permits, or governmental authorizations, as set forth above.

73.     Plaintiffs have been severely impacted by the COVID-19 pandemic.  Plaintiffs have been and continue to be shuttered as a result of governmental "stay-at-home" orders or similar orders in their particular state. As a result of such state-ordered closures, Plaintiffs have suffered substantial business losses, but plan to reopen when legally permitted to do so.  All Plaintiffs remain closed as of the date this complaint is filed.

74.     In order to sustain themselves, to survive their business losses, to satisfy their business, and to provide monetary relief to their employees, Plaintiffs applied for EIDLs through the Emergency EIDL Program.

75.     All Plaintiffs intend to use the EIDL funds in accordance with the Emergency EIDL Program including using any advance provided pursuant to the Emergency EIDL Grant Program, 15 U.S.C.A. § 9009(e) (West 2020), in accordance with the requirements of § 9009(e)(4).

76.     Plaintiffs each applied for an EIDL through the Emergency EIDL Program on or about April 16, 2020.

77.     All Plaintiffs are fully qualified, but for the Regulations, to obtain loans in accordance with the Emergency EIDL Program.

78.     On May 22, 2020 the SBA issued correspondence to each Plaintiff other than SAW and BT California informing each that their EIDL application had been denied.  The stated reason for each such denial is: "Business activity is not eligible.  EIDL assistance is available only to a small business engaged in an eligible business activity.  Business activity means the nature of the business conducted by the applicant."

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                          - 14 -                          PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

79.     A true and accurate copy of the denial letter issued to DV San Francisco is attached hereto as **Exhibit H**.

80.     A true and accurate copy of the denial letter issued to Bijou is attached hereto as **Exhibit I**.

81.     A true and accurate copy of the denial letter issued to Garden of Eden attached hereto as **Exhibit J**.

82.     A true and accurate copy of the denial letter issued to DVS San Francisco is attached hereto as **Exhibit K**.

83.     A true and accurate copy of the denial letter issued to Gold Club is attached hereto as **Exhibit L**.

84.     A true and accurate copy of the denial letter issued to DV Colorado Springs is attached hereto as **Exhibit M**.

85.     A true and accurate copy of the denial letter issued to Rouge is attached hereto as **Exhibit N**.

86.     A true and accurate copy of the denial letter issued to DV Spokane is attached hereto as **Exhibit O**.

87.     A true and accurate copy of the denial letter issued to DG Lake City is attached hereto as **Exhibit P**.

88.     A true and accurate copy of the denial letter issued to DV Seattle is attached hereto as **Exhibit Q**.

89.     A true and accurate copy of the denial letter issued to DV Lake City is attached hereto as **Exhibit R**.

90.     A true and accurate copy of the denial letter issued to DG Tacoma is attached hereto as **Exhibit S**.

91.     A true and accurate copy of the denial letter issued to DG Seattle is attached hereto as **Exhibit T**.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                                   - 15 -                    PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

92.     Plaintiffs understand that the basis for the business "nature" rejection was the Regulations.

93.     As for SAW, it understands from the SBA Disaster Loan website that its EIDL loan application is "On Hold" and the amount of the EIDL loan for which it is under consideration is "$0."  A true and accurate copy of the SBA Disaster Loan website page in that regard is attached hereto as **Exhibit U**.  To date, SAW has not received a denial letter nor has it received notice that its loan application has been, or will be, approved.

94.     As for BT California, on June 18, 2020 the SBA issued correspondence to BT California informing it that its EIDL application had been "[d]eclined."  A true and correct copy of the declination letter issued to BT California is attached hereto as **Exhibit V**.  BT California is informed and believes, and based thereon alleges, that the basis for the SBA's declination of its EIDL application was the Regulations.

95.     In the event that Plaintiffs are unable to obtain EIDL loans, each may lack the staff and/or funds to reopen following the COVID-19 pandemic, or to sustain their operations through a period of reduced revenue that will likely follow reopening, resulting in the permanent ruination of their businesses; the inability of Plaintiffs to engage in protected First Amendment activity; and the inability of Plaintiffs' staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

96.     Since the passage of the CARES Act, the SBA and its Administrator have been subject to numerous lawsuits regarding their unlawful attempts to subject CARES Act-modified programs to the SBA's historical lending exclusions, including its exclusion of small business concerns that present or derive income from the presentation of live performances of a "prurient sexual nature."

97.     In response to these various suits, the SBA and its Administrator have attempted to articulate the meaning of the word "prurient" when used in the phrases "prurient sexual nature" or "live performances of a prurient sexual nature."

98.     In <u>DV Diamond Club of Flint, LLC v. United States Small Bus. Admin.</u>, Eastern District of Michigan Case No. 20-cv-10899, at an April 30, 2020 hearing, the Defendants took the

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                    - 16 -                    PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

1    position that prurient meant "tending to arouse a 'lustful' or, you know, 'lascivious' interest in

2    sex." "The SBA's interpretation of 'prurient,' simply refers to, you know, invoking an avert

3    strong sexual interest."

4        99.    Attached hereto as **Exhibit W** is a true and accurate transcription of the April 30,

5    2020 hearing in <u>DV Diamond Club of Flint, LLC v. United States Small Bus. Admin.</u>, Eastern

6    District of Michigan Case No. 20-cv-10899.

7        100.    Also in <u>DV Diamond Club of Flint, LLC v. United States Small Bus. Admin.</u>,

8    Eastern District of Michigan Case No. 20-cv-10899, at a later May 5, 2020 hearing, the

9    Defendants took the position that prurient meant "erotic."

10        101.    Attached hereto as **Exhibit X** is a true and accurate transcription of the May 5,

11    2020 hearing in <u>DV Diamond Club of Flint, LLC v. United States Small Bus. Admin.</u>, Eastern

12    District of Michigan Case No. 20-cv-10899.

13        102.    In light of the numerous decisions to date on the invalidity of the "prurient"

14    language used in the Regulations and the numerous grounds for the Regulations being unlawful

15    and unconstitutional on their face and as applied to these Plaintiffs, any position by the

16    Defendants that the Regulations are valid or that the Regulations may be validly applied against

17    these Plaintiffs is not substantially justified.

18        <u>**COUNT I – THE REGULATIONS VIOLATE THE FIRST AMENDMENT**</u>

19        103.    Plaintiffs incorporate herein by reference each and every paragraph above as

20    though fully set forth herein.

21        104.    In asserting their First Amendment challenges to the Regulations, each Plaintiff

22    asserts not only their own rights but also the rights of their employees, and the entertainers who

23    perform on its premises.

24        105.    The Regulations violate and are contrary to the First Amendment of the United

25    States Constitution, on their face and as applied to Plaintiffs, for numerous and various reasons

26    including but not limited to:

27        a.    They are impermissible content and viewpoint-based restrictions on speech and

28            expression that cannot pass muster under strict scrutiny;

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                - 17 -          PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

b.  They are impermissible content-neutral restrictions and expression that cannot pass muster under intermediate scrutiny;

c.  They fail to conform to the constitutional standards regarding obscenity;

d.  They violate the doctrine of unconstitutional conditions;

e.  They are unconstitutionally vague under the vagueness standards for matters impacting speech and expression; and

f.  They are substantially overbroad in relation to their legitimate sweep.

106.    As a direct and proximate result of the unconstitutional aspects of the Regulations and the Defendants' application of the Regulations against Plaintiffs and their interests, Plaintiffs, their employees, and the entertainers who perform on Plaintiffs' premises have suffered and will continue to suffer irreparable injuries, including but not limited to financial ruin, business ruination, and the inability of present protected First Amendment protected entertainment.

### **COUNT II – THE REGULATIONS VIOLATE THE FIFTH AMENDMENT**

107.    Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

108.    The Regulations violate and are contrary to the Fifth Amendment of the United States Constitution, on their face and as applied to Plaintiffs, for numerous and various reasons including but not limited to:

a.  They treat establishments presenting certain forms of performance dance entertainment, such as Plaintiffs', differently from establishments presenting other forms of entertainment or no entertainment, for no compelling, important, or rational reason;

b.  They treat workers at establishments presenting certain forms of performance dance entertainment, such as Plaintiffs', differently from workers at establishments presenting other forms of entertainment or no entertainment, for no compelling, important, or rational reason;

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                                    - 18 -                PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

c.  They violate Plaintiffs' rights and those of their employees, and the entertainers who perform on their premises under the occupational liberty component of the Fifth Amendment; and

d.  They are impermissibly vague.

109.    As a direct and proximate result of the unconstitutional aspects of the Regulations and the Defendants' application of the Regulations against Plaintiffs and their interests, Plaintiffs, their employees, and the entertainers who perform on Plaintiffs' premises have suffered and will continue to suffer irreparable injuries including but not limited to financial ruin, business ruination, and the violation of the rights protected by the Fifth Amendment of the United States Constitution.

## **COUNT III – THE INVALIDITY OF THE REGULATIONS**

110.    Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

111.    The Regulations are not a legitimate or lawful exercise of the SBA or its Administrator's rulemaking authority and are otherwise invalid under the Administrative Procedure Act, 5 U.S.C.A. § 551 *et seq*. and applicable law for numerous reasons, including but not limited to:

a.  It is clear and unambiguous as to what entities are eligible for the Emergency EIDL Program under the CARES Act, which includes these Plaintiffs; thus, the SBA and its Administrator lacked authority to promulgate regulations that restricted or otherwise 'clarified' what entities are eligible for the program;

b.  The SBA and its Administrator's interpretation of the Regulations, in a manner which excludes these Plaintiffs from Emergency EIDL Program eligibility, is not a reasonable interpretation of the CARES Act or 15 U.S.C.A. § 636(b)(2);

c.  The Regulations fail to serve any lawful or legitimate regulatory purpose for the SBA or its Administrator as to the Emergency EIDL Program or otherwise.

d.  In drafting, reviewing, and enacted the provision currently codified as 15 U.S.C.A. 633(e) and otherwise, Congress has specifically spoken as to when the nature of

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                          - 19 -                PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

1    sexual expression can be used to disqualify an entity or concern from receiving

2    SBA assistance and, the Regulations are contrary to the same;

3        e.    In drafting, reviewing, and enacted the provision currently codified as 15 U.S.C.A.

4               636(a)(1)(B) and otherwise, Congress has specifically spoken as to when the

5               nature of sexual expression can be used to disqualify an entity or concern from

6               receiving SBA assistance and, the Regulations are contrary to the same;

7        f.     The Regulations are arbitrary, capricious, an abuse of discretion, or otherwise not

8               in accordance with law;

9        g.    The Regulations are contrary to Plaintiffs' constitutional rights, powers, privileges,

10             or immunities;

11       h.    The Regulations are in excess of statutory jurisdiction, authority, or limitations;

12       i.     The SBA or its Administrator failed to make a record or to otherwise articulate a

13             satisfactory explanation that the Regulations are a rational or reasonable response

14             to a problem that the agency was charged with solving; and

15       j.     The SBA or its Administrator failed to make a record or otherwise examine

16             relevant data to show that the Regulations are a rational or reasonable response to

17             a problem that the agency was charged with solving.

18       112.    The SBA or its Administrator's Agriculture-Only Policy is not a legitimate or

19   lawful exercise of the SBA or its Administrator's rulemaking authority and is otherwise invalid

20   under the Administrative Procedure Act, 5 U.S.C.A. § 551 *et seq.* and applicable law for the same

21   reasons set forth immediately above with respect to the Regulations.

22       113.    As a direct and proximate result of the invalid portions of the Regulations and the

23   Defendants' application of the Regulations against Plaintiffs and their interests, Plaintiffs, their

24   employees, and the entertainers who perform on Plaintiffs' premises have suffered and will

25   continue to suffer irreparable injuries including but not limited to financial ruin and business

26   ruination.

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                          - 20 -              PLAINTIFFS' VERIFIED SECOND AMENDED
                                                                    COMPLAINT FOR EMERGENCY TEMPORARY
                                                                    RESTRAINING ORDER

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request this Honorable Court issue and enter orders:

A)      Granting a Temporary Restraining Order, Preliminary, and Permanent Injunction, enjoining the Defendants, as well as their employees, agent, and representatives, from enforcing or utilizing in any fashion or manner whatsoever, the Regulations in regard to these Plaintiffs or the loan applications made by these Plaintiffs pursuant to the Emergency EIDL Program;

B)      Granting a Temporary Restraining Order, Preliminary, and Permanent Injunction, enjoining the Defendants, as well as their employees, agent, and representatives, from enforcing or utilizing in any fashion or manner whatsoever, the Agriculture-Only Policy in regard to these Plaintiffs or the loan applications made by these Plaintiffs pursuant to the Emergency EIDL Program;

C)      Directing the Defendants, as well as their employees, agents, and representatives, to notify, as expeditiously as possible, all SBA district and regional offices, as well as the Application Processing Department of the Disaster Assistance Office, to immediately discontinue utilizing the Regulations or the Agriculture-Only Policy in their EIDL applications and as criteria for determining eligibility thereof, and to fully process EIDL applications without reference to the Regulation or the Agriculture-Only Policy;

D)      Directing the Defendants to remove all references to the Regulations from the Online and print Emergency EIDL Application the Regulations ;

E)      Directing the Defendants, as well as their employees, agents, and representatives, to reconsider and grant all EIDL applications of the Plaintiffs if they are otherwise qualified for such loans. but for the Regulation or the Agriculture-Only Policy;

F)      Directing the Defendants, as well as their employees, agents, and representatives, including the Application Processing Department of the Disaster Assistance Office, to restore Plaintiffs to their place in the application queue as they were at the time that their applications were electronically received by the SBA and before they were improperly denied because of the Regulation

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                    - 21 -                    PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

1    G)    Awarding Plaintiffs attorneys' fees and costs against the Defendants pursuant to 28

2   U.S.C. § 2412 and otherwise; and

3    H)    Entering such other and further relief as this Court may find to be warranted in

4   these circumstances.

5
     Dated: August 6, 2020                    LONG & LEVIT LLP
6

7
                                       By: /s/ Douglas J. Melton
8                                           DOUGLAS J. MELTON
                                            SHANE M. CAHILL
9                                           Attorneys for Plaintiffs Deja Vu-San Francisco,
                                            LLC; Bijou-Century, LLC; San Francisco Garden
10                                          of Eden, LLC; Deja Vu Showgirls of San
                                            Francisco, LLC; Gold Club-SF, LLC; Deja Vu
11                                          Colorado Springs, Inc.; Rouge Portland, LLC;
                                            Deja Vu Spokane, Inc.; Dreamgirls of Lake City,
12                                          LLC; Deja Vu Seattle, LLC; Deja Vu Lake City,
                                            Inc.; Dreamgirls of Tacoma, LLC; Dreamgirls of
13                                          Seattle, LLC; SAW Entertainment, LTD; and BT
                                            California, LLC
14

15                                          BRADLEY J. SHAFER (MI P36604)*
                                            Brad@BradShaferLaw.com
16                                          MATTHEW J. HOFFER (MI P70495)*
                                            Matt@BradShaferLaw.com
17                                          ZACHARY M. YOUNGSMA (MI P84148)*
                                            Zack@BradShaferLaw.com
18                                          SHAFER & ASSOCIATES, P.C.
                                            3800 Capital City Boulevard, Suite 2
19                                          Lansing, Michigan 48906
                                            (517) 886-6560
20
                                            Attorneys for Plaintiffs
21

22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                          - 22 -          PLAINTIFFS' VERIFIED SECOND AMENDED
                                                                COMPLAINT FOR EMERGENCY TEMPORARY
                                                                RESTRAINING ORDER

1

***Signature Attestation***

2          I hereby attest that I have on file all holographic signatures corresponding to any

3    signatures indicated by a conformed signature (/S/) within this e-filed document.

4

5    Dated: August 6, 2020

6                                            By: */s/ Douglas J. Melton*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                          - 23 -          PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

**VERIFICATION OF SECOND AMENDED COMPLAINT AS TO:**
**Rogue Portland, LLC; Dreamgirls of Lake City, LLC; Deja Vu of Seattle, LLC; Dreamgirls of Tacoma, LLC; Dreamgirls of Seattle, LLC; Deja Vu Colorado Springs, Inc.; Deja Vu Spokane, Inc.; and Deja Vu Lake City, Inc.**

1.     I, Eric Forbes, am the Managing Member of: Rogue Portland, LLC; Dreamgirls of Lake City, LLC; Deja Vu of Seattle, LLC; Dreamgirls of Tacoma, LLC; and Dreamgirls of Seattle, LLC and the President of: Deja Vu Colorado Springs, Inc.; Deja Vu Spokane, Inc.; and Deja Vu Lake City, Inc. (collectively, the "Listed Entities").

2.     I make this verification upon my personal knowledge, unless specifically stated to the contrary.

3.     I have reviewed the foregoing *PLAINTIFFS' VERIFIED SECOND AMENDED COMPLAINT FOR EMERGENCY TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY RELIEF* (the "Complaint") in its entirety.

4.     The factual statements in the Complaint, as they pertain to the Listed Entities, are true and accurate to the best of my information, knowledge and belief.

5.     Except, any matters stated to be upon "information and belief," I verily believe to be true.

**I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on:  August 3, 2020

By:     Eric Forbes

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

Case No. 3:20-cv-03982                     - 24 -                     PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

**VERIFICATION OF FIRST AMENDED COMPLAINT AS TO:**
**Deja Vu – San Francisco, LLC; Bijou-Century, LLC; San Francisco Garden of Eden, LLC;**
**Deja Vu Showgirls of San Francisco, LLC; Gold Club-SF, LLC, SAW Entertainment, LTD;**
**and BT California, LLC**

1.   I, Joseph Carouba, am the Managing Member of Deja Vu – San Francisco, LLC; Bijou-Century, LLC; San Francisco Garden of Eden, LLC; Deja Vu Showgirls of San Francisco, LLC; Gold Club-SF, LLC, and BT California, LLC; and the President of: SAW Entertainment, LTD (collectively, the "Listed Entities").

2.   I make this verification upon my personal knowledge, unless specifically stated to the contrary.

3.   I have reviewed the foregoing *PLAINTIFFS' VERIFIED SECOND AMENDED COMPLAINT FOR EMERGENCY TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DECLARATORY RELIEF* (the "Complaint") in its entirety.

4.   The factual statements in the Complaint, as they pertain to the Listed Entities, are true and accurate to the best of my information, knowledge and belief.

5.   Except, any matters stated to be upon "information and belief," I verily believe to be true.

**I VERIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on: August 3, 2020

_Joseph Carouba_

By:     Joseph Carouba

4832-3694-1760, v. 3

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

Case No. 3:20-cv-03982                                   - 25 -                    PLAINTIFFS' VERIFIED SECOND AMENDED
COMPLAINT FOR EMERGENCY TEMPORARY
RESTRAINING ORDER

# EXHIBIT A

H. R. 748

# One Hundred Sixteenth Congress
## of the
## United States of America

### AT THE SECOND SESSION

*Begun and held at the City of Washington on Friday,
the third day of January, two thousand and twenty*

## An Act

To amend the Internal Revenue Code of 1986 to repeal the excise tax on high
cost employer-sponsored health coverage.

*Be it enacted by the Senate and House of Representatives of
the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Coronavirus Aid, Relief, and
Economic Security Act" or the "CARES Act".

**SEC. 2. TABLE OF CONTENTS.**

The table of contents for this Act is as follows:

Sec. 1. Short title.
Sec. 2. Table of contents.
Sec. 3. References.

DIVISION A—KEEPING WORKERS PAID AND EMPLOYED, HEALTH CARE
SYSTEM ENHANCEMENTS, AND ECONOMIC STABILIZATION

TITLE I—KEEPING AMERICAN WORKERS PAID AND EMPLOYED ACT

Sec. 1101. Definitions.
Sec. 1102. Paycheck protection program.
Sec. 1103. Entrepreneurial development.
Sec. 1104. State trade expansion program.
Sec. 1105. Waiver of matching funds requirement under the women's business cen-
ter program.
Sec. 1106. Loan forgiveness.
Sec. 1107. Direct appropriations.
Sec. 1108. Minority business development agency.
Sec. 1109. United States Treasury Program Management Authority.
Sec. 1110. Emergency EIDL grants.
Sec. 1111. Resources and services in languages other than English.
Sec. 1112. Subsidy for certain loan payments.
Sec. 1113. Bankruptcy.
Sec. 1114. Emergency rulemaking authority.

TITLE II—ASSISTANCE FOR AMERICAN WORKERS, FAMILIES, AND
BUSINESSES

Subtitle A—Unemployment Insurance Provisions

Sec. 2101. Short title.
Sec. 2102. Pandemic Unemployment Assistance.
Sec. 2103. Emergency unemployment relief for governmental entities and nonprofit
organizations.
Sec. 2104. Emergency increase in unemployment compensation benefits.
Sec. 2105. Temporary full Federal funding of the first week of compensable regular
unemployment for States with no waiting week.
Sec. 2106. Emergency State staffing flexibility.
Sec. 2107. Pandemic emergency unemployment compensation.
Sec. 2108. Temporary financing of short-time compensation payments in States
with programs in law.
Sec. 2109. Temporary financing of short-time compensation agreements.

H. R. 748—21

without submitting to the lender that is servicing the covered loan the documentation required under subsection (e).

(g) DECISION.—Not later than 60 days after the date on which a lender receives an application for loan forgiveness under this section from an eligible recipient, the lender shall issue a decision on the an application.

(h) HOLD HARMLESS.—If a lender has received the documentation required under this section from an eligible recipient attesting that the eligible recipient has accurately verified the payments for payroll costs, payments on covered mortgage obligations, payments on covered lease obligations, or covered utility payments during covered period—

(1) an enforcement action may not be taken against the lender under section 47(e) of the Small Business Act (15 U.S.C. 657t(e)) relating to loan forgiveness for the payments for payroll costs, payments on covered mortgage obligations, payments on covered lease obligations, or covered utility payments, as the case may be; and

(2) the lender shall not be subject to any penalties by the Administrator relating to loan forgiveness for the payments for payroll costs, payments on covered mortgage obligations, payments on covered lease obligations, or covered utility payments, as the case may be.

(i) TAXABILITY.—For purposes of the Internal Revenue Code of 1986, any amount which (but for this subsection) would be includible in gross income of the eligible recipient by reason of forgiveness described in subsection (b) shall be excluded from gross income.

(j) RULE OF CONSTRUCTION.—The cancellation of indebtedness on a covered loan under this section shall not otherwise modify the terms and conditions of the covered loan.

(k) REGULATIONS.—Not later than 30 days after the date of enactment of this Act, the Administrator shall issue guidance and regulations implementing this section.

**SEC. 1107. DIRECT APPROPRIATIONS.**

(a) IN GENERAL.—There is appropriated, out of amounts in the Treasury not otherwise appropriated, for the fiscal year ending September 30, 2020, to remain available until September 30, 2021, for additional amounts—

(1) $349,000,000,000 under the heading "Small Business Administration—Business Loans Program Account, CARES Act" for the cost of guaranteed loans as authorized under paragraph (36) of section 7(a) of the Small Business Act (15 U.S.C. 636(a)), as added by section 1102(a) of this Act;

(2) $675,000,000 under the heading "Small Business Administration—Salaries and Expenses" for salaries and expenses of the Administration;

(3) $25,000,000 under the heading "Small Business Administration—Office of Inspector General", to remain available until September 30, 2024, for necessary expenses of the Office of Inspector General of the Administration in carrying out the provisions of the Inspector General Act of 1978 (5 U.S.C. App.);

(4) $265,000,000 under the heading "Small Business Administration—Entrepreneurial Development Programs", of which—

H. R. 748—22

(A) $240,000,000 shall be for carrying out section 1103(b) of this Act; and

(B) $25,000,000 shall be for carrying out section 1103(c) of this Act;

(5) $10,000,000 under the heading "Department of Commerce—Minority Business Development Agency" for minority business centers of the Minority Business Development Agency to provide technical assistance to small business concerns;

(6) $10,000,000,000 under the heading "Small Business Administration—Emergency EIDL Grants" shall be for carrying out section 1110 of this Act;

(7) $17,000,000,000 under the heading "Small Business Administration—Business Loans Program Account, CARES Act" shall be for carrying out section 1112 of this Act; and

(8) $25,000,000 under the heading "Department of the Treasury—Departmental Offices—Salaries and Expenses" shall be for carrying out section 1109 of this Act.

(b) SECONDARY MARKET.—During the period beginning on the date of enactment of this Act and ending on September 30, 2021, guarantees of trust certificates authorized by section 5(g) of the Small Business Act (15 U.S.C. 635(g)) shall not exceed a principal amount of $100,000,000,000.

(c) REPORTS.—Not later than 180 days after the date of enactment of this Act, the Administrator shall submit to the Committee on Appropriations of the Senate and the Committee on Appropriations of the House of Representatives a detailed expenditure plan for using the amounts appropriated to the Administration under subsection (a).

### SEC. 1108. MINORITY BUSINESS DEVELOPMENT AGENCY.

(a) DEFINITIONS.—In this section—

(1) the term "Agency" means the Minority Business Development Agency of the Department of Commerce;

(2) the term "minority business center" means a Business Center of the Agency;

(3) the term "minority business enterprise" means a for-profit business enterprise—

(A) not less than 51 percent of which is owned by 1 or more socially disadvantaged individuals, as determined by the Agency; and

(B) the management and daily business operations of which are controlled by 1 or more socially disadvantaged individuals, as determined by the Agency; and

(4) the term "minority chamber of commerce" means a chamber of commerce developed specifically to support minority business enterprises.

(b) EDUCATION, TRAINING, AND ADVISING GRANTS.—

(1) IN GENERAL.—The Agency may provide financial assistance in the form of grants to minority business centers and minority chambers of commerce to provide education, training, and advising to minority business enterprises.

(2) USE OF FUNDS.—Grants under this section shall be used for the education, training, and advising of minority business enterprises and their employees on—

(A) accessing and applying for resources provided by the Agency and other Federal resources relating to access to capital and business resiliency;

H. R. 748—26

(C) A guarantee percentage that, to the maximum extent practicable, is consistent with the guarantee percentage required under subparagraph (F) of section 7(a)(2) of the Small Business Act (15 U.S.C. 636(a)(2)), as added by section 1102 of this Act.

(D) Loan forgiveness under terms and conditions that, to the maximum extent practicable, is consistent with the terms and conditions for loan forgiveness under section 1106 of this Act.

(e) ADDITIONAL REGULATIONS GENERALLY.—The Secretary may issue regulations and guidance as necessary to carry out the purposes of this section, including to allow additional lenders to originate loans under this title and to establish terms and conditions such as compensation, underwriting standards, interest rates, and maturity for under this section.

(f) CERTIFICATION.—As a condition of receiving a loan under this section, a borrower shall certify under terms acceptable to the Secretary that the borrower—

(1) does not have an application pending for a loan under section 7(a) of the Small Business Act (15 U.S.C. 636(a)) for the same purpose; and

(2) has not received such a loan during the period beginning on February 15, 2020 and ending on December 31, 2020.

(g) OPT-IN FOR SBA QUALIFIED LENDERS.—Lenders qualified to participate as a lender under 7(a) of the Small Business Act (15 U.S.C. 636(a)) may elect to participate in the paycheck protection program under the criteria, terms, and conditions established under this section. Such participation shall not preclude the lenders from continuing participation as a lender under section 7(a) of the Small Business Act (15 U.S.C. 636(a)).

(h) PROGRAM ADMINISTRATION.—With guidance from the Secretary, the Administrator shall administer the program established under this section, including the making and purchasing of guarantees on loans under the program, until the date on which the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the Coronavirus Disease 2019 (COVID–19) expires.

(i) CRIMINAL PENALTIES.—A loan under this section shall be deemed to be a loan under the Small Business Act (15 U.S.C. 631 et seq.) for purposes of section 16 of such Act (15 U.S.C. 645).

**SEC. 1110. EMERGENCY EIDL GRANTS.**

(a) DEFINITIONS.—In this section—

(1) the term "covered period" means the period beginning on January 31, 2020 and ending on December 31, 2020; and

(2) the term "eligible entity" means—

(A) a business with not more than 500 employees;

(B) any individual who operates under a sole proprietorship, with or without employees, or as an independent contractor;

(C) a cooperative with not more than 500 employees;

(D) an ESOP (as defined in section 3 of the Small Business Act (15 U.S.C. 632)) with not more than 500 employees; or

**EXHIBIT A**

**Page 4**

H. R. 748—27

(E) a tribal small business concern, as described in section 31(b)(2)(C) of the Small Business Act (15 U.S.C. 657a(b)(2)(C)), with not more than 500 employees.

(b) ELIGIBLE ENTITIES.—During the covered period, in addition to small business concerns, private nonprofit organizations, and small agricultural cooperatives, an eligible entity shall be eligible for a loan made under section 7(b)(2) of the Small Business Act (15 U.S.C. 636(b)(2)).

(c) TERMS; CREDIT ELSEWHERE.—With respect to a loan made under section 7(b)(2) of the Small Business Act (15 U.S.C. 636(b)(2)) in response to COVID–19 during the covered period, the Administrator shall waive—

(1) any rules related the personal guarantee on advances and loans of not more than $200,000 during the covered period for all applicants;

(2) the requirement that an applicant needs to be in business for the 1-year period before the disaster, except that no waiver may be made for a business that was not in operation on January 31, 2020; and

(3) the requirement in the flush matter following subparagraph (E) of section 7(b)(2) of the Small Business Act (15 U.S.C. 636(b)(2)), as so redesignated by subsection (f) of this section, that an applicant be unable to obtain credit elsewhere.

(d) APPROVAL AND ABILITY TO REPAY FOR SMALL DOLLAR LOANS.—With respect to a loan made under section 7(b)(2) of the Small Business Act (15 U.S.C. 636(b)(2)) in response to COVID–19 during the covered period, the Administrator may—

(1) approve an applicant based solely on the credit score of the applicant and shall not require an applicant to submit a tax return or a tax return transcript for such approval; or

(2) use alternative appropriate methods to determine an applicant's ability to repay.

(e) EMERGENCY GRANT.—

(1) IN GENERAL.—During the covered period, an entity included for eligibility in subsection (b), including small business concerns, private nonprofit organizations, and small agricultural cooperatives, that applies for a loan under section 7(b)(2) of the Small Business Act (15 U.S.C. 636(b)(2)) in response to COVID–19 may request that the Administrator provide an advance that is, subject to paragraph (3), in the amount requested by such applicant to such applicant within 3 days after the Administrator receives an application from such applicant.

(2) VERIFICATION.—Before disbursing amounts under this subsection, the Administrator shall verify that the applicant is an eligible entity by accepting a self-certification from the applicant under penalty of perjury pursuant to section 1746 of title 28 United States Code.

(3) AMOUNT.—The amount of an advance provided under this subsection shall be not more than $10,000.

(4) USE OF FUNDS.—An advance provided under this subsection may be used to address any allowable purpose for a loan made under section 7(b)(2) of the Small Business Act (15 U.S.C. 636(b)(2)), including—

(A) providing paid sick leave to employees unable to work due to the direct effect of the COVID–19;

H. R. 748—28

(B) maintaining payroll to retain employees during business disruptions or substantial slowdowns;

(C) meeting increased costs to obtain materials unavailable from the applicant's original source due to interrupted supply chains;

(D) making rent or mortgage payments; and

(E) repaying obligations that cannot be met due to revenue losses.

(5) REPAYMENT.—An applicant shall not be required to repay any amounts of an advance provided under this subsection, even if subsequently denied a loan under section 7(b)(2) of the Small Business Act (15 U.S.C. 636(b)(2)).

(6) UNEMPLOYMENT GRANT.—If an applicant that receives an advance under this subsection transfers into, or is approved for, the loan program under section 7(a) of the Small Business Act (15 U.S.C. 636(a)), the advance amount shall be reduced from the loan forgiveness amount for a loan for payroll costs made under such section 7(a).

(7) AUTHORIZATION OF APPROPRIATIONS.—There is authorized to be appropriated to the Administration $10,000,000,000 to carry out this subsection.

(8) TERMINATION.—The authority to carry out grants under this subsection shall terminate on December 31, 2020.

(f) EMERGENCIES INVOLVING FEDERAL PRIMARY RESPONSIBILITY QUALIFYING FOR SBA ASSISTANCE.—Section 7(b)(2) of the Small Business Act (15 U.S.C. 636(b)(2)) is amended—

(1) in subparagraph (A), by striking "or" at the end;

(2) in subparagraph (B), by striking "or" at the end;

(3) in subparagraph (C), by striking "or" at the end;

(4) by redesignating subparagraph (D) as subparagraph (E);

(5) by inserting after subparagraph (C) the following:

"(D) an emergency involving Federal primary responsibility determined to exist by the President under the section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5191(b)); or"; and

(6) in subparagraph (E), as so redesignated—

(A) by striking "or (C)" and inserting "(C), or (D)";

(B) by striking "disaster declaration" each place it appears and inserting "disaster or emergency declaration";

(C) by striking "disaster has occurred" and inserting "disaster or emergency has occurred";

(D) by striking "such disaster" and inserting "such disaster or emergency"; and

(E) by striking "disaster stricken" and inserting "disaster- or emergency-stricken"; and

(7) in the flush matter following subparagraph (E), as so redesignated, by striking the period at the end and inserting the following: ": *Provided further*, That for purposes of subparagraph (D), the Administrator shall deem that such an emergency affects each State or subdivision thereof (including counties), and that each State or subdivision has sufficient economic damage to small business concerns to qualify for assistance under this paragraph and the Administrator shall accept applications for such assistance immediately.".

EXHIBIT B

# Proposed Rules

**Federal Register**

Vol. 60, No. 241

Friday, December 15, 1995

This section of the FEDERAL REGISTER contains notices to the public of the proposed issuance of rules and regulations. The purpose of these notices is to give interested persons an opportunity to participate in the rule making prior to the adoption of the final rules.

## SMALL BUSINESS ADMINISTRATION

### 13 CFR Parts 108, 116, 120, 122, 131

### Business Loan Programs

**AGENCY:** Small Business Administration (SBA).

**ACTION:** Proposed rule.

**SUMMARY:** In response to President Clinton's government-wide regulatory review directive, SBA has completed a page-by-page and line-by-line review of all of its existing regulations. SBA determined that it could eliminate some regulations and consolidate, clarify, and simplify the remainder. This proposed rule consolidates five current CFR parts into one Part to be known as Part 120. The surviving Part 120 covers virtually all policies and regulations, other than size standards, applicable to SBA's business (non-disaster) loan programs. Almost all provisions have been reworded, renumbered, and relocated. There are a few new or revised policies. Several sections have been deleted. However, most of the revisions merely streamline and clarify the regulations and do not represent substantive change.

**DATES:** Comments must be submitted on or before January 16, 1996.

**ADDRESSES:** Address written comments to David R. Kohler, Associate General Counsel for General Law, (120) Small Business Administration, 409 3rd Street S.W., Washington, D.C. 20416.

**FOR FURTHER INFORMATION CONTACT:** Ronald Matzner, Associate Deputy General Counsel; Office of General Counsel, at (202) 205–6882.

**SUPPLEMENTARY INFORMATION:** On March 4, 1995, President Clinton directed all federal agencies to conduct a page-by-page, line-by-line review of their existing regulations to determine which could be eliminated or streamlined. The President's directive complemented SBA's ongoing reinvention effort, which had already targeted portions of the business loan programs for streamlining and simplification. From its review of

its business loan programs, SBA is proposing to eliminate many pages of business loan regulations and consolidate and simplify the remainder.

The proposed rule combines Parts 108, 116, 120, 122 and 131 of 13 CFR into one new Part to be known as Part 120. The new Part 120 will regulate all of SBA's non-disaster financial assistance to small businesses under its general business loan program (''7(a) loans''), its microloan demonstration program (''Microloans''), and its development company program (''504 loans'').

Many repetitive and overlapping sections from the current regulations will be eliminated. The remaining provisions will be easy to find and easy to understand. Formerly, provisions applicable to a business loan program were often located in different Parts. Sometimes unintended differences developed between the loan programs in the interpretation or implementation of similar program policies because of minor inconsistencies in the language of the provisions in the several Parts. These inconsistencies have been eliminated.

In the proposed rule, the basic requirements that apply to all of the business loan programs are located in subpart A. These include elements currently found in portions of Parts 108, 116, and 120. Policies specific to a particular program are in the separate subpart applying to that program. Rules specific to 7(a) loans will be in subpart B and include elements currently in portions of Parts 116, 120, and 122. Regulations applying to SBA's special purpose loans currently in Part 122 and a portion of Part 116 will be in subpart C. Subparts D, E, and F will contain rules regarding lenders, program administration, and the secondary market currently found primarily in Part 120. The loan moratorium provisions presently in Part 131 will also be in subpart E. Subpart G will contain rules specific to Microloans currently in Part 122. Finally, regulations applying only to 504 loans currently located in Part 108 will be in subpart H. The following chart summarizes the proposed rule:

| Subpart | Subject matter covered | Section numbers |
|---|---|---|
| Introduction ... | Overview of Part 120; definitions. | 120.1 to 120.99. |
| A .................... | Policies applicable to all business loans. | 120.100 to 120.199. |
| B .................... | Loanmaking policy specific to Guarantees and Direct 7(a) Loans. | 120.200 to 120.299. |
| C .................... | Special Purpose Loans. | 120.300 to 120.399. |
| D .................... | Lenders ....... | 120.400 to 120.499. |
| E .................... | Loan Administration. | 120.500 to 120.599. |
| F .................... | Secondary Market. | 120.600 to 120.699. |
| G .................... | Microloan Demonstration Program. | 120.700 to 120.799. |
| H .................... | Development Company Loan Program (504). | 120.800 to 120.899. |

The most noticeable change in the proposed regulation is in the format. The rule is written in a ''user-friendly'', ''plain-language'' style. Provisions have been grouped in logical sequences. Descriptive headings make it easier to find sections. Hyphenated section numbers are no longer used. Questions and answers are sometimes used. Wherever possible, ordinary language is used instead of ''government-speak''.

SBA's intent is to write regulations that provide easy-to-comprehend notice of the general content of a policy, rather than detailed information explaining or expounding upon that policy. Much explanatory material currently in the regulations and used primarily by SBA personnel to implement SBA's programs has been eliminated from the proposed rule, but is available to the public and may be found in SBA policy guidances, Standard Operating Procedures (''SOPs''), and other SBA materials.

Most of the revisions do not represent policy changes. In many cases, the wording of the regulation has been changed to conform to actual conduct. Although SBA is not aware of any instances, SBA requests comments regarding any inadvertent substantive changes which may have been caused by rewording and format changes.

whether the prohibition extends to businesses principally engaged in promoting religion through their activities. Nonetheless, such businesses in the past have been found to be ineligible.

SBA's primary focus is to provide financial assistance to for-profit small businesses that can contribute to job growth and economic development in the United States. Within the limits set by the Establishment Clause of the Constitution, SBA does not disqualify otherwise eligible small businesses from receiving religious assistance merely because they offer religious books, articles, or other products for sale or because they support or encourage moral and ethical values based upon religious beliefs. At the same time, SBA does not make financial assistance available to religious entities or their affiliates for use in directly promoting or teaching religion.

The Establishment Clause of the First Amendment, which states ''Congress shall make no law respecting an establishment of religion,'' serves as a limitation on governmental activities with regard to religion. The Establishment Clause primarily proscribes ''sponsorship, financial support, and active involvement of the sovereign in religious activity.'' *Walz* v. *Tax Commission,* 397 U.S. 664, 668 (1970). ''Neither a state nor the Federal Government * * * can pass laws which aid one religion, aid all religions, or prefer one religion over another * * * No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion.'' *Everson* v. *Bd. of Educ.,* 330 U.S. 1, 15–16 (1947); see also *Grand Rapids School Dist.* v. *Ball,* 473 U.S. 373, 381 (1985) (quoting this language); *McCollum* v. *Bd. of Educ.,* 333 U.S. 203, 210 (1948) (same).

Under the proposed rule, SBA would not provide financial assistance to businesses principally engaged in teaching, instructing, counseling, or indoctrinating religion or religious beliefs. While incidental or indirect support of religious objectives might be permissible, SBA would not provide financial assistance to a newspaper, broadcasting business, day care center, or private school principally engaged in such activities.

Some of the more difficult eligibility inquiries received by SBA field offices have involved businesses which engage in activities in a secular setting which may be considered to be religious in nature. The U.S. Supreme Court has held that aid used to fund specifically religious activities in an otherwise substantially secular setting, has the primary effect of advancing religion, and therefore violates the Establishment Clause. *Hunt* v. *McNair,* 413 U.S. 734 (1973); *Bowen* v. *Kendrick,* 487 U.S. 589, 613 (1988). The facts of each situation must be carefully examined. With the above Supreme Court standard in mind, SBA proposes to include among ineligible businesses those principally engaged in teaching, instructing, counseling or indoctrinating religion or religious beliefs, whether the setting is religious or secular, because, in SBA's view, financial assistance to such small businesses would violate the Establishment Clause.

SBA field office personnel and others also have sought guidance on the eligibility of small businesses which sell sexually oriented products or services, or engage in sexually oriented activities. The present regulation is silent regarding obscene, pornographic, or sexually oriented activities. A business engaging in any such activity that is illegal is ineligible under § 120.110(h) of this regulation. However, SBA receives inquiries regarding businesses engaged in activities which, while not illegal, may be considered by the average person to be obscene or pornographic.

''Obscene'' material is not protected by the First Amendment. It has been defined by the United States Supreme Court in the context of a criminal case, *Miller* v. *California,* 413 U.S. 15, 24 (1973), as follows: ''* * * whether a work which depicts or describes sexual conduct is obscene is [determined by] whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest, whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.''

Under Supreme Court precedent, ''[w]hen the government appropriates funds to establish a program, it is entitled to define the limits of that program.'' *Rust* v. *Sullivan,* 114 L.Ed.2d 233, 256 (1991). In implementing its programs, SBA must also follow the Congressional mandate set forth in Section 4(d) of the Small Business Act (15 U.S.C. 633(d)) (''the Act'') to consider the public interest in granting or denying an application for SBA financial assistance.

Having considered the legal precedent and the Congressional mandate, SBA has determined that it may exclude small businesses engaging in lawful activities of an obscene, pornographic, or prurient sexual nature. Under the proposed rule, SBA would not provide financial assistance to small businesses which present live performances of a prurient sexual nature or which derive significant gross revenue from the sale, on a regular basis, of products or services, or the presentation of depictions or displays, of a pornographic, obscene, or prurient sexual nature. Thus, an establishment featuring nude dancing, or a book, magazine or video store containing merchandise of a prurient sexual nature would not be eligible for SBA financial assistance if the obscene, pornographic, or prurient activity contributed to the generation of a significant portion of the gross revenue of the business.

SBA considers this proposed rule to be consistent with its obligation to direct its limited resources and financial assistance to small businesses in ways which will best accomplish SBA's mission, serve its constituency, and serve the public interest. Applicants' First Amendment freedoms are in no way abridged. They may still express their views, exercise their freedoms, operate their businesses, and obtain any other aid available to them.

SBA is considering the use of a percentage of gross revenue instead of ''significant'' in the final formulation of this rule and requests commenters to focus particularly on the relative merits of the two approaches and what percentage would be appropriate.

**Note 2.** The proposed regulation establishes a new ''Eligible Passive Company'' rule replacing the current ''alter ego'' rule. The new rule will be found at § 120.111. An ''Eligible Passive Company'' is defined as an entity which does not engage in regular and continuous business activity, which leases real or personal property to an Operating Company for use in the Operating Company's operations. SBA generally makes business loans only to small businesses engaged in regular business activities, and prohibits such assistance to entities engaged in passive investment or real estate development, or which do not engage in regular and continuous activity as an operating business. SBA calls such entities ''passive businesses.'' At the same time, SBA recognizes that valid business reasons may exist for an Operating Company not to own the real estate and fixed assets used to conduct its business. This proposed rule would allow certain passive businesses to be eligible for SBA assistance if that assistance is used only to acquire and/or improve real or personal property leased to a small business and is used in that small business' operations. The proposed rule would eliminate certain requirements and restrictions which presently limit the use of real estate holding entities in SBA's business-loan and development company programs.

For purposes of these regulations, an Operating Company is defined in section 120.100 as a small business actively currently involved in conducting business operations or about to be located on real property owned by an Eligible Passive Company, or using or about to use in its business operations, personal property owned by an Eligible Passive Company.

Many years ago, SBA agreed to assist eligible Operating Companies seeking SBA financial assistance through their affiliated ''mirror image'' passive businesses by creating an exception for such ''alter egos''. Subsequent modifications to the mirror image requirement permitted variations in ownership percentages between the operating business and the alter ego for immediate family members. Such variances led to conflicting interpretations of the policy, which have frustrated its original intent and confused both the public and SBA personnel. Such variances limited the effectiveness of the intended assistance. In addition, the variances caused inconsistencies between the 7(a) loan program and the development company loan program.

On February 22, 1994, SBA published (59 FR 8425) a proposed rule (''1994 proposal'') to eliminate the conflicting interpretations and inconsistencies and to revise the family member common ownership threshold to extend the alter ego exception to additional passive businesses. SBA received more than twenty detailed comments suggesting changes in the proposal. It also has received many other suggestions and recommendations from small business owners, development companies, lending institutions and SBA employees at regulatory partnership meetings and other outreach activities conducted by SBA. After considering these comments and suggestions, SBA has revised its thinking sufficiently to

operations personal property owned by a Passive Company.

*Preference* is any arrangement giving a Lender or a CDC a preferred position compared to SBA relating to the making of a business loan with respect to such things as repayment, collateral, guarantees, control, maintainance of a compensating balance, purchase of a Certificate of deposit or acceptance of a separate or companion loan, without SBA's consent.

*Rural Area* is a political subdivision or unincorporated area in a non-metropolitan county (as defined by the Department of Agriculture), or, if in a metropolitan county, any such subdivision or area with a resident population under 20,000 which is designated by SBA as rural.

*Service Provider* is an entity that contracts with a Lender or CDC to perform management, marketing, legal or other services.

**Subpart A—Policies Applying to All Business Loans**

**Eligibility Requirements**

**§ 120.100    What are the basic requirements for all Borrowers?**

To be an eligible Borrower for an SBA loan, a small business must:

(a) Be an operating business (except for loans to Passive Companies);

(b) Be organized for profit;

(c) Be located in the United States;

(d) Be small under the size requirements of Part 121 of this chapter (including affiliates). See subpart H of this part for the size standards of Part 121 of this chapter which apply only to 504 loans; and

(e) Must demonstrate a need for the desired credit.

**§ 120.101    Credit not available elsewhere.**

SBA provides business loan assistance only to applicants for whom the desired credit is not otherwise available on reasonable terms from non-Federal sources. SBA requires the Lender or CDC to certify or otherwise show that the desired credit is unavailable to the applicant on reasonable terms and conditions from non-Federal sources without SBA assistance, taking into consideration the prevailing rates and terms in the community in or near where the applicant conducts business, for similar purposes and periods of time. Submission of an application to SBA by a Lender or CDC constitutes certification by the Lender or CDC that it has examined the availability of credit to the applicant, has based its certification upon that examination, and has

documentation in its file to support the certification.

**§ 120.102    Funds not available from alternative sources, including personal resources of principals.**

An applicant for a business loan must show that the desired funds are not available from the personal resources of the applicant's principals or other sources such as the sale of the applicant's assets or securities. SBA may require the use of personal resources before a loan will be granted, unless SBA determines that undue hardship would result or if the loan is to an employee trust.

**§ 120.103    Are farm enterprises eligible?**

Federal financial assistance to agricultural enterprises is generally made by the United States Department of Agriculture (USDA), but may be made by SBA under the Memorandum of Understanding signed by SBA and USDA. Farm-related businesses are eligible businesses under SBA's business loan programs.

**§ 120.104    Are businesses financed by SBICs eligible?**

SBA may make or guarantee loans to a business financed by an SBIC if SBA's collateral position will be superior to that of the SBIC. SBA may also make or guarantee a loan to an otherwise eligible small business which temporarily is owned or controlled by an SBIC under the regulations in part 107 of this chapter. SBA neither guarantees SBIC loans nor makes loans jointly with SBICs.

**§ 120.105    Special consideration for veterans.**

SBA will give special consideration to a small business owned by a veteran or, if the veteran chooses not to apply, to a business owned or controlled by one of the veteran's dependents. If the veteran is deceased or permanently disabled, SBA will give special consideration to one survivor or dependent. SBA will process the application of a business owned or controlled by a veteran or dependent promptly, resolve close questions in the applicant's favor, and pay particular attention to maximum loan maturity. For SBA loans, a veteran is a person honorably discharged from active military service.

**Ineligible Businesses and Eligible Passive Companies**

**§ 120.110    What businesses are ineligible for SBA business loans?**

The following types of businesses are ineligible:

(a) Non-profit businesses (for-profit subsidiaries are eligible);

(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances);

(c) Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except Eligible Passive Companies under § 120.111);

(d) Life insurance companies;

(e) Businesses located in a foreign country (businesses in the U.S. owned by aliens may qualify);

(f) Pyramid sale distribution plans;

(g) Businesses deriving more than one-third of gross annual income from legal gambling activities);

(h) Businesses engaged in any illegal activity;

(i) Private clubs and businesses which limit the number of memberships for reasons other than capacity;

(j) Government-owned entities (except for businesses owned or controlled by a Native American tribe);

(k) Businesses principally engaged in teaching, instructing, counseling or indoctrinating religion or religious beliefs, whether in a religious or secular setting;

(l) Consumer and marketing cooperatives (producer cooperatives are eligible);

(m) Loan packagers earning 30 percent or more of their gross annual revenue from packaging SBA loans;

(n) Businesses with an Associate considered to have control under Part 121 who is incarcerated, on probation, on parole, or subject to pending felony charges;

(o) Businesses in which the Lender or CDC, or any of its Associates owns an equity interest (unless waived by SBA for good cause in the case of minor ownership interests);

(p) Businesses which:

(1) Present live performances of a prurient sexual nature; or

(2) Derive significant gross revenue through the sale of products or services, or the presentation of depictions or displays, of a prurient sexual nature;

(q) Unless waived by SBA for good cause, businesses that have previously defaulted on a Federal loan or Federally assisted financing, resulting in the Federal government or any of its agencies or Departments sustaining a loss in any of its programs, and businesses owned or controlled by an applicant or any of its Associates which previously owned, operated, or controlled a business which defaulted

EXHIBIT C


Federal Government within 24 months from the date of the request for waiver, either directly or through a dealer, or who have submitted an offer on a solicitation for that class of products within that time frame.

(d) *Class of products* is an individual subdivision within a four-digit Industry Number as established by the Office of Management and Budget in the SIC Manual.

### § 121.1303   When will a waiver of the Nonmanufacturer Rule be granted for an individual contract?

An individual waiver for a product in a specific solicitation will be approved when the SBA Associate Administrator for Government Contracting reviews and accepts a contracting officer's determination that no small business manufacturer or processor can reasonably be expected to offer a product meeting the specifications of a solicitation, including the period of performance.

### § 121.1304   What are the procedures for requesting and granting waivers?

(a) *Waivers for classes of products.* (1) SBA may, at its own initiative, examine a class of products for possible waiver of the Nonmanufacturer Rule.

(2) Any interested person, business, association, or Federal agency may submit a request for a waiver for a particular class of products. Requests should be addressed to or hand-carried to the Associate Administrator of Government Contracting, Small Business Administration, 409 3rd Street S.W., Washington, D.C.

(3) Requests for a waiver of a class of products need not be in any particular form, but should include a statement of the class of products to be waived, the applicable SIC code, and detailed information on the efforts made to identify small business manufacturers or processors for the class.

(4) If SBA decides that there are small business manufacturers or processors in the Federal procurement market, it will deny the request for waiver, issue notice of the denial, and provide the names, addresses, and telephone numbers of the sources found. If SBA does not initially confirm the existence of small business manufacturers or processors in the Federal market, it will:

(i) Publish notices in the Commerce Business Daily and the **Federal Register** seeking information on small business manufacturers or processors, announcing a notice of intent to waive the Nonmanufacturer Rule for that class of products and affording the public a 15-day comment period; and

(ii) If no small business sources are identified, publish a notice in the

**Federal Register** stating that no small business sources were found and that a waiver of the Nonmanufacturer Rule for that class of products has been granted.

(5) An expedited procedure for issuing a class waiver may be used for emergency situations, but only if the contracting officer provides a determination to the Associate Administrator for Government Contracting that the procurement is proceeding under the authority of FAR (48 CFR 6.302–2 for ''unusual and compelling urgency,'' or provides a determination materially the same as one of unusual and compelling urgency. Under the expedited procedure, if a small business manufacturer or processor is not identified by a PASS search, the SBA will grant the waiver for the class of products and then publish a notice in the **Federal Register**. The notice will state that a waiver has been granted, and solicit public comment for future procurements.

(6) The decision by the Associate Administrator for Government Contracting to grant or deny a waiver is the final decision by the Agency.

(7) A waiver of the Nonmanufacturer Rule for classes of products has no specific time limitation. SBA will, however, periodically review existing class waivers to the Nonmanufacturer Rule to determine if small business manufacturers or processors have become available to participate in the Federal market for the waived classes of products and the waiver should be terminated.

(i) Upon SBA's receipt of evidence that a small business manufacturer or processor exists in the Federal market for a waived class of products, the waiver will be terminated by the Associate Administrator for Government Contracting. This evidence may be discovered by SBA during a periodic review of existing waivers or may be brought to SBA's attention by other sources.

(ii) SBA will announce its intent to terminate a waiver for a class of products through the publication of a notice in the **Federal Register**, asking for comments regarding the proposed termination.

(iii) Unless public comment reveals that no small business manufacturer or process in fact exists for the class of products in question, SBA will publish a final Notice of Termination in the **Federal Register**.

(b) *Individual waivers for specific solicitations.* (1) A contracting officer's request for a waiver of the Nonmanufacturer Rule for specific solicitations need not be in any

particular form, but must, at a minimum, include:

(i) A definitive statement of the specific item to be waived and justification as to why the specific item is required;

(ii) The solicitation number, SIC code, dollar amount of the procurement, and a brief statement of the procurement history;

(iii) A determination by the contracting officer that there are no known small business manufacturers or processors for the requested items (the determination must contain a narrative statement of the contracting officer's efforts to search for small business manufacturers or processors of the item and the results of those efforts, and a statement by the contracting officer that there are no known small business manufacturers for the items and that no small business manufacturer or processor can reasonably be expected to offer the required items); and

(iv) For contracts expected to exceed $500,000, a copy of the Statement of Work.

(2) Requests should be addressed to the Associate Administrator for Government Contracting, Small Business Administration, 409 3rd Street, S.W., Washington, D.C. 20416.

(3) SBA will examine the contracting officer's determination and any other information it deems necessary to make an informed decision on the individual waiver request. If SBA's research verifies that no small business manufacturers or processors exist for the item, the Associate Administrator for Government Contracting will grant an individual, one-time waiver. If a small business manufacturer or processor is found for the product in question, the Associate Administrator will deny the request. Either decision represents a final decision by SBA.

### § 121.1305   How is a list of previously granted class waivers obtained?

A list of classes of products for which waivers of the Nonmanufacturer Rule have been granted will be maintained in SBA's Procurement Automated Source System (PASS). A list of such waivers may also be obtained by contacting the Office of Government Contracting at the Small Business Administration, Washington, D.C. 20416, or at the nearest SBA Government Contracting Area Office.

Dated: November 11, 1995.

**Philip Lader,**
*Administrator.*

[FR Doc. 95–28449 Filed 11–22–95; 8:45 am]

**BILLING CODE 8025–01–P**

**EXHIBIT C**
**Page 1**

**58014**   Federal Register / Vol. 60, No. 226 / Friday, November 24, 1995 / Proposed Rules

**13 CFR Part 123**

**Disaster Loan Program**

**AGENCY:** Small Business Administration.

**ACTION:** Proposed rule.

**SUMMARY:** In response to President Clinton's regulatory review directive, the Small Business Administration has completed a page-by-page and line-by-line review of its regulations. As a result, SBA is proposing to clarify and streamline its regulations, revising or eliminating any duplicative, outdated, inconsistent or confusing provisions. This proposed rule would reorganize the entire regulation 123 covering the disaster loan program to make it more clear and easier to use.

**DATES:** Comments must be submitted on or before December 26, 1995.

**ADDRESSES:** Written comments should be addressed to David R. Kohler, Regulatory Reform Initiative Team Leader (123), Small Business Administration, 409 Third Street, SW., Suite 13, Washington, DC 20416.

**FOR FURTHER INFORMATION CONTACT:** Bernard Kulik, Associate Administrator for Disaster Assistance, at (202) 205–6734.

**SUPPLEMENTARY INFORMATION:** Part 123 of Chapter I, 13 CFR contains policies governing the eligibility of disaster victims to obtain low-cost loans to restore their damaged property to its pre-disaster condition. This proposed rule would reorganize the entire Part 123 to make it more clear and easier to use. It would eliminate references to disasters which occurred years ago, and it would eliminate Subpart D—Persian Gulf Troop Deployment Economic Injury Loans because the authority for that loan program has expired. A conversion table follows:

| Existing section | Action | New section |
|---|---|---|
| 123.1 | Revise | 123.1 |
| 123.2 | Revise | 123.101 |
| 123.3 | Revise | 123.3, 123.4, 123.5, 123.10, 123.101 |
| 123.4 | Revise | 123.5 |
| 123.5 | Delete | |
| 123.6 | Revise | 123.8 |
| 123.7 | Revise | 123.3 |
| 123.8 | Delete | |
| 123.9 | Revise | 123.101, 123.104, 123.105 |
| 123.10 | Delete | |
| 123.11 | Revise | 123.11 |
| 123.12 | Revise | 123.13 |
| 123.13 | Revise | 123.16, 123.104 |
| 123.14 | Revise | 123.101 |

| Existing section | Action | New section |
|---|---|---|
| 123.15 | Delete | |
| 123.16 | Delete | |
| 123.17 | Revise | 123.201 |
| 123.18 | Revise | 123.12 |
| 123.19 | Revise | 123.9 |
| 123.20 | Delete | |
| 123.21 | Revise | 123.100, 123.200 |
| 123.22 | Revise | 123.3 |
| 123.23 | Revise | 123.3 |
| 123.24 | Revise | 123.6, 123.7, 123.12, 123.101, 123.105, 123.106, 23.107, 123.201, 123.202 |
| 123.25 | Revise | 123.15, 123.105 |
| 123.26 | Revise | 123.202, 123.203 |
| 123.27 | Delete | |
| 123.28 | Revise | 123.202 |
| 123.29 | Delete | |
| 123.40 | Delete | |
| 123.41 | Revise | 123.14, 123.301, 123.302, 123.303 |
| 123.60–69 | Delete | |

**Compliance With Executive Orders 12612, 12778, and 12866, the Regulatory Flexibility Act (5.U.S.C. 601, et seq.), and the Paperwork Reduction Act (44 U.S.C. Ch. 35)**

SBA certifies that this rule does not have a significant economic impact on a substantial number of small entities within the meaning of Executive Order 12866, or the Regulatory Flexibility Act, 5 U.S.C. 601, *et seq.*

For purposes of the Paperwork Reduction Act, 44 U.S.C. Ch. 35, SBA certifies that this rule contains no new reporting or recordkeeping requirements.

For purposes of Executive Order 12612, SBA certifies that this rule has no federalism implications warranting preparation of the federalism assessment.

For purposes of Executive Order 12778, SBA certifies that this rule is drafted, to the extent practicable, in accordance with the standards set forth in Section 2 of that Order.

**List of Subjects in 13 CFR Part 123**

Disaster assistance, Loan programs—business, Reporting and recordkeeping requirements, Small businesses.

Accordingly, pursuant to the authority set forth in sections 5(b)(6), 7(b)(1), and 7(c)(6) of the Small Business Act, SBA hereby proposes to revise Part 123 of Title 13 of the Code of Federal Regulations to read as follows:

**PART 123—DISASTER LOAN PROGRAM**

**Overview**

Sec.

123.1  What do these rules cover?
123.2  What are disaster loans and disaster declarations?
123.3  How are disaster declarations made?
123.4  What is a disaster area and why is it important?
123.5  What kinds of loans are available?
123.6  What does SBA look for when considering a disaster loan applicant?
123.7  Are there restrictions on how disaster loans can be used?
123.8  Does SBA charge any fees for obtaining a disaster loan?
123.9  What happens if I don't use loan proceeds for the intended purpose?
123.10  What happens if I cannot use my insurance proceeds to make repairs?
123.11  Does SBA require collateral for any of its disaster loans?
123.12  Are books and records required?
123.13  What happens if my loan application is denied?
123.14  Application of the Federal Debt Collection Procedures Act of 1990.
123.15  What if I change my mind?
123.16  Loan Administration and Servicing.
123.17  Application of Federal requirements relating to flood insurance, environmental considerations, and other matters.

**Home Disaster Loans**

123.100  Am I eligible to apply for a home disaster loan?
123.101  When am I not eligible to apply for a home disaster loan?
123.102  What circumstances would justify my relocating?
123.103  What happens if I am forced to move from my home?
123.104  What interest rate will I pay on my home disaster loan?
123.105  How much can I borrow with a home disaster loan and what limits apply on use of funds and repayment terms apply?
123.106  What is eligible refinancing?
123.107  What is mitigation?

**Physical Disaster Business Loans**

123.200  Am I eligible to apply for a physical disaster business loan?
123.201  When am I not eligible to apply for a physical disaster business loan?
123.202  How much can my business borrow with a physical disaster business loan?
123.203  What interest rate will my business pay on a physical disaster business loan and what are the repayment terms?

**Economic Injury Disaster Loans**

123.300  Is my business eligible to apply for an economic injury disaster loan?
123.301  When would my business not be eligible to apply for an economic injury disaster loan?
123.302  What is the interest rate on an economic injury disaster loan?
123.303  How can my business spend my economic injury disaster loan?

**EXHIBIT C**
**Page 2**

**Authority:** 15 U.S.C. 634(b)(6), 636(b), 636(c) and 636(f); Pub. L. 102–395, 106 Stat. 1828, 1864; and Pub. L. 103–75, 107 Stat. 739.

## Overview

### §123.1   What do these rules cover?

This part covers the disaster loan programs authorized under the Small Business Act, 15 U.S.C. 636(b), (c), and (f). Since SBA cannot predict the occurrence or magnitude of disasters, it reserves the right to change these rules, without advance notice, by publishing interim emergency regulations in the **Federal Register**.

### §123.2   What are disaster loans and disaster declarations?

SBA offers low interest, fixed rate loans to disaster victims, enabling them to repair or replace property damaged or destroyed in declared disasters. It also offers such loans to affected small businesses to help them recover from economic injury caused by such disasters. Disaster declarations are official notices recognizing that specific geographic areas have been damaged by floods and other acts of nature, riots, civil disorders, or industrial accidents such as oil spills. These disasters are sudden events which cause severe physical damage, and do not include slower physical occurrences such as shoreline erosion or gradual land settling. Sudden physical events that cause substantial economic injury may be disasters even if they do not cause physical damage to a victim's property. Past examples include ocean conditions causing significant displacement (major ocean currents) or closure (toxic algae blooms) of customary fishing waters, as well as contamination of food or other products for human consumption from unforeseeable and unintended events beyond the control of the victims.

### §123.3   How are disaster declarations made?

(a) There are four ways in which disaster declarations are issued which make SBA disaster loans possible:

(1) The President declares a Major Disaster and authorizes Federal assistance, including individual assistance (temporary housing and Individual and Family Grant Assistance).

(2) SBA makes a physical disaster declaration, based on the occurrence of at least a minimum amount of physical damage to buildings, machinery, equipment, inventory, homes and other property. Such damage usually must meet the following tests:

(i) In any county or other smaller political subdivision of a State or U.S. possession, at least 25 homes or 25 businesses, or a combination of at least 25 homes, businesses, or other eligible institutions, must each sustain uninsured losses of 40 percent or more of the estimated fair replacement value or pre-disaster fair market value of the damaged property, whichever is lower; or

(ii) In any such political subdivision, at least three businesses each sustain uninsured losses of 40 percent or more of the estimated fair replacement value or pre-disaster fair market value of the damaged property, whichever is lower, and, as a direct result of such physical damage, 25 percent or more of the work force in their community would be unemployed for at least 90 days; and

(iii) The Governor of the State in which the disaster occurred submits a written request to SBA for a physical disaster declaration by SBA (OMB Approval No. 3245–0121). This request should be delivered to the SBA Disaster Area Office serving the region where the disaster occurred within 60 days of the date of the disaster.

(3) SBA makes an economic injury disaster declaration in response to a determination of a natural disaster by the Secretary of Agriculture.

(4) SBA makes an economic injury declaration in reliance on a state certification that at least 5 small business concerns in a disaster area have suffered substantial economic injury as a result of the disaster and are in need of financial assistance not otherwise available on reasonable terms. The state certification must be signed by the Governor, must specify the county or counties or other political subdivisions in which the disaster occurred, and must be delivered (with supporting documentation) to the servicing SBA Disaster Area Office within 120 days of the disaster occurrence.

(b) SBA publishes notice of any disaster declaration in the **Federal Register**. The published notice will identify the kinds of assistance available, the date and nature of the disaster, and the deadline and location for filing loan applications. SBA will accept applications after the announced deadline only when SBA determines that the late filing resulted from substantial causes essentially beyond the control of the applicant. Additionally, SBA will use the local media to inform potential loan applicants where to obtain loan applications and otherwise to assist victims in applying for disaster loans.

### §123.4   What is a disaster area and why is it important?

Each disaster declaration defines the geographical areas affected by the disaster. Only those victims located in the declared disaster area are eligible to apply for SBA disaster loans. When the President declares a major disaster, the Federal Emergency Management Agency defines the disaster area. In major disasters, economic injury disaster loans may be made for victims in contiguous counties or other political subdivisions. Disaster declarations issued by the Administrator of SBA include contiguous counties for both physical and economic injury assistance. Contiguous counties or other political subdivisions are those land areas which abut the land area of the declared disaster area without geographic separation other than by a minor body of water, not to exceed one mile between the land areas of such counties.

### §123.5   What kinds of loans are available?

SBA offers three kinds of disaster loans: physical disaster home loans, physical disaster business loans, and economic injury business loans. SBA makes these loans directly or in participation with a financial institution. If a loan is made in participation with a financial institution, SBA's share in that loan may not exceed 90 percent.

### §123.6   What does SBA look for when considering a disaster loan applicant?

There must be reasonable assurance that you can repay your loan out of your personal or business cash flow, and you must have satisfactory credit and character. SBA will not make a loan to you if repayment depends upon the sale of collateral through foreclosure or any other disposition of assets owned by you. SBA is prohibited by statute from making a loan to you if you are engaged in the production or distribution of any product or service that has been determined to be obscene by a court.

### §123.7   Are there restrictions on how disaster loans can be used?

You must use disaster loans to restore or replace your primary home (including a mobile home used as primary residence) and your personal or business property as nearly as possible to their condition before the disaster occurred, and within certain limits, to protect damaged or destroyed real property from possible future similar disasters.

### §123.8   Does SBA charge any fees for obtaining a disaster loan?

SBA does not charge points, closing, or servicing fees on any disaster loan.

**EXHIBIT C**
**Page 3**

You will be responsible for payment of any closing costs owed to third parties, such as recording fees and title insurance premiums. Also, if your loan is made in participation with a financial institution, SBA will charge a guaranty fee to the financial institution and the financial institution may recover the guaranty fee from you.

### § 123.9   What happens if I don't use loan proceeds for the intended purpose?

(a) When SBA approves each loan application, it issues a loan authorization which specifies the amount of the loan, repayment terms, any collateral requirements, and the permitted use of loan proceeds. If you wrongfully misapply these proceeds, you will be liable to SBA for one and one-half times the proceeds disbursed to you as of the date SBA learns of your wrongful misapplication. Wrongful misapplication means the willful use of any loan proceeds without SBA approval contrary to the loan authorization. If you fail to use loan proceeds for authorized purposes for 60 days or more after receiving a loan disbursement check, such non-use also is considered a wrongful misapplication of the proceeds.

(b) If SBA learns that you may have misapplied your loan proceeds, SBA will notify you at your last known address, by certified mail, return receipt requested. You will be given at least 30 days to submit to SBA evidence that you have not misapplied the loan proceeds or that you have corrected any such misapplication. Any failure to respond in time will be considered an admission that you misapplied the proceeds. If SBA finds a wrongful misapplication, it will cancel any undisbursed loan proceeds, call the loan, and begin collection measures to collect your outstanding loan balance and the civil penalty. You may also face criminal prosecution.

### § 123.10   What happens if I cannot use my insurance proceeds to make repairs?

If you must pay insurance proceeds to the holder of a recorded lien or encumbrance against your damaged property instead of using them to make repairs, you may apply to SBA for the full amount needed to make such repairs. If you voluntarily pay insurance proceeds to a recorded lienholder, your loan eligibility is reduced by the amount of the voluntary payment.

### § 123.11   Does SBA require collateral for any of its disaster loans?

Generally, SBA will not require that you pledge collateral to secure a disaster home loan or a physical disaster business loan of $10,000 or less, or an

economic injury disaster loan of $5,000 or less. For loans larger than these amounts, you will be required to provide available collateral such as a lien on the damaged or replacement property, a security interest in personal property, or both.

(a) Sometimes a borrower, including affiliates as defined in Part 121 of this chapter, will have more than one loan after a single disaster. In deciding whether collateral is required, SBA will add up all physical disaster loans to see if they exceed $10,000 and all economic injury disaster loans to see if they exceed $5,000.

(b) SBA will not decline a loan if you lack a particular amount of collateral as long as it is reasonably sure that you can repay your loan. If you refuse to pledge available collateral when requested by SBA, however, SBA may decline or cancel your loan.

### § 123.12   Are books and records required?

You must retain complete records of all transactions financed with your SBA loan proceeds, including copies of all contracts and receipts, for a period of 3 years after you receive your final disbursement of loan proceeds. If you have a physical disaster business or economic injury loan, you must also maintain current and accurate books of account, including financial and operating statements, insurance policies, and tax returns. You must retain applicable books and records for 3 years after your loan matures including any extensions, or from the date when your loan is paid in full, whichever occurs first. You must make available to SBA or other authorized government personnel upon request all such books and records for inspection, audit, and reproduction during normal business hours and you must also permit SBA and any participating financial institution to inspect and appraise your assets. (OMB Approval No. 3245–0110.)

### § 123.13   What happens if my loan application is denied?

(a) If SBA denies your loan application, SBA will notify you in writing and set forth the specific reasons for the denial. Any applicant whose request for a loan is declined for reasons other than not being a small business (size) has the right to present information to overcome the reason or reasons for the denial and to request reconsideration. (OMB Approval No. 3245–0122.)

(b) Any decline due to size can only be appealed as set forth in Part 121 of this chapter.

(c) Any request for reconsideration must be in writing and must be delivered to the SBA office that declined the original application within six months of the date of the notice of the denial. After six months, a new loan application is required.

(d) A written request for reconsideration must contain all significant new information that you rely on to overcome SBA's denial of your original loan application. Your request for reconsideration of a business loan application must also be accompanied by current business financial statements.

(e) If SBA declines your application a second time, you have the right to appeal to the Area Director's Office. All appeals must be in writing and be received by the office that processed and declined the prior reconsideration within 30 days of the decline action. Your request must state that you are appealing, and must contain your written justification for believing that the decline action should be reversed.

(f) The decision of the Area Director is final unless:

(1) The Area Director does not have authority to approve the requested loan;

(2) The Area Director refers the matter to the Associate Administrator for Disaster Assistance; or

(3) The Associate Administrator for Disaster Assistance, upon a showing of special circumstances, requests the Area Director's office to forward the matter to him or her for final consideration. Special circumstances may include, but are not limited to, policy considerations, alleged improper acts by SBA personnel or others in processing the application, and conflicting policy interpretations between two Area Offices.

### § 123.14   Application of the Federal Debt Collection Procedures Act of 1990.

(a) Under the Federal Debt Collection Procedures Act of 1990 (28 U.S.C. 3201(e)), a debtor who owns property which is subject to an outstanding judgment lien for a debt owed to the United States is generally not eligible to receive physical and economic injury disaster loans. The SBA Associate Administrator for Disaster Assistance, or designee, may waive this restriction against receiving disaster loans upon a demonstration of good cause. Good cause means a written representation by you under oath which convinces SBA that:

(1) The declared disaster was a major contributing factor to the delinquency which led to the judgment lien, regardless of when the original debt was incurred; or

**EXHIBIT C**
**Page 4**

**Federal Register** / Vol. 60, No. 226 / Friday, November 24, 1995 / Proposed Rules                **58017**

(2) The disaster directly prevented you from fulfilling the terms of an agreement with SBA or any other Federal Government entity to satisfy its pre-disaster judgment lien; in this situation, the judgment creditor must certify to SBA that you were complying with the agreement to satisfy the judgment lien when the disaster occurred; or

(3) Other circumstances exist which would justify a waiver.

(b) The waiver determination by the Associate Administrator for Disaster Assistance, or designee, is a final, non-appealable decision. The granting of a waiver does not include loan approval; a waiver recipient must then follow normal loan application procedures.

### § 123.15   What if I change my mind?

If SBA required you to pledge collateral for your loan, you may change your mind and rescind your loan pursuant to the Consumer Credit Protection Act, 15 U.S.C. 1601, and Regulation Z of the Federal Reserve Board, 12 CFR Part 226. Your note and any collateral documents signed by you will be canceled upon your return of all loan proceeds and your payment of any interest accrued.

### § 123.16   Loan Administration and Servicing.

(a) If you obtained your disaster loan from a participating lender, that lender is responsible for closing and servicing your loan. If you obtained your loan directly from SBA, your loan will be closed and serviced by SBA. The SBA rules on servicing are found in part 120 of this chapter.

(b) If you are unable to pay your SBA loan installments in a timely manner for reasons substantially beyond your control, you may request that SBA suspend your loan payments, extend your maturity, or both.

### § 123.17   Application of Federal requirements relating to flood insurance, environmental considerations, and other matters.

As a condition of disbursement, you must be in compliance with certain requirements relating to flood insurance, lead-based paint, earthquake hazards, coastal barrier islands, and child support obligations, as set forth in §§ 120.170 through 120.175 of this chapter.

### Home Disaster Loans

### § 123.100   Am I eligible to apply for a home disaster loan?

(a) You are eligible to apply for a home disaster loan if you:

(1) Own and occupy your primary residence and have suffered a physical loss to your primary residence, personal property, or both; or

(2) Do not own your primary residence, but suffered a physical loss to your personal property. Family members residing in the same household are eligible if they are not dependents of the owners of the residence.

(b) Losses may be claimed only by the owners of the property at the time of the disaster, and all such losses will be verified by SBA. SBA will consider beneficial ownership as well as legal title (for real or personal property) in determining who suffered the loss.

### § 123.101   When am I not eligible for a home disaster loan?

You are not eligible for a home disaster loan if:

(a) You have been convicted, during the past year, of a felony during and in connection with a riot or civil disorder or other declared disaster;

(b) You acquired voluntarily more than a 50 percent ownership interest in the damaged property after the disaster, and no contract of sale existed at the time of the disaster;

(c) Your damaged property can be repaired or replaced with the proceeds of insurance, gifts or other compensation, including condemnation awards (with one exception, these amounts must either be deducted from the amount of the claimed losses or, if received after SBA has approved and disbursed a loan, must be paid to SBA as principal payments on your loan. You must notify SBA of any such recoveries collected after receiving an SBA disaster loan (OMB Approval No. 3245–0124). The one exception applies to the Individual and Family Grant Program of the Federal Emergency Management Agency solely to meet an emergency need pending processing of an SBA loan. In such an event, you must repay the financial assistance with SBA loan proceeds if it was used for purposes also eligible for an SBA loan);

(d) SBA determines that you assumed the risk (for example, by not maintaining flood insurance as required by an earlier SBA disaster loan when the current loss is also due to flood);

(e) Your damaged property is a secondary home (although if you rented the property out before the disaster and the property would not constitute a "residence" under the provisions of Section 280A of the Internal Revenue Code, you may be eligible for a physical disaster business loan);

(f) Your damaged property is the type of vehicle normally used for recreational purposes, such as motorhomes, aircraft, and boats;

(g) Your damaged property consists of cash or securities;

(h) The replacement value of your damaged personal property is extraordinarily high and not easily verified, such as the value of antiques, artworks, or hobby collections;

(i) You or other principal owners of the damaged property are presently incarcerated, or on probation or parole following conviction for a serious criminal offense;

(j) Your only interest in the damaged property is in the form of a security interest, mortgage, or deed of trust;

(k) The damaged building, including contents, was newly constructed or substantially improved on or after February 9, 1989, and (without a significant business justification) is located seaward of mean high tide or entirely in or over water; or

(l) You voluntarily decide to relocate outside the business area in which the disaster has occurred, and there are no special or unusual circumstances leading to your decision (Business area means the municipality which provides general governmental services to your damaged home or, if not located in a municipality, the county or equivalent political entity in which your damaged home is located).

### § 123.102   What circumstances would justify my relocating?

SBA may approve a loan if you intend to relocate outside the business area in which the disaster has occurred if your relocation is caused by such special or unusual circumstances as:

(a) Demonstrable risk that the business area will suffer future disasters;

(b) A change in employment status (such as loss of job, transfer, lack of adequate job opportunities within the business area or scheduled retirement within 18 months after the disaster occurs);

(c) Medical reasons; or

(d) Special family considerations which necessitate a move outside of the business area.

### § 123.103   What happens if I am forced to move from my home?

If you must relocate inside or outside the business area because local authorities will not allow you to repair your damaged property, SBA considers this to be a total loss and a mandatory relocation. In this case, your loan would be an amount that SBA considers sufficient to replace your residence at your new location, plus funds to cover losses of personal property and eligible refinancing.

**EXHIBIT C**
**Page 5**

**§ 123.104   What interest rate will I pay on my home disaster loan?**

If you can obtain credit elsewhere, your interest rate is set by a statutory formula, but will not exceed 8 percent per annum. If you cannot obtain credit elsewhere, your interest rate is one-half the statutory rate, but will not exceed 4 percent per annum. Credit elsewhere means that, with your cash flow and disposable assets, SBA believes you could obtain financing from non-federal sources on reasonable terms. If you cannot obtain credit elsewhere, you also may be able to borrow from SBA to refinance existing recorded liens against your damaged real property. Under prior legislation, some SBA disaster loans had split interest rates. On any such loan, repayments of principal are applied first to that portion of the loan with the lowest interest rate.

**§ 123.105   How much can I borrow with a home disaster loan and what limits apply on use of funds and repayment terms?**

(a) For all disasters occurring on or after October 26, 1993, there are limits on how much money you can borrow for particular purposes:

(1) $40,000 for repair or replacement of household and personal effects;

(2) $200,000 for repair or replacement of a primary residence (including upgrading in order to meet minimum standards of safety and decency or current building code requirements). Repair or replacement of landscaping and/or recreational facilities can not exceed $5,000;

(3) $200,000 for eligible refinancing purposes; and

(4) 20 percent of the loan amount (not including refinancing) up to a maximum of $48,000 for mitigation.

(b) You may not use loan proceeds to repay any debts on personal property, secured or unsecured, unless you incurred those debts as a direct result of the disaster.

(c) SBA determines the loan maturity and repayment terms based on your needs and your ability to pay. Generally, you will pay equal monthly installments of principal and interest, beginning five months from the date of the loan, as shown on the Note securing the loan. SBA will consider other payment terms if you have seasonal or fluctuating income, and SBA may allow installment payments of varying amounts over the first two years of the loan. The maximum maturity for a home disaster loan is 30 years. There is no penalty for prepayment of home disaster loans.

**§ 123.106   What is eligible refinancing?**

(a) If your home (primary residence) is totally destroyed or substantially

damaged, and you do not have credit elsewhere, SBA may allow you to borrow money to refinance recorded liens or encumbrances on your home. Your home is totally destroyed or substantially damaged if it has suffered uninsured or otherwise uncompensated damage which, at the time of the disaster, is either:

(1) 40 percent or more of the home's market value or replacement cost at the time of the disaster, including land value, whichever is less; or

(2) 50 percent or more of its market value or replacement cost at the time of the disaster, not including land value, whichever is less.

(b) Your home disaster loan for refinancing existing liens or encumbrances cannot exceed an amount equal to the lesser of $200,000, or the physical damage to your primary residence after reductions for any insurance or other recovery.

**§ 123.107   What is mitigation?**

Mitigation means specific measures taken by you to protect against recurring damage in similar future disasters. Examples include retaining walls, sea walls, grading and contouring land, relocating utilities and modifying structures. The money that you can borrow for mitigation is limited to the lesser of the cost of mitigation, or 20 percent of your loan to repair or replace your damaged primary residence and personal property. SBA will not accept a request for a loan increase for mitigation filed after final disbursement of your original loan unless you can show that your request was late because of substantial reasons beyond your control.

**Physical Disaster Business Loans**

**§ 123.200   Am I eligible to apply for a physical disaster business loan?**

(a) Almost any business concern or charitable or other non-profit entity whose real or tangible personal property is damaged in a declared disaster area is eligible to apply for a physical disaster business loan. Your business may be a sole proprietorship, partnership, corporation, limited liability company, or other legal entity recognized under State law. Your business' size (average annual receipts or number of employees) is not taken into consideration in determining your eligibility for a physical disaster business loan. If your damaged business occupied rented space at the time of the disaster, and the terms of your business' lease require you to make repairs to your business' building, you may have suffered a physical loss and can apply for a physical business disaster loan to

repair the property. In all other cases, the owner of the building is the eligible loan applicant.

(b) Damaged vehicles, of the type normally used for recreational purposes, such as motorhomes, aircraft, and boats, may be repaired or replaced with SBA loan proceeds if you can submit evidence that the damaged vehicles were used in your business at the time of the disaster.

**§ 123.201   When am I not eligible to apply for a physical disaster business loan?**

(a) You are not eligible for a physical disaster business loan if your business is an agricultural enterprise or if you fit into any of the categories in § 123.101. Agricultural enterprise means a business primarily engaged in the production of food and fiber, ranching and raising of livestock, aquaculture and all other farming and agriculture-related industries.

(b) Sometimes a damaged business is engaged in both agricultural and non-agricultural business activities. If the primary business activity of your damaged business is not an agricultural enterprise, you may apply for a physical disaster business loan, but loan proceeds may not be used, directly or indirectly, for the benefit of your agricultural enterprises, even if they also suffered damage.

(c) If your business is going to relocate voluntarily outside the business area in which the disaster occurred, you are not eligible for a physical disaster business loan. If, however, the relocation is due to uncontrollable or compelling circumstances, SBA will consider the relocation to be involuntary and eligible for a loan. Such circumstances may include, but are not limited to:

(1) The elimination or substantial decrease in the market for your products or services, as a consequence of the disaster;

(2) A change in the demographics of your business area within 18 months prior to the disaster, or as a result of the disaster, which makes it uneconomical to continue operations in your business area;

(3) A substantial change in your cost of doing business, as a result of the disaster, which makes the continuation of your business in the business area not economically viable;

(4) Location of your business in a hazardous area such as a special flood hazard area or an earthquake-prone area;

(5) A change in the public infrastructure in your business area which occurred within 18 months or as a result of the disaster that would result in substantially increased expenses for your business in the business area;

**EXHIBIT C**

**Page 6**

(6) Your implementation of decisions adopted and at least partially implemented within 18 months prior to the disaster to move your business out of the business area; and

(7) Other factors which undermine the economic viability of your business area.

### § 123.202   How much can my business borrow with a physical disaster business loan?

(a) Disaster business loans, including both physical disaster and economic injury loans to the same borrower, together with its affiliates, cannot exceed the greater of the uncompensated physical loss and economic injury or $1.5 million. Physical disaster loans may include amounts to meet current building code requirements. If your business is a major source of employment, SBA may waive the $1.5 million limitation. A major source of employment is a business concern which has one or more locations in the disaster area which:

(1) Employed 10 percent or more of the entire work force within the commuting area of a geographically identifiable community (no larger than a county), provided that the commuting area does not extend more than 50 miles from such community; or

(2) Employed 5 percent of the work force in an industry within the disaster area and, if the concern is a non-manufacturing concern, employed no less than 50 employees in the disaster area, or if the concern is a manufacturing concern, employed no less than 150 employees in the disaster area; or

(3) Employed no less than 250 employees within the disaster area.

(b) SBA will consider waiving the $1.5 million loan limit only if:

(1) Your damaged location or locations are out of business or in imminent danger of going out of business as a result of the disaster, and a loan in excess of $1.5 million is necessary to reopen or keep open the damaged locations in order to avoid substantial unemployment in the disaster area; and

(2) You have used all reasonably available funds from your business, its affiliates and its principal owners (20% or greater ownership interest) and all available credit elsewhere (as described in Section 123.104) to alleviate your physical damage and economic injury.

(c) Physical disaster business borrowers may request refinancing of liens on both damaged real property and machinery and equipment, but for an amount reduced by insurance or other compensation. To do so, your business

property must be totally destroyed or substantially damaged, which means:

(1) 40 percent or more of the aggregate value (lesser of market value or replacement cost at the time of the disaster) of the damaged real property (including land) and damaged machinery and equipment; or

(2) 50 percent or more of the aggregate value (lesser of market value or replacement cost at the time of the disaster) of the damaged real property (excluding land) and damaged machinery and equipment.

(d) Loan funds allocated for repair or replacement of landscaping or recreational facilities may not exceed $5,000 unless the landscaping or recreational facilities fulfilled a functional need or contributed to the generation of business.

### § 123.203   What interest rate will my business pay on a physical disaster business loan and what are the repayment terms?

(a) SBA will announce interest rates with each disaster declaration. If your business, together with its affiliates and principal owners, have credit elsewhere, your interest rate is set by a statutory formula, but will not exceed 8 percent per annum. If you do not have credit elsewhere, your interest rate will not exceed 4 percent per annum. The maturity of your loan depends upon your repayment ability but cannot exceed 3 years if you have credit elsewhere. Otherwise, the maximum maturity is 30 years.

(b) Generally, you must pay equal monthly installments, of principal and interest, beginning five months from the date of the loan as shown on the Note. SBA will consider other payment terms if you have seasonal or fluctuating income, and SBA may allow installment payments of varying amounts over the first two years of the loan. There is no penalty for prepayment for disaster loans.

### Economic Injury Disaster Loans

### § 123.300   Is my business eligible to apply for an economic injury disaster loan?

(a) If your business is located in a declared disaster area, and suffered substantial economic injury as a direct result of a declared disaster, you are eligible to apply for an economic injury disaster loan.

(1) Substantial economic injury is such that a business concern is unable to meet its obligations as they mature or to pay its ordinary and necessary operating expenses.

(2) Loss of anticipated profits or a drop in sales is not considered

substantial economic injury for this purpose.

(b) Economic injury disaster loans are available only if you were a small business (as defined in part 121 of this chapter) when the declared disaster commenced, you and your affiliates and principal owners (20% or more ownership interest) have used all reasonably available funds, and you are unable to obtain credit elsewhere (as described in § 123.104).

(c) Eligible businesses do not include agricultural enterprises, but do include—

(1) Small nurseries affected by a drought disaster designated by the Secretary of Agriculture (nurseries are commercial establishments deriving 50 percent or more of their annual receipts from the production and sale of ornamental plants and other nursery products, including, but not limited to, bulbs, florist greens, foliage, flowers, flower and vegetable seeds, shrubbery, and sod);

(2) Small agricultural cooperatives; and

(3) Producer cooperatives.

### § 123.301   When would my business not be eligible to apply for an economic injury disaster loan?

Your business is not eligible for an economic disaster loan if you fit into any of the categories in §§ 123.101 and 123.201, or if your business is:

(a) Engaged in gambling, lending, multi-level sales distribution, loan packaging, speculation, or investment (except for real estate investment with property held for rental when the disaster occurred);

(b) A non-profit or charitable concern;

(c) A consumer or marketing cooperative; or

(d) Not a small business concern.

### § 123.302   What is the interest rate on an economic injury disaster loan?

Your economic injury loan will have an interest rate of 4 percent per annum or less.

### § 123.303   How can my business spend my economic injury disaster loan?

(a) You can only use the loan proceeds for working capital necessary to carry your concern until resumption of normal operations and for expenditures necessary to alleviate the specific economic injury, but not to exceed that which the business could have provided had the injury not occurred.

(b) Loan proceeds may not be used to:

(1) Refinance indebtedness which you incurred prior to the disaster event; or

(2) Make payments on loans owned by another federal agency (including SBA)

**EXHIBIT C**
**Page 7**

or a Small Business Investment Company licensed under the Small Business Investment Act; or

(3) Pay, directly or indirectly, any obligations resulting from a federal, state or local tax penalty as a result of negligence or fraud, or any non-tax criminal fine, civil fine, or penalty for non-compliance with a law, regulation, or order of a federal, state, regional, or local agency or similar matter; or

(4) Repair physical damage; or

(5) Pay dividends or other disbursements to owners, partners, officers or stockholders, except for reasonable remuneration directly related to their performance of services for the business.

Dated: November 11, 1995.

**Philip Lader,**

*Administrator.*

[FR Doc. 95–28450 Filed 11–22–95; 8:45 am]

BILLING CODE 8025–01–P

## DEPARTMENT OF TRANSPORTATION

**Federal Aviation Administration**

**14 CFR Part 71**

**[Airspace Docket No. 95–ASO–25]**

## Proposed Establishment of Class E Airspace; Stuart, FL

**AGENCY:** Federal Aviation Administration (FAA), DOT.

**ACTION:** Notice of proposed rulemaking.

**SUMMARY:** This notice proposes to establish Class E airspace at Stuart, FL. GPS RWY 11 and GPS RWY 29 Standard Instrument Approach Procedures (SIAP's) have been developed for Witham Field. Controlled airspace extending upward from 700 feet above the surface (AGL) is needed to accommodate these SIAP's and for instrument flight rules (IFR) operations at Witham Field. The operating status of the airport will change from VFR to include IFR operations concurrent with publication of these SIAP's.

**DATES:** Comments must be received on or before January 5, 1996.

**ADDRESSES:** Send comments on the proposal in triplicate to: Federal Aviation Administration, Docket No. 95–ASO–25, Manager, System Management Branch, ASO–530, P.O. Box 20636, Atlanta, Georgia 30320.

The official docket may be examined in the Office of the Assistant Chief Counsel for Southern Region, Room 550, 1701 Columbia Avenue, College Park, Georgia 30337, telephone (404) 305–5586.

**FOR FURTHER INFORMATION CONTACT:**

Benny L. McGlamery, System Management Branch, Air Traffic Division, Federal Aviation Administration, P.O. Box 20636, Atlanta, Georgia 30320; telephone (404) 305–5570.

**SUPPLEMENTARY INFORMATION:**

**Comments Invited**

Interested parties are invited to participate in this proposed rulemaking by submitting such written data, views or arguments as they may desire. Comments that provide the factual basis supporting the views and suggestions presented are particularly helpful in developing reasoned regulatory decisions on the proposal. Comments are specifically invited on the overall regulatory, aeronautical, economic, environmental, and energy-related aspects of the proposal. Communications should identify the airspace docket and be submitted in triplicate to the address listed above. Commenters wishing the FAA to acknowledge receipt of their comments on this notice must submit with those comments a self-addressed, stamped postcard on which the following statement is made: ''Comments to Airspace Docket No. 95–ASO–25.'' The postcard will be date/time stamped and returned to the commenter. All communications received before the specified closing date for comments will be considered before taking action on the proposed rule. The proposal contained in this notice may be changed in light of the comments received. All comments submitted will be available for examination in the Office of the Assistant Chief Counsel for Southern Region, Room 550, 1701 Columbia Avenue, College Park, Georgia 30337, both before and after the closing date for comments. A report summarizing each substantive public contact with FAA personnel concerned with this rulemaking will be filed in the docket.

**Availability of NPRMs**

Any person may obtain a copy of this Notice of Proposed Rulemaking (NPRM) by submitting a request to the Federal Aviation Administration, Manager, System Management Branch, ASO–530, Air Traffic Division, Federal Aviation Administration, P.O. Box 20636, Atlanta, Georgia 30320. Communications must identify the notice number of this NPRM. Persons interested in being placed on a mailing list for future NPRMs should also request a copy of Advisory Circular No. 11–2A which describes the application procedure.

**The Proposal**

The FAA is considering an amendment to part 71 of the Federal Aviation Regulations (14 CFR part 71) to establish Class E airspace at Stuart, FL. GPS RWY 11 and GPS RWY 29 SIAP's have been developed for Witham Field. Controlled airspace extending upward from 700 feet AGL is needed to accommodate these SIAP's and for IFR operations at Witham Field. The operating status of the airport will change from VFR to include IFR operations concurrent with publication of these SIAP's. Class E airspace designations for airspace areas extending upward from 700 feet or more above the surface are published in Paragraph 6005 of FAA Order 7400.9C dated August 17, 1995, and effective September 16, 1995, which is incorporated by reference in 14 CFR 71.1. The Class E airspace designation listed in this document would be published subsequently in the Order.

The FAA has determined that this proposed regulation only involves an established body of technical regulations for which frequent and routine amendments are necessary to keep them operationally current. It, therefore, (1) is not a ''significant regulatory action'' under Executive Order 12866; (2) is not a ''significant rule'' under DOT Regulatory Policies and Procedures (44 FR 11034; February 26, 1979); and (3) does not warrant preparation of a regulatory evaluation as the anticipated impact is so minimal. Since this is a routine matter that will only affect air traffic procedures and air navigation, it is certified that this rule, when promulgated, will not have a significant economic impact on a substantial number of small entities under the criteria of the Regulatory Flexibility Act.

**List of Subjects in 14 CFR Part 71**

Airspace, Incorporation by reference, Navigation (Air).

**The Proposed Amendment**

In consideration of the foregoing, the Federal Aviation Administration proposes to amend 14 CFR part 71 as follows:

## PART 71—[AMENDED]

1. The authority citation for 14 CFR part 71 continues to read as follows:

**Authority:** 49 U.S.C. 106(g), 40103, 40113, 40120; E.O. 10854, 24 FR 9565, 3 CFR 1959–1963 Comp., p. 389; 14 CFR 11.69.

**§71.1   [Amended]**

2. The incorporation by reference in 14 CFR 71.1 of Federal Aviation

**EXHIBIT C**

**Page 8**

# EXHIBIT D

(SIC 2911), Towers, Telephone and Telegraph Apparatus (3661 PSC 5805), Cellular Handsets and Telephones (SIC 3663 PSC 5805). and invites the public to comment or provide information on potential small business manufacturers for this product.

In an effort to identify potential small business manufacturers, the SBA has searched the Procurement Marketing and Access Network (PRO-net) and Thomas Register, and the SBA will publish a notice in the Commerce Business Daily. The public is invited to comment and provide source information to SBA on the proposed waiver of the Nonmanufacturer Rule for this class of products.

**Judith A. Roussel,**

*Associate Administrator for Government Contracting.*

[FR Doc. 98–10762 Filed 4–22–98; 8:45 am]

**BILLING CODE 8025–01–P**

---

## SMALL BUSINESS ADMINISTRATION

### 13 CFR Part 123

### Disaster Loan Program

**AGENCY:** Small Business Administration (SBA).

**ACTION:** Proposed rule.

**SUMMARY:** SBA is proposing to amend its regulations to conform the eligibility criteria for disaster loans to those applicable in SBA's business loan program. Thus, under the proposed rule, a business could not obtain a physical disaster loan if it is engaged in any illegal activity; if it is a government owned entity (other than one owned or controlled by a Native American tribe); or if it engages in products or services of a prurient sexual nature. Under the proposed rule, a business would not be eligible for an economic injury disaster loan if more than one-third of its revenues are from legal gambling operations or from packaging SBA loans; if it is principally engaged in teaching or indoctrinating religion; or is primarily engaged in political or lobbying activities.

**DATES:** Comments must be submitted on or before May 26, 1998.

**ADDRESSES:** Comments may be mailed to Bernard Kulik, Associate Administrator for Disaster Assistance, Small Business Administration, 409 Third Street, SW., Washington, DC 20416.

**FOR FURTHER INFORMATION CONTACT:** Bernard Kulik, 202–205–6734.

**SUPPLEMENTARY INFORMATION:** Under the proposed rule, SBA would amend § 123.201 of its regulations so that an applicant would not be eligible for a physical disaster business loan if it is engaged in any illegal activity; if it is a government owned entity (other than a business owned or controlled by a Native American tribe); or if the business (1) presents live performances of a prurient sexual nature or (2) derives directly or indirectly more than *de minimis* gross revenue from activities of a prurient sexual nature. This proposed rule would codify SBA's existing policy of using the same ineligibility criteria for SBA's disaster and business loan programs. Thus, a business that would not be eligible to receive an SBA guaranteed business loan because it met these criteria, would also not be eligible to obtain a physical disaster loan.

Under this proposed rule amending § 123.301 of SBA's regulations, a business would not be eligible for an economic injury disaster loan if it (1) derived more than one-third of its gross annual revenue from legal gambling activities; (2) earned more than one-third of its gross annual revenue from packaging SBA loans; (3) was principally engaged in teaching, instructing, counselling or indoctrinating religion or religious beliefs, whether in a religious or secular setting; or (4) primarily engaged in political or lobbying activities. These proposed changes would codify SBA's existing policy of using the same ineligibility criteria for its economic injury disaster and business loan program. Thus, if a business is not eligible, because of these criteria, for an SBA guaranteed loan under the business loan program, it would not be eligible for an economic injury disaster loan.

SBA is proposing to correct a typographical error in § 123.202(a) by substituting "lesser" for "greater" in the first sentence which would then read: "Disaster business loans, including both physical disaster and economic injury loans to the same borrower, together with its affiliates, cannot exceed the lesser of the uncompensated physical loss and economic injury or $1.5 million." This would ensure that an applicant receives disaster assistance for an uncompensated loss or injury without obtaining excessive SBA assistance at lower than market rates.

**Compliance With Executive Orders 12612, 12778, and 12866, the Regulatory Flexibility Act (5 U.S.C. 601, et seq.), and the Paperwork Reduction Act (44 U.S.C. Ch 35)**

SBA certifies that this proposed rule does not constitute a significant rule within the meaning of Executive Order 12866 and does not have significant economic impact on a substantial number of small entities within the meaning of the Regulatory Flexibility Act, 5 U.S.C. et seq. It is not likely to have an annual economic effect of $100 million or more, result in a major increase in costs or prices, or have a significant adverse effect on competition or the United States economy. This proposed rule codifies current SBA practices and will not affect additional businesses or impose any costs

For purposes of the Paperwork Reduction Act, 44 U.S.C. Ch 35, SBA certifies that this proposed rule contains no new reporting or record keeping requirements.

For purposes of Executive Order 12612, SBA certifies that this proposed rule has no federalism implications warranting the preparation of a Federalism Assessment.

For purposes of Executive Order 12778, SBA certifies that this rule is drafted, to the extent practicable, in accordance with the standards set forth in section 2 of that Order.

(Catalog of Federal Domestic Assistance Programs, No. 59.012 and 59.008)

### List of Subjects in 13 CFR Part 123

Disaster assistance, Loan programs-business, Small businesses.

Accordingly, pursuant to the authority contained in section 5(b)(6) of the Small Business Act (15 U.S.C. 634(b)(6)), SBA proposes to amend part 123, chapter I, title 13, Code of Federal Regulations, as follows:

### PART 123—DISASTER LOAN ASSISTANCE

1. The authority citation for part 123 would continue to read as follows:

**Authority:** 15 U.S.C. 634(b)(6), 636(b), 636(c) and 636(f); Pub. L. 102–395, 106 Stat. 1828, 1864; and Pub. L. 103–75, 107 Stat. 739.

2. Section 123.201 would be amended by adding paragraphs (d), (e), and (f) to read as follows:

**§ 123.201   When am I not eligible to apply for a physical disaster business loan?**

\*   \*   \*   \*   \*

(d) You are not eligible if your business is engaged in any illegal activity.

(e) You are not eligible if you are a government owned entity (except for a business owned or controlled by a Native American tribe).

(f) You are not eligible if your business:

(1) Presents live performances of a prurient sexual nature or

(2) Derives directly or indirectly more than de minimis gross revenue through the sale of products or services, or the

**EXHIBIT D**

**Page 1**

presentation of any depictions or displays, of a prurient sexual nature.

3. Section 123.202(a) would be amended by revising the first sentence to read as follows:

### § 123.202   How much can my business borrow with a physical disaster business loan?

(a) Disaster business loans, including both physical disaster and economic injury loans to the same borrower, together with its affiliates, cannot exceed the lesser of the uncompensated physical loss and economic injury or $1.5 million. * * *

4. Section 123.301 would be amended by removing ''gambling'' and ''loan packaging'' in paragraph (a), removing ''or'' at the end of paragraph (c), removing the period and adding ''; or'' at the end of paragraph (d), and adding paragraphs (e), (f), (g), and (h) to read as follows:

### § 123.301   When would my business not be eligible to apply for an economic injury disaster loan?

*    *    *    *    *

(e) Deriving more than one-third of gross annual revenue from legal gambling activities;

(f) A loan packager which earns more than one-third of its gross annual revenue from packaging SBA loans;

(g) Principally engaged in teaching, instructing, counselling or indoctrinating religion or religious beliefs, whether in a religious or secular setting; or

(h) Primarily engaged in political or lobbying activities.

Dated: April 14, 1998.

**Aida Alvarez,**
*Administrator.*
[FR Doc. 98–10757 Filed 4–22–98; 8:45 am]
**BILLING CODE 8025–01–P**

---

## DEPARTMENT OF TRANSPORTATION

### Federal Aviation Administration

### 14 CFR Part 39

**[Docket No. 98–NM–102–AD]**

**RIN 2120–AA64**

### Airworthiness Directives; Fokker Model F27 Mark 100, 200, 300, 400, 500, 600, and 700 Series Airplanes

**AGENCY:** Federal Aviation Administration, DOT.

**ACTION:** Notice of proposed rulemaking (NPRM).

---

**SUMMARY:** This document proposes the adoption of a new airworthiness

directive (AD) that is applicable to all Fokker Model F27 Mark 100, 200, 300, 400, 500, 600, and 700 series airplanes. This proposal would require a one-time detailed visual inspection of the forward fuel feed lines in the left- and right-hand engine nacelles for chafing; replacement of damaged parts with serviceable parts; and modification of the supports and improved leads for the high- and low-tension leads of the inboard ignition units. This proposal is prompted by issuance of mandatory continuing airworthiness information by a foreign civil airworthiness authority. The actions specified by the proposed AD are intended to prevent chafing on the forward fuel feed lines, which could result in fuel leakage and consequent increased risk of fire in the engine nacelles.

**DATES:** Comments must be received by May 26, 1998.

**ADDRESSES:** Submit comments in triplicate to the Federal Aviation Administration (FAA), Transport Airplane Directorate, ANM–114, Attention: Rules Docket No. 98–NM–102–AD, 1601 Lind Avenue, SW., Renton, Washington 98055–4056. Comments may be inspected at this location between 9:00 a.m. and 3:00 p.m., Monday through Friday, except Federal holidays.

The service information referenced in the proposed rule may be obtained from Fokker Services B.V., Technical Support Department, P.O. Box 75047, 1117 ZN Schiphol Airport, the Netherlands. This information may be examined at the FAA, Transport Airplane Directorate, 1601 Lind Avenue, SW., Renton, Washington.

**FOR FURTHER INFORMATION CONTACT:** Norman B. Martenson, Manager, International Branch, ANM–116, FAA, Transport Airplane Directorate, 1601 Lind Avenue, SW., Renton, Washington 98055–4056; telephone (425) 227–2110; fax (425) 227–1149.

**SUPPLEMENTARY INFORMATION:**

### Comments Invited

Interested persons are invited to participate in the making of the proposed rule by submitting such written data, views, or arguments as they may desire. Communications shall identify the Rules Docket number and be submitted in triplicate to the address specified above. All communications received on or before the closing date for comments, specified above, will be considered before taking action on the proposed rule. The proposals contained in this notice may be changed in light of the comments received.

Comments are specifically invited on the overall regulatory, economic, environmental, and energy aspects of the proposed rule. All comments submitted will be available, both before and after the closing date for comments, in the Rules Docket for examination by interested persons. A report summarizing each FAA-public contact concerned with the substance of this proposal will be filed in the Rules Docket.

Commenters wishing the FAA to acknowledge receipt of their comments submitted in response to this notice must submit a self-addressed, stamped postcard on which the following statement is made: ''Comments to Docket Number 98–NM–102–AD.'' The postcard will be date stamped and returned to the commenter.

### Availability of NPRMs

Any person may obtain a copy of this NPRM by submitting a request to the FAA, Transport Airplane Directorate, ANM–114, *Attention:* Rules Docket No. 98–NM–102–AD, 1601 Lind Avenue, SW., Renton, Washington 98055–4056.

### Discussion

The Rijksluchtvaartdienst (RLD), which is the airworthiness authority for the Netherlands, notified the FAA that an unsafe condition may exist on all Fokker Model F27 Mark 100, 200, 300, 400, 500, 600, and 700 series airplanes. The RLD advises that it has received a report of fuel leakage from the right-hand engine nacelle on a Fokker F27 Mark 500RF series airplane. Further investigation revealed that the leak was caused by a small hole in the forward fuel feed line in the engine nacelle. Closer examination showed that the hole was caused by interference between the high-tension leads of the nearby ignition unit and the affected fuel feed line. One lead appeared to be incorrectly supported, resulting in chafing and subsequent damage to the fuel feed line. Such chafing, if not corrected, could result in fuel leakage and consequent increased risk of fire in the engine nacelles.

### Explanation of Relevant Service Information

The manufacturer has issued Fokker Service Bulletin F27/28–62, dated September 1, 1997, which describes procedures for a one-time detailed visual inspection of the forward fuel feed lines in the left- and right-hand engine nacelles for chafing; replacement of damaged parts with serviceable parts; and modification of the supports and improved routing for the high- and low-tension leads of the inboard ignition

**EXHIBIT D**
**Page 2**

# EXHIBIT E


counties in Pennsylvania: Adams, Berks, Bradford, Bucks, Carbon, Chester, Clinton, Columbia, Cumberland, Dauphin, Delaware, Franklin, Fulton, Huntington, Juniata, Lackawanna, Lancaster, Lebanon, Lehigh, Luzerne, Lycoming, Mifflin, Monroe, Montgomery, Montour, Northampton, Northumberland, Philadelphia, Perry, Pike, Potter, Schuylkill, Snyder, Sullivan, Susquehanna, Tioga, Union, Wayne, Wyoming, and York;

(ix) El Paso, TX, serving the following counties in Texas: Brewster, Culberson, El Paso, Hudspeth, Jeff Davis, Pecos, Presidio, Reeves, and Terrell; and

(x) Santa Ana, CA, serving the following counties in California: Orange, Riverside, and San Bernadino.

(2) The term *very small business* or *VSB* means a concern whose headquarters is located within the geographic area served by a designated SBA district and, together with its affiliates, has no more than 15 employees and has average annual receipts that do not exceed $1 million. The terms *concerns, affiliates, average annual receipts,* and *employees* have the meaning given to them in §§ 121.105, 121.103, 121.104, and 121.106, respectively, of this chapter.

(c)(1) A contracting officer must set aside for VSB concerns each procurement that has an anticipated dollar value between $2,500 and $50,000 if:

(i) In the case of a procurement for manufactured or supply items:

(A) The buying activity is located within the geographical area served by a designated SBA district, and

(B) There is a reasonable expectation of obtaining offers from two or more responsible VSB concerns headquartered within the geographical area served by that designated SBA district that are competitive in terms of market prices, quality and delivery; or

(ii) In the case of a procurement for other than manufactured or supply items:

(A) The requirement will be performed within the geographical area served by a designated SBA district, and

(B) There is a reasonable expectation of obtaining offers from two or more responsible VSB concerns headquartered within the geographical area served by that designated SBA district that are competitive in terms of market prices, quality and delivery.

(2) The geographic areas served by the SBA Los Angeles and Santa Ana District Offices will be treated as one designated SBA district for the purposes of this section.

(3) If the contracting officer determines that there is not a reasonable

expectation of receiving at least two responsible offers from VSB concerns headquartered within the geographic area served by the applicable designated SBA district, he or she must include in the contract file the reason(s) for this determination, and solicit the procurement pursuant to the provisions of 48 CFR 19.502–2. SBA may appeal such determination using the same procedure described in 48 CFR 19.505.

(4) If the contracting officer receives only one acceptable offer from a responsible VSB concern in response to a VSB set-aside, the contracting officer will make an award to that firm. If the contracting officer receives no acceptable offers from responsible VSB concerns, he or she will withdraw the procurement and, if still valid, must resolicit it pursuant to the provisions of 48 CFR 19.502–2.

(d) Where a procurement is set aside for VSB concerns, only those VSB concerns whose headquarters are located within the geographic area served by the applicable designated SBA district are eligible to submits offers in response to the solicitation.

(e) Nothing in this section shall be construed to alter in any way the procedures by which procuring activities award contracts under the SBA's 8(a) Business Development program (*see* 13 CFR part 124).

(f) This pilot program terminates on September 30, 2000. Any award under this program must be made on or before this date.

Dated: July 28, 1998.

**Aida Alvarez,**

*Administrator.*

[FR Doc. 98–23656 Filed 9–1–98; 8:45 am]

BILLING CODE 8025–01–P

---

## SMALL BUSINESS ADMINISTRATION

### 13 CFR Part 123

### Disaster Loan Program

**AGENCY:** Small Business Administration.

**ACTION:** Final rule.

**SUMMARY:** Under this final rule SBA amends its regulations to conform the eligibility criteria for disaster loans to those applicable in SBA's business loan program. Under the final rule, a business can not obtain a physical disaster loan if it is engaged in any illegal activity; if it is a government owned entity (other than one owned or controlled by a Native American tribe); or if it engages in products or services of a prurient sexual nature. Under the final rule, a business is not eligible for an economic injury disaster loan if more

than one-third of its revenues are from legal gambling operations or from packaging SBA loans; if it is principally engaged in teaching or indoctrinating religion; or is primarily engaged in political or lobbying activities.

**DATES:** This rule is effective September 2, 1998.

**FOR FURTHER INFORMATION CONTACT:** Bernard Kulik, 202–205–6734.

**SUPPLEMENTARY INFORMATION:** On April 23, 1998, SBA published a notice of proposed rulemaking (63 FR 20140) to amend section 123.201 of its regulations so that an applicant would not be eligible for a physical disaster business loan if it is engaged in any illegal activity; if it is a government owned entity (other than a business owned or controlled by a Native American tribe); or if the business (1) presents live performances of a prurient sexual nature, or (2) derives directly or indirectly more than *de minimis* gross revenue from activities of a prurient sexual nature. ==The proposed rule was intended to codify SBA's existing policy of using the same ineligibility criteria for SBA's disaster and business loan programs.== Thus, a business that would not be eligible to receive an SBA guaranteed business loan because it met these criteria, would also not be eligible to obtain a physical disaster loan.

SBA also proposed to amend section 123.301 of its regulations so that a business would not be eligible for an economic injury disaster loan if it: (1) derived more than one-third of its gross annual revenue from legal gambling activities; (2) earned more than one-third of its gross annual revenue from packaging SBA loans; (3) was principally engaged in teaching, instructing, counseling, or indoctrinating religion or religious beliefs, whether in a religious or secular setting; or (4) primarily engaged in political or lobbying activities. These proposed changes were intended to codify SBA's existing policy of using the same ineligibility criteria for its economic injury disaster and business loan program. Thus, if a business is not eligible, because of these criteria, for an SBA guaranteed loan under the business loan program, it would not be eligible for an economic injury disaster loan.

SBA received one comment. The commenter was concerned that if the proposed economic injury amendments were finalized, SBA would not be able to assist non-profit entities which provide community services and derive more than one third of their revenue from legal gambling activities. Under SBA's rules, non-profit entities presently do not qualify for economic

**46644** **Federal Register** / Vol. 63, No. 170 / Wednesday, September 2, 1998 / Rules and Regulations

injury loans, so the proposed amendment would not change their eligibility. Accordingly, the final rule is identical to the proposed rule.

In this final rule, SBA also corrects a typographical error in section 123.202(a) by substituting "lesser" for "greater" in the first sentence which now reads: "Disaster business loans, including both physical disaster and economic injury loans to the same borrower, together with its affiliates, cannot exceed the lesser of the uncompensated physical loss and economic injury or $1.5 million." This ensures that an applicant receives disaster assistance for an uncompensated loss or injury without obtaining excessive SBA assistance at lower than market rates.

**Compliance with Executive Orders 12612, 12778, and 12866, the Regulatory Flexibility Act (5 U.S.C. 601, et seq.), and the Paperwork Reduction Act (44 U.S.C. Ch 35)**

SBA certifies that this final rule does not constitute a significant rule within the meaning of Executive Order 12866 and does not have significant economic impact on a substantial number of small entities within the meaning of the Regulatory Flexibility Act, 5 U.S.C. et seq. It is not likely to have an annual economic effect of $100 million or more, result in a major increase in costs or prices, or have a significant adverse effect on competition or the United States economy. This final rule codifies current SBA practices and will not affect additional businesses or impose any costs.

For purposes of the Paperwork Reduction Act, 44 U.S.C. Ch 35, SBA certifies that this final rule contains no new reporting or record keeping requirements.

For purposes of Executive Order 12612, SBA certifies that this final rule has no federalism implications warranting the preparation of a Federalism Assessment.

For purposes of Executive Order 12778, SBA certifies that this rule is drafted, to the extent practicable, in accordance with the standards set forth in section 2 of that Order.

(Catalog of Federal Domestic Assistance Programs, No. 59.012 and 59.008)

**List of Subjects in 13 CFR Part 123**

Disaster assistance, Loan programs-business, Small businesses.

Accordingly, pursuant to the authority contained in section 5(b)(6) of the Small Business Act (15 U.S.C. 634(b)(6)), SBA amends part 123,

chapter I, title 13, Code of Federal Regulations, as follows:

## PART 123—DISASTER LOAN ASSISTANCE

1. The authority citation for part 123 continues to read as follows:

**Authority:** 15 U.S.C. 634(b)(6), 636(b), 636(c) and 636(f); Pub. L. 102–395, 106 Stat. 1828, 1864; and Pub. L. 103–75, 107 Stat. 739.

2. Add new paragraphs (d), (e), and (f) to § 123.201 to read as follows:

**§ 123.201   When am I not eligible to apply for a physical disaster business loan?**

\* \* \* \* \*

(d) You are not eligible if your business is engaged in any illegal activity.

(e) You are not eligible if you are a government owned entity (except for a business owned or controlled by a Native American tribe).

(f) You are not eligible if your business presents live performances of a prurient sexual nature or derives directly or indirectly more than *de minimis* gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature.

**§ 123.202   [Amended]**

3. Amend § 123.202(a) by removing the word "greater" and adding, in its place, the word "lesser" in the first sentence.

4. Amend § 123.301 as follows:

a. Remove "gambling" and "loan packaging" in paragraph (a);

b. Remove "or" at the end of paragraph (c);

(c) Remove the period and insert "; or" at the end of paragraph (d); and

(d) Add new paragraphs (e), (f), (g), and (h) to read as follows:

**§ 123.301   When would my business not be eligible to apply for an economic injury disaster loan?**

\* \* \* \* \*

(e) Deriving more than one-third of gross annual revenue from legal gambling activities;

(f) A loan packager which earns more than one-third of its gross annual revenue from packaging SBA loans;

(g) Principally engaged in teaching, instructing, counseling, or indoctrinating religion or religious beliefs, whether in a religious or secular setting; or

(h) Primarily engaged in political or lobbying activities.

Dated: July 20, 1998.

**Aida Alvarez,**
*Administrator.*
[FR Doc. 98–23657 Filed 9–1–98; 8:45 am]
BILLING CODE 8025–01–P

---

**SMALL BUSINESS ADMINISTRATION**

**13 CFR Part 123**

**Disaster Loan Program**

**AGENCY:** Small Business Administration.

**ACTION:** Final rule.

---

**SUMMARY:** The Small Business Administration (SBA) adopts as a final rule, without change, the provisions of an interim final rule amending its disaster loan rules. This final rule continues to ensure that when a legal business entity is engaged in both agricultural enterprises and non-agricultural business ventures, SBA can provide physical disaster business loans to the non-agricultural portion which has been damaged by floods and other catastrophes.

**DATES:** This rule is effective September 2, 1998.

**FOR FURTHER INFORMATION CONTACT:** Bernard Kulik, Associate Administrator for Disaster Assistance, (202) 205–6734.

**SUPPLEMENTARY INFORMATION:** Section 2(e) of the Small Business Act (15 USC S 631(e)) ("Act") states that the policy of the Congress is that the Government aid and assist "victims" of floods and other catastrophes. Section 2(g) of the Act provides that in its administration of the disaster loan program, pursuant to section 7(b) of the Act, SBA shall provide, "to the maximum extent possible," assistance and counseling to disaster "victims." In administering the disaster loan program, SBA is precluded, by section 7(b) of the Act, from assisting agricultural enterprises. As defined in section 18(b)(1) of the Act, an "agricultural enterprise" is a business engaged in the production of food and fiber, ranching, and raising of livestock, aquaculture, and all other farming and agricultural related industries.

SBA previously provided physical disaster business loan assistance only to business entities which were adversely affected by floods and other catastrophes when the primary activity of the business entity was non-agricultural. Thus, if a person or a single business entity operated both

**EXHIBIT E**
**Page 2**

agricultural and non-agricultural enterprises, SBA would not assist any part of the business entity that suffered damage if the primary activity of the total entity was agricultural.

SBA reconsidered the statutory language above and re-evaluated its position with respect to the "primary activity rule" which it administratively applied. The Act requires SBA to assist "victims" of floods and other catastrophes, without regard to the primary activity of a total business entity. If the victim of a flood or other catastrophe is a non-agricultural business venture, SBA should assist that victim regardless of whether such business is a part of a larger business entity whose primary activity is agricultural. Thus, if the total business operation is comprised of a retail store and a ranch, and the retail store is destroyed by a flood, SBA should offer physical disaster assistance to the retail store even if the ranching operation generated more revenue.

Accordingly, SBA promulgates this final rule to continue to permit SBA to provide physical disaster business loan assistance to a non-agricultural business venture within the total business entity if the non-agricultural business has been damaged by a flood or other catastrophe, regardless of the primary activity of the total business entity. The rule also makes clear that the business entity can be a sole proprietorship, corporation, limited liability company, or partnership.

**Compliance With Executive Orders 12612, 12778, and 12866, the Regulatory Flexibility Act (15 U.S.C. S601, et seq.), and the Paperwork Reduction Act (44 U.S.C. Ch. 35)**

SBA certifies that this rule is not a significant rule within the meaning of Executive Order 12866; it is not likely to have annual economic effect of $100 million or more, result in a major increase in costs or prices, or have a significant adverse effect on competition or the United States economy. SBA also certifies that this rule will not have a significant economic impact on a substantial number of small entities within the meaning of the Regulatory Flexibility Act, 5 U.S.C. S601 *et seq.* This rule makes eligible for physical disaster loans only nonagricultural businesses that are part of a business entity that is primarily agricultural and, therefore, does not meet the substantial number of small businesses criterion anticipated by the Regulatory Flexibility Act.

For purposes of the Paperwork Reduction Act (44 U.S.C. Ch 35), SBA certifies that this final rule contains no new reporting or recordkeeping requirements.

For purposes of Executive Order 12612, SBA certifies that this rule has no federalism implications warranting the preparation of a Federalism Assessment.

For purposes of Executive Order 12778, SBA certifies that this rule is drafted, to the extent practicable, in accordance with standards set forth in Section 2 of that Order.

An interim final rule was published in the **Federal Register** on July 1, 1997 (62 FR 35337). An open comment period was provided for interested persons to respond to the interim final rule. Since the date of publication of the interim final rule, no comments were received. Accordingly, the interim final rule is adopted without change as final.

**List of Subjects in 13 CFR Part 123**

Disaster assistance, Loan programs-business, Small businesses.

Accordingly, the interim final rule amending 13 CFR part 123 which was published at 62 FR 35337 on July 1, 1997, is adopted as a final rule without change.

Dated: July 8, 1998.

**Aida Alvarez,**

*Administrator.*

[FR Doc. 98–23658 Filed 9–1–98; 8:45 am]

BILLING CODE 8025–01–P

---

**DEPARTMENT OF TRANSPORTATION**

**Federal Aviation Administration**

**14 CFR Part 39**

[Docket No. 96–SW–10–AD; Amendment 39–10727; AD 98–18–11]

RIN 2120–AA64

**Airworthiness Directives; Schweizer Aircraft Corporation and Hughes Helicopters, Inc. Model 269A, 269A–1, 269B, 269C, 269D, and TH–55A Helicopters**

**AGENCY:** Federal Aviation Administration, DOT.

**ACTION:** Final rule.

---

**SUMMARY:** This amendment adopts a new airworthiness directive (AD), applicable to Schweizer Aircraft Corporation and Hughes Helicopters, Inc. Model 269A, 269A–1, 269B, 269C, 269D, and TH–55A helicopters, that requires a visual inspection of the bond line between the main rotor blade abrasion strip (abrasion strip) and the blade for voids, separation, or lifting of the abrasion strip; a visual inspection of the adhesive bead around the perimeter of the abrasion strip for erosion, cracks, or blisters; a tap (ring) test of the abrasion strip for evidence of debonding or hidden corrosion voids; and removal of any blade with an unairworthy abrasion strip and replacement with an airworthy blade. This amendment is prompted by four reports that indicate that debonding and corrosion have occurred on certain blades where the abrasion strip attaches to the blade skin. The actions specified by this AD are intended to prevent loss of the abrasion strip from the blade and subsequent loss of control of the helicopter.

**EFFECTIVE DATE:** October 7, 1998.

**FOR FURTHER INFORMATION CONTACT:** Mr. Raymond Reinhardt, Aerospace Engineer, FAA, New York Aircraft Certification Office, Airframe and Propulsion Branch, Engine and Propeller Directorate, 10 Fifth Street, 3rd Floor, Valley Stream, New York 11581–1200, telephone (516) 256–7532, fax (516) 568–2716.

**SUPPLEMENTARY INFORMATION:** A proposal to amend part 39 of the Federal Aviation Regulations (14 CFR part 39) to include an AD that is applicable to Schweizer Aircraft Corporation and Hughes Helicopters, Inc. Model 269A, 269A–1, 269B, 269C, 269D, and TH–55A series helicopters was published in the **Federal Register** on October 30, 1996 (61 FR 55937). That action proposed to require, for each blade, a visual inspection of the bond line between the abrasion strip and the blade for voids, separation, or lifting of the abrasion strip; a visual inspection of the adhesive bead around the perimeter of the abrasion strip for erosion, cracks, or blisters; a tap (ring) test of the abrasion strip for evidence of debonding or hidden corrosion voids; and removal of any blade with a defective abrasion strip and replacement with an airworthy blade. If any deterioration of the abrasion strip adhesive bead was discovered, restoration of the bead in accordance with the applicable maintenance manual was proposed. If an abrasion strip void was found or suspected, removing and replacing the blade with an airworthy blade was also proposed.

Interested persons have been afforded an opportunity to participate in the making of this amendment. Due consideration has been given to the comments received.

One commenter states that Model 269C–1 helicopters should be included in the Applicability section of the AD, because this model, which was recently type certificated, could be retro-fitted with any of the affected blades listed in the proposed AD. The FAA concurs,

# EXHIBIT F



**U.S. Small Business Administration**

OMB Control #3245-0406
Expiration Date: 09/30/2020

## Disaster Loan Assistance

Federal Disaster Loans for Businesses, Private Non-profits, Homeowners and Renters

### COVID-19 ECONOMIC INJURY DISASTER LOAN APPLICATION



DISCLOSURES — BUSINESS INFORMATION — BUSINESS OWNERS INFORMATION — ADDITIONAL INFORMATION — SUMMARY

### STREAMLINED PROCESS REQUIREMENTS

SBA is collecting the requested information in order to make a loan under SBA's Economic Injury Disaster Loan Program to the qualified entities listed in this application that are impacted by the Coronavirus (COVID-19). The information will be used in determining whether the applicant is eligible for an economic injury loan. If you do not submit all the information requested, your loan cannot be fully processed.

The Applicant understands that the SBA is relying upon the self-certifications contained in this application to verify that the Applicant is an eligible entity to receive the advance, and that the Applicant is providing this self-certification under penalty of perjury pursuant to 28 U.S.C. 1746 for verification purposes.

The estimated time for completing this entire application is two hours and ten minutes, although you may not need to complete all parts. You are not required to respond to this collection of information unless it displays a currently valid OMB approval number.

### ELIGIBLE ENTITY VERIFICATION

**Choose One:**

○ Applicant is a business with not more than 500 employees.

○ Applicant is an agricultural enterprise with not more than 500 employees.

○ Applicant is an individual who operates under a sole proprietorship, with or without employees, or as an independent contractor.

○ Applicant is a cooperative with not more than 500 employees.

○ Applicant is an Employee Stock Ownership Plan (ESOP), as defined in 15 U.S.C. 632, with not more than 500 employees.

○ Applicant is a tribal small business concern, as described in 15 U.S.C. 657a(b)(2)(C), with not more than 500 employees.

○ Applicant is a business, including an agricultural cooperative, aquaculture enterprise, nursery, or producer cooperative (but excluding all other agricultural enterprises), with more than 500 employees that is small under SBA Size Standards found at https://www.sba.gov/size-standards.

○ Applicant is a business with more than 500 employees that is small under SBA Size Standards found at https://www.sba.gov/size-standards.

○ Applicant is a private non-profit organization that is a non-governmental agency or entity that currently has an effective ruling letter from the IRS granting tax exemption under sections 501(c),(d), or (e) of the Internal Revenue Code of 1954, or satisfactory evidence from the State that the non-revenue producing organization or entity is a non-profit one organized or doing business under State law, or a faith-based organization.

**EXHIBIT F**
**Page 1**

   

11:35 AM
6/11/2020

**ELIGIBLE ENTITY VERIFICATION**

**Choose One:**

○ Applicant is a business with not more than 500 employees.

○ Applicant is an agricultural enterprise with not more than 500 employees.

○ Applicant is an individual who operates under a sole proprietorship, with or without employees, or as an independent contractor.

○ Applicant is a cooperative with not more than 500 employees.

○ Applicant is an Employee Stock Ownership Plan (ESOP), as defined in 15 U.S.C. 632, with not more than 500 employees.

○ Applicant is a tribal small business concern, as described in 15 U.S.C. 657a(b)(2)(C), with not more than 500 employees.

○ Applicant is a business, including an agricultural cooperative, aquaculture enterprise, nursery, or producer cooperative (but excluding all other agricultural enterprises), with more than 500 employees that is small under SBA Size Standards found at https://www.sba.gov/size-standards.

○ Applicant is a business with more than 500 employees that is small under SBA Size Standards found at https://www.sba.gov/size-standards.

○ Applicant is a private non-profit organization that is a non-governmental agency or entity that currently has an effective ruling letter from the IRS granting tax exemption under sections 501(c),(d), or (e) of the Internal Revenue Code of 1954, or satisfactory evidence from the State that the non-revenue producing organization or entity is a non-profit one organized or doing business under State law, or a faith-based organization.

**Review and Check All of the Following:**

Applicant must review and check all the following (if Applicant is unable to check all of the following, Applicant is not an Eligible Entity):

☐ Applicant is not engaged in any illegal activity (as defined by Federal guidelines).

☐ No principal of the Applicant with a 50 percent or greater ownership interest is more than sixty (60) days delinquent on child support obligations.

☐ Applicant does not present live performances of a prurient sexual nature or derive directly or indirectly more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature.

☐ Applicant does not derive more than one-third of gross annual revenue from legal gambling activities.

☐ Applicant is not in the business of lobbying.

☐ Applicant cannot be a state, local, or municipal government entity and cannot be a member of Congress.

If you have questions about this application or problems providing the required information, please contact our Customer Service Center at 1-800-659-2955 or (TTY: 1-800-877-8339) DisasterCustomerService@sba.gov.

[ Continue ▶ ]

**EXHIBIT F**
**Page 2**

EXHIBIT G



‹ Back to Coronavirus Relief Options

### Coronavirus Relief Options

Paycheck Protection Program

Economic Injury Disaster Loan Emergency Advance

SBA Express Bridge Loans

SBA Debt Relief

# Economic Injury Disaster Loan Emergency Advance

*This loan advance will provide up to $10,000 of economic relief to businesses that are currently experiencing temporary difficulties.*

---

## Content

Notice: New Eligibility for Economic Injury Disaster Loan and Advance

Eligibility

Additional Program Information

---

## Notice: New Eligibility for Economic Injury Disaster Loan and Advance

In response to the Coronavirus (COVID-19) pandemic, small business owners in all U.S. states, Washington D.C., and territories were able to apply for an Economic Injury Disaster Loan advance of up to $10,000. This advance is designed to provide economic relief to businesses that are currently experiencing a temporary loss of revenue. This loan advance will not have to be repaid. Recipients do not have to be approved for a loan in order to receive the advance, but the amount of the loan advance will be deducted from total loan eligibility. **SBA will begin accepting new Economic Injury Disaster Loan (EIDL) and EIDL Advance applications on a limited basis only to provide relief to U.S. agricultural businesses.**

The new eligibility is made possible as a result of the latest round of funds appropriated by Congress in response to the COVID-19 pandemic.

- Agricultural businesses includes those businesses engaged in the production of food and fiber, ranching, and raising of livestock, aquaculture, and all other farming and agricultural related industries (as defined by section 18(b) of the Small Business Act (15 U.S.C. 647(b)).
- SBA is encouraging all eligible agricultural businesses with 500 or fewer employees wishing to apply to begin preparing their business financial information needed for their application.



EXHIBIT G
Page 1



SBA is encouraging all eligible agricultural businesses with 500 or fewer employees wishing to apply to begin preparing their business financial information needed for their application.

*At this time, only agricultural business applications will be accepted due to limitations in funding availability and the unprecedented submission of applications already received.* Applicants who have already submitted their applications will continue to be processed on a first-come, first-served basis. For agricultural businesses that submitted an EIDL application through the streamlined application portal prior to the legislative change, SBA will process these applications without the need for re-applying.

**Eligible agricultural businesses may apply for the Loan Advance here.**

| EIDL Loan and Advance for Agricultural Businesses | APPLY NOW |
|---|---|

## Eligibility

**SBA will begin accepting new Economic Injury Disaster Loan (EIDL) and EIDL Advance applications on a limited basis only to provide relief to U.S. agricultural businesses.**

Agricultural businesses are now eligible as a result of the latest round of funds appropriated by Congress in response to the COVID-19 pandemic.

- Agricultural businesses includes those businesses engaged in the production of food and fiber, ranching, and raising of livestock, aquaculture, and all other farming and agricultural related industries (as defined by section 18(b) of the Small Business Act (15 U.S.C. 647(b)).
- SBA is encouraging all eligible agricultural businesses with 500 or fewer employees wishing to apply to begin preparing their business financial information needed for their application.

Frequently Asked Questions for Faith-Based Organizations Participating in the Paycheck Protection Program and the Economic Injury Disaster Loan Program

## Additional Program Information

# EXHIBIT H



**U.S. SMALL BUSINESS ADMINISTRATION**
**Disaster Assistance**
**Processing and Disbursement Center**
**14925 Kingsport Road**
**Fort Worth, Texas 76155**

800-659-2955
Hearing Impaired
800-877-8339

May 23, 2020

Roger Forbes
DeJa Vu-San Francisco, LLC
391 Broadway
San Francisco, CA 94133

RE: SBA Disaster Loan Application Number: 3601033572

Dear Roger Forbes,

In these unprecedented times, we understand the challenges you are facing. The SBA is making every effort to support small businesses, which are the backbone of the American economy. Unfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below.

**Business activity is not eligible. EIDL assistance is available only to a small business engaged in an eligible business activity. Business activity means the nature of the business conducted by the applicant.**

The information you submitted with your application does not meet SBA regulations for an eligible business activity.

If you disagree with our decision, you may request reconsideration, subject to the availability of funds. You can submit your request to any of the following:
  a. Mail your request to the address at the top of this letter.
  b. Fax your request to: 202-481-5931.
  c. E-mail your request to: pdcrecons@sba.gov.

Your request must:

  1. Be in writing and be received by this office as soon as possible(but no later than 6 months from the date of this letter.)
  2. Contain all significant information that will overcome the decline/withdrawal reason(s).

We understand that this is a challenging time for your business and for the nation. The SBA has local offices in your community which can refer you to resources that may be able to help you address the underlying reason for your loan denial. For more information on these services, please go to www.sba.gov/local-assistance to locate the email address and phone number for the nearest SBA district office and/or SBA's resource partners. Please call or email for a virtual appointment.

If you have any questions regarding this matter, please contact us at 800-659-2955 (TTY: 1-800-877-8339).

Sincerely,

**EXHIBIT H**
**Page 1**

SBA Form 2157B

Application Processing Department

The Federal Equal Credit Opportunity Act, 15 U.S.C. §1691, prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Response Center, Federal Trade Commission, Washington, D.C. 20580.

# EXHIBIT I



**U.S. SMALL BUSINESS ADMINISTRATION**
**Disaster Assistance**
**Processing and Disbursement Center**
**14925 Kingsport Road**
**Fort Worth, Texas 76155**

800-659-2955
Hearing Impaired
800-877-8339

May 23, 2020

Roger Forbes
Bijou-Century, LLC
816 Larkin Street
San Francisco, CA 94109

RE: SBA Disaster Loan Application Number: 3601034048

Dear Roger Forbes,

In these unprecedented times, we understand the challenges you are facing. The SBA is making every effort to support small businesses, which are the backbone of the American economy. Unfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below.

**Business activity is not eligible. EIDL assistance is available only to a small business engaged in an eligible business activity. Business activity means the nature of the business conducted by the applicant.**

The information you submitted with your application does not meet SBA regulations for an eligible business activity.

If you disagree with our decision, you may request reconsideration, subject to the availability of funds. You can submit your request to any of the following:
  a. Mail your request to the address at the top of this letter.
  b. Fax your request to: 202-481-5931.
  c. E-mail your request to: pdcrecons@sba.gov.

Your request must:

  1. Be in writing and be received by this office as soon as possible(but no later than 6 months from the date of this letter.)
  2. Contain all significant information that will overcome the decline/withdrawal reason(s).

We understand that this is a challenging time for your business and for the nation. The SBA has local offices in your community which can refer you to resources that may be able to help you address the underlying reason for your loan denial. For more information on these services, please go to www.sba.gov/local-assistance to locate the email address and phone number for the nearest SBA district office and/or SBA's resource partners. Please call or email for a virtual appointment.

If you have any questions regarding this matter, please contact us at 800-659-2955 (TTY: 1-800-877-8339).

Sincerely,

**EXHIBIT I**
**Page 1**

SBA Form 2157B

## Application Processing Department

The Federal Equal Credit Opportunity Act, 15 U.S.C. §1691, prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Response Center, Federal Trade Commission, Washington, D.C. 20580.

**EXHIBIT I**
**Page 2**

SBA Form 2157B

# EXHIBIT J



U.S. SMALL BUSINESS ADMINISTRATION
Disaster Assistance
Processing and Disbursement Center
14925 Kingsport Road
Fort Worth, Texas 76155

800-659-2955
Hearing Impaired
800-877-8339

May 23, 2020

Roger Forbes
San Francisco Garden of Eden, LLC
529 Broadway
San Francisco , CA 94109

RE: SBA Disaster Loan Application Number: 3601034706

Dear Roger Forbes,

In these unprecedented times, we understand the challenges you are facing. The SBA is making every effort to support small businesses, which are the backbone of the American economy. Unfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below.

**Business activity is not eligible. EIDL assistance is available only to a small business engaged in an eligible business activity. Business activity means the nature of the business conducted by the applicant.**

The information you submitted with your application does not meet SBA regulations for an eligible business activity.

If you disagree with our decision, you may request reconsideration, subject to the availability of funds. You can submit your request to any of the following:

    a. Mail your request to the address at the top of this letter.

    b. Fax your request to: 202-481-5931.

    c. E-mail your request to: pdcrecons@sba.gov.

Your request must:

    1. Be in writing and be received by this office as soon as possible(but no later than 6 months from the date of this letter.)

    2. Contain all significant information that will overcome the decline/withdrawal reason(s).

We understand that this is a challenging time for your business and for the nation. The SBA has local offices in your community which can refer you to resources that may be able to help you address the underlying reason for your loan denial. For more information on these services, please go to www.sba.gov/local-assistance to locate the email address and phone number for the nearest SBA district office and/or SBA's resource partners. Please call or email for a virtual appointment.

If you have any questions regarding this matter, please contact us at 800-659-2955 (TTY: 1-800-877-8339).

Sincerely,

EXHIBIT J
Page 1

SBA Form 2157B

## Application Processing Department

The Federal Equal Credit Opportunity Act, 15 U.S.C. §1691, prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Response Center, Federal Trade Commission, Washington, D.C. 20580.

**EXHIBIT J**
**Page 2**

SBA Form 2157B

# EXHIBIT K



U.S. SMALL BUSINESS ADMINISTRATION
Disaster Assistance
Processing and Disbursement Center
14925 Kingsport Road
Fort Worth, Texas 76155

800-659-2955
Hearing Impaired
800-877-8339

May 23, 2020

Roger Forbes
Deja Vu Showgirls of San Francisco, LLC
312 Columbus
San Francisco, CA 94133

RE: SBA Disaster Loan Application Number: 3601035167

Dear Roger Forbes,

In these unprecedented times, we understand the challenges you are facing. The SBA is making every effort
to support small businesses, which are the backbone of the American economy. Unfortunately, although we
have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster
Loan (EIDL) for the reason(s) described below.

**Business activity is not eligible. EIDL assistance is available only to a small business engaged in an
eligible business activity. Business activity means the nature of the business conducted by the
applicant.**

The information you submitted with your application does not meet SBA regulations for an eligible
business activity.

If you disagree with our decision, you may request reconsideration, subject to the availability of funds. You
can submit your request to any of the following:

     a. Mail your request to the address at the top of this letter.

     b. Fax your request to: 202-481-5931.

     c. E-mail your request to: pdcrecons@sba.gov.

Your request must:

     1. Be in writing and be received by this office as soon as possible(but no later than 6 months from
       the date of this letter.)

     2. Contain all significant information that will overcome the decline/withdrawal reason(s).

We understand that this is a challenging time for your business and for the nation. The SBA has local
offices in your community which can refer you to resources that may be able to help you address the
underlying reason for your loan denial. For more information on these services, please go to
www.sba.gov/local-assistance to locate the email address and phone number for the nearest SBA district
office and/or SBA's resource partners. Please call or email for a virtual appointment.

If you have any questions regarding this matter, please contact us at 800-659-2955 (TTY: 1-800-877-8339).

Sincerely,

**EXHIBIT K**
**Page 1**

SBA Form 2157B

## Application Processing Department

The Federal Equal Credit Opportunity Act, 15 U.S.C. §1691, prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Response Center, Federal Trade Commission, Washington, D.C. 20580.

**EXHIBIT K**
**Page 2**
2

# EXHIBIT L



**U.S. SMALL BUSINESS ADMINISTRATION**
Disaster Assistance
Processing and Disbursement Center
14925 Kingsport Road
Fort Worth, Texas 76155

800-659-2955
Hearing Impaired
800-877-8339

May 22, 2020

Roger Forbes
Gold Club-SF, LLC
650 Howard Street
San Francisco, CA 94105

RE: SBA Disaster Loan Application Number: 3601005085

Dear Roger Forbes,

In these unprecedented times, we understand the challenges you are facing. The SBA is making every effort to support small businesses, which are the backbone of the American economy. Unfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below.

**Business activity is not eligible. EIDL assistance is available only to a small business engaged in an eligible business activity. Business activity means the nature of the business conducted by the applicant.**

The information you submitted with your application does not meet SBA regulations for an eligible business activity.

If you disagree with our decision, you may request reconsideration, subject to the availability of funds. You can submit your request to any of the following:
   a. Mail your request to the address at the top of this letter.
   b. Fax your request to: 202-481-5931.
   c. E-mail your request to: pdcrecons@sba.gov.

Your request must:

   1. Be in writing and be received by this office as soon as possible(but no later than 6 months from the date of this letter.)
   2. Contain all significant information that will overcome the decline/withdrawal reason(s).

We understand that this is a challenging time for your business and for the nation. The SBA has local offices in your community which can refer you to resources that may be able to help you address the underlying reason for your loan denial. For more information on these services, please go to www.sba.gov/local-assistance to locate the email address and phone number for the nearest SBA district office and/or SBA's resource partners. Please call or email for a virtual appointment.

If you have any questions regarding this matter, please contact us at 800-659-2955 (TTY: 1-800-877-8339).

Sincerely,

**EXHIBIT L**
**Page 1**

SBA Form 2157B

Application Processing Department

The Federal Equal Credit Opportunity Act, 15 U.S.C. §1691, prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Response Center, Federal Trade Commission, Washington, D.C. 20580.

**EXHIBIT L**
**Page 2**
2

# EXHIBIT M



**U.S. SMALL BUSINESS ADMINISTRATION**
**Disaster Assistance**
**Processing and Disbursement Center**
**14925 Kingsport Road**
**Fort Worth, Texas 76155**

800-659-2955
Hearing Impaired
800-877-8339

May 22, 2020

Roger Forbes
DeJa Vu Colorado Springs, Inc.
2145 B Street
Colorado springs, CO 80906

RE: SBA Disaster Loan Application Number: 3600979236

Dear Roger Forbes,

In these unprecedented times, we understand the challenges you are facing. The SBA is making every effort to support small businesses, which are the backbone of the American economy. Unfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below.

**Business activity is not eligible. EIDL assistance is available only to a small business engaged in an eligible business activity. Business activity means the nature of the business conducted by the applicant.**

The information you submitted with your application does not meet SBA regulations for an eligible business activity.

If you disagree with our decision, you may request reconsideration, subject to the availability of funds. You can submit your request to any of the following:

      a. Mail your request to the address at the top of this letter.

      b. Fax your request to: 202-481-5931.

      c. E-mail your request to: pdcrecons@sba.gov.

Your request must:

      1. Be in writing and be received by this office as soon as possible(but no later than 6 months from the date of this letter.)

      2. Contain all significant information that will overcome the decline/withdrawal reason(s).

We understand that this is a challenging time for your business and for the nation. The SBA has local offices in your community which can refer you to resources that may be able to help you address the underlying reason for your loan denial. For more information on these services, please go to www.sba.gov/local-assistance to locate the email address and phone number for the nearest SBA district office and/or SBA's resource partners. Please call or email for a virtual appointment.

If you have any questions regarding this matter, please contact us at 800-659-2955 (TTY: 1-800-877-8339).

Sincerely,

**EXHIBIT M**
**Page 1**

SBA Form 2157B

Application Processing Department

The Federal Equal Credit Opportunity Act, 15 U.S.C. §1691, prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Response Center, Federal Trade Commission, Washington, D.C. 20580.

**EXHIBIT M**
**Page 2**

# EXHIBIT N



**U.S. SMALL BUSINESS ADMINISTRATION**
Disaster Assistance
Processing and Disbursement Center
14925 Kingsport Road
Fort Worth, Texas 76155

800-659-2955
Hearing Impaired
800-877-8339

May 22, 2020

Roger Forbes
Rouge Portland, LLC
403 SW Harvey Milk St
Portland, OR 97204

RE: SBA Disaster Loan Application Number: 3600977056

Dear Roger Forbes,

In these unprecedented times, we understand the challenges you are facing. The SBA is making every effort to support small businesses, which are the backbone of the American economy. Unfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below.

**Business activity is not eligible. EIDL assistance is available only to a small business engaged in an eligible business activity. Business activity means the nature of the business conducted by the applicant.**

The information you submitted with your application does not meet SBA regulations for an eligible business activity.

If you disagree with our decision, you may request reconsideration, subject to the availability of funds. You can submit your request to any of the following:

    a. Mail your request to the address at the top of this letter.

    b. Fax your request to: 202-481-5931.

    c. E-mail your request to: pdcrecons@sba.gov.

Your request must:

    1. Be in writing and be received by this office as soon as possible(but no later than 6 months from the date of this letter.)

    2. Contain all significant information that will overcome the decline/withdrawal reason(s).

We understand that this is a challenging time for your business and for the nation. The SBA has local offices in your community which can refer you to resources that may be able to help you address the underlying reason for your loan denial. For more information on these services, please go to www.sba.gov/local-assistance to locate the email address and phone number for the nearest SBA district office and/or SBA's resource partners. Please call or email for a virtual appointment.

If you have any questions regarding this matter, please contact us at 800-659-2955 (TTY: 1-800-877-8339).

Sincerely,

**EXHIBIT N**
**Page 1**

SBA Form 2157B

## Application Processing Department

The Federal Equal Credit Opportunity Act, 15 U.S.C. §1691, prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Response Center, Federal Trade Commission, Washington, D.C. 20580.

SBA Form 2157B

EXHIBIT O



**U.S. SMALL BUSINESS ADMINISTRATION**
**Disaster Assistance**
**Processing and Disbursement Center**
**14925 Kingsport Road**
**Fort Worth, Texas 76155**

800-659-2955
Hearing Impaired
800-877-8339

May 22, 2020

Roger Forbes
DeJa Vu Spokane, Inc.
East 8722 Sprague Ave
Spokane Valley, WA 99212

RE: SBA Disaster Loan Application Number: 3600976246

Dear Roger Forbes,

In these unprecedented times, we understand the challenges you are facing. The SBA is making every effort to support small businesses, which are the backbone of the American economy. Unfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below.

**Business activity is not eligible. EIDL assistance is available only to a small business engaged in an eligible business activity. Business activity means the nature of the business conducted by the applicant.**

The information you submitted with your application does not meet SBA regulations for an eligible business activity.

If you disagree with our decision, you may request reconsideration, subject to the availability of funds. You can submit your request to any of the following:

     a. Mail your request to the address at the top of this letter.

     b. Fax your request to: 202-481-5931.

     c. E-mail your request to: pdcrecons@sba.gov.

Your request must:

     1. Be in writing and be received by this office as soon as possible(but no later than 6 months from the date of this letter.)

     2. Contain all significant information that will overcome the decline/withdrawal reason(s).

We understand that this is a challenging time for your business and for the nation. The SBA has local offices in your community which can refer you to resources that may be able to help you address the underlying reason for your loan denial. For more information on these services, please go to www.sba.gov/local-assistance to locate the email address and phone number for the nearest SBA district office and/or SBA's resource partners. Please call or email for a virtual appointment.

If you have any questions regarding this matter, please contact us at 800-659-2955 (TTY: 1-800-877-8339).

Sincerely,

**EXHIBIT O**
**Page 1**

SBA Form 2157B

Application Processing Department

The Federal Equal Credit Opportunity Act, 15 U.S.C. §1691, prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Response Center, Federal Trade Commission, Washington, D.C. 20580.

**EXHIBIT O**
**Page 2**

# EXHIBIT P



U.S. SMALL BUSINESS ADMINISTRATION
Disaster Assistance
Processing and Disbursement Center
14925 Kingsport Road
Fort Worth, Texas 76155

800-659-2955
Hearing Impaired
800-877-8339

May 22, 2020

Roger Forbes
Dreamgirls of Lake City, LLC
11332 Lake City Way NE
Seattle, WA 98121

RE: SBA Disaster Loan Application Number: 3600975726

Dear Roger Forbes,

In these unprecedented times, we understand the challenges you are facing. The SBA is making every effort to support small businesses, which are the backbone of the American economy. Unfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below.

**Business activity is not eligible. EIDL assistance is available only to a small business engaged in an eligible business activity. Business activity means the nature of the business conducted by the applicant.**

The information you submitted with your application does not meet SBA regulations for an eligible business activity.

If you disagree with our decision, you may request reconsideration, subject to the availability of funds. You can submit your request to any of the following:

     a. Mail your request to the address at the top of this letter.
     b. Fax your request to: 202-481-5931.
     c. E-mail your request to: pdcrecons@sba.gov.

Your request must:

     1. Be in writing and be received by this office as soon as possible(but no later than 6 months from the date of this letter.)
     2. Contain all significant information that will overcome the decline/withdrawal reason(s).

We understand that this is a challenging time for your business and for the nation. The SBA has local offices in your community which can refer you to resources that may be able to help you address the underlying reason for your loan denial. For more information on these services, please go to www.sba.gov/local-assistance to locate the email address and phone number for the nearest SBA district office and/or SBA's resource partners. Please call or email for a virtual appointment.

If you have any questions regarding this matter, please contact us at 800-659-2955 (TTY: 1-800-877-8339).

Sincerely,

SBA Form 2157B

1
**EXHIBIT P**
**Page 1**

## Application Processing Department

The Federal Equal Credit Opportunity Act, 15 U.S.C. §1691, prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Response Center, Federal Trade Commission, Washington, D.C. 20580.

# EXHIBIT Q



**U.S. SMALL BUSINESS ADMINISTRATION**
**Disaster Assistance**
**Processing and Disbursement Center**
**14925 Kingsport Road**
**Fort Worth, Texas 76155**

800-659-2955
Hearing Impaired
800-877-8339

May 22, 2020

Roger FORBES
DeJa Vu Seattle, LLC
2027 Westlake Ave
Seattle, WA 98121

RE: SBA Disaster Loan Application Number: 3600975833

Dear Roger FORBES,

In these unprecedented times, we understand the challenges you are facing. The SBA is making every effort to support small businesses, which are the backbone of the American economy. Unfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below.

**Business activity is not eligible. EIDL assistance is available only to a small business engaged in an eligible business activity. Business activity means the nature of the business conducted by the applicant.**

The information you submitted with your application does not meet SBA regulations for an eligible business activity.

If you disagree with our decision, you may request reconsideration, subject to the availability of funds. You can submit your request to any of the following:

     a. Mail your request to the address at the top of this letter.
     b. Fax your request to: 202-481-5931.
     c. E-mail your request to: pdcrecons@sba.gov.

Your request must:

     1. Be in writing and be received by this office as soon as possible(but no later than 6 months from the date of this letter.)
     2. Contain all significant information that will overcome the decline/withdrawal reason(s).

We understand that this is a challenging time for your business and for the nation. The SBA has local offices in your community which can refer you to resources that may be able to help you address the underlying reason for your loan denial. For more information on these services, please go to www.sba.gov/local-assistance to locate the email address and phone number for the nearest SBA district office and/or SBA's resource partners. Please call or email for a virtual appointment.

If you have any questions regarding this matter, please contact us at 800-659-2955 (TTY: 1-800-877-8339).

Sincerely,

SBA Form 2157B

1
**EXHIBIT Q**
**Page 1**

Application Processing Department

The Federal Equal Credit Opportunity Act, 15 U.S.C. §1691, prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Response Center, Federal Trade Commission, Washington, D.C. 20580.

# EXHIBIT R



**U.S. SMALL BUSINESS ADMINISTRATION**
**Disaster Assistance**
**Processing and Disbursement Center**
**14925 Kingsport Road**
**Fort Worth, Texas 76155**

800-659-2955
Hearing Impaired
800-877-8339

May 22, 2020

Roger Forbes
DeJa Vu Lake City, Inc.
14556 Bothell Way NE
Lake Forest Park, WA 98155

RE: SBA Disaster Loan Application Number: 3600976022

Dear Roger Forbes,

In these unprecedented times, we understand the challenges you are facing. The SBA is making every effort to support small businesses, which are the backbone of the American economy. Unfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below.

**Business activity is not eligible. EIDL assistance is available only to a small business engaged in an eligible business activity. Business activity means the nature of the business conducted by the applicant.**

The information you submitted with your application does not meet SBA regulations for an eligible business activity.

If you disagree with our decision, you may request reconsideration, subject to the availability of funds. You can submit your request to any of the following:

     a. Mail your request to the address at the top of this letter.

     b. Fax your request to: 202-481-5931.

     c. E-mail your request to: pdcrecons@sba.gov.

Your request must:

     1. Be in writing and be received by this office as soon as possible(but no later than 6 months from the date of this letter.)

     2. Contain all significant information that will overcome the decline/withdrawal reason(s).

We understand that this is a challenging time for your business and for the nation. The SBA has local offices in your community which can refer you to resources that may be able to help you address the underlying reason for your loan denial. For more information on these services, please go to www.sba.gov/local-assistance to locate the email address and phone number for the nearest SBA district office and/or SBA's resource partners. Please call or email for a virtual appointment.

If you have any questions regarding this matter, please contact us at 800-659-2955 (TTY: 1-800-877-8339).

Sincerely,

SBA Form 2157B

1
**EXHIBIT R**
**Page 1**

## Application Processing Department

The Federal Equal Credit Opportunity Act, 15 U.S.C. §1691, prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Response Center, Federal Trade Commission, Washington, D.C. 20580.

/

**EXHIBIT R**
**Page 2**

# EXHIBIT S



**U.S. SMALL BUSINESS ADMINISTRATION**
**Disaster Assistance**
**Processing and Disbursement Center**
**14925 Kingsport Road**
**Fort Worth, Texas 76155**

800-659-2955
Hearing Impaired
800-877-8339

May 22, 2020

Roger Forbes
Dreamgirls of Tacoma, LLC
10707 Pacific Ave S
Tacoma, WA 98444

RE: SBA Disaster Loan Application Number: 3600975953

Dear Roger Forbes,

In these unprecedented times, we understand the challenges you are facing. The SBA is making every effort to support small businesses, which are the backbone of the American economy. Unfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below.

**Business activity is not eligible. EIDL assistance is available only to a small business engaged in an eligible business activity. Business activity means the nature of the business conducted by the applicant.**

The information you submitted with your application does not meet SBA regulations for an eligible business activity.

If you disagree with our decision, you may request reconsideration, subject to the availability of funds. You can submit your request to any of the following:

    a. Mail your request to the address at the top of this letter.

    b. Fax your request to: 202-481-5931.

    c. E-mail your request to: pdcrecons@sba.gov.

Your request must:

    1. Be in writing and be received by this office as soon as possible(but no later than 6 months from the date of this letter.)

    2. Contain all significant information that will overcome the decline/withdrawal reason(s).

We understand that this is a challenging time for your business and for the nation. The SBA has local offices in your community which can refer you to resources that may be able to help you address the underlying reason for your loan denial. For more information on these services, please go to www.sba.gov/local-assistance to locate the email address and phone number for the nearest SBA district office and/or SBA's resource partners. Please call or email for a virtual appointment.

If you have any questions regarding this matter, please contact us at 800-659-2955 (TTY: 1-800-877-8339).

Sincerely,

SBA Form 2157B

1
**EXHIBIT S**
**Page 1**

## Application Processing Department

The Federal Equal Credit Opportunity Act, 15 U.S.C. §1691, prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Response Center, Federal Trade Commission, Washington, D.C. 20580.

# EXHIBIT T



**U.S. SMALL BUSINESS ADMINISTRATION**
**Disaster Assistance**
**Processing and Disbursement Center**
**14925 Kingsport Road**
**Fort Worth, Texas 76155**

800-659-2955
Hearing Impaired
800-877-8339

May 22, 2020

Roger Forbes
Dreamgirls of Seattle, LLC
1530 First Avenue South
Seattle, WA 98134

RE: SBA Disaster Loan Application Number: 3600975908

Dear Roger Forbes,

In these unprecedented times, we understand the challenges you are facing. The SBA is making every effort to support small businesses, which are the backbone of the American economy. Unfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below.

**Business activity is not eligible. EIDL assistance is available only to a small business engaged in an eligible business activity. Business activity means the nature of the business conducted by the applicant.**

The information you submitted with your application does not meet SBA regulations for an eligible business activity.

If you disagree with our decision, you may request reconsideration, subject to the availability of funds. You can submit your request to any of the following:
  a. Mail your request to the address at the top of this letter.
  b. Fax your request to: 202-481-5931.
  c. E-mail your request to: pdcrecons@sba.gov.

Your request must:

  1. Be in writing and be received by this office as soon as possible(but no later than 6 months from the date of this letter.)
  2. Contain all significant information that will overcome the decline/withdrawal reason(s).

We understand that this is a challenging time for your business and for the nation. The SBA has local offices in your community which can refer you to resources that may be able to help you address the underlying reason for your loan denial. For more information on these services, please go to www.sba.gov/local-assistance to locate the email address and phone number for the nearest SBA district office and/or SBA's resource partners. Please call or email for a virtual appointment.

If you have any questions regarding this matter, please contact us at 800-659-2955 (TTY: 1-800-877-8339).

Sincerely,

SBA Form 2157B

1
**EXHIBIT T**
**Page 1**

## Application Processing Department

The Federal Equal Credit Opportunity Act, 15 U.S.C. §1691, prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Response Center, Federal Trade Commission, Washington, D.C. 20580.

2

**EXHIBIT T**

**Page 2**

# EXHIBIT U



# EXHIBIT V



SBA  U.S. Small Business
      Administration

Roger Forbes ∨

APPLICATION ＞ PROCESSING ＞ FUNDING    BUSINESS PROFILE  Change Business

### Your Quote

### Status

Application #: 3601004942

BT California, LLC
412 Broadway
San Francisco CA 94133

**Status: Declined**

$0

Unfortunately, your loan cannot be processed at this time.

Decision details will be communicated by email

### Questions?

Call 1-800-659-2955
TTY/TDD: 1-800-877-8339
Monday-Sunday, 8 a.m.-8 p.m. ET

### Steps to Complete

Verify Identity
Not Started                                    Start

Electronic Disbursement
Not Started                                    Start

Sign Closing Documents
Not Started                                    Start

Need help? Send a request now.

EXHIBIT V
Page 1

# EXHIBIT W

1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION


DV DIAMOND CLUB OF FLINT, LLC, et al.,

                Plaintiffs,

v.                                   File No. 20-10899

SMALL BUSINESS ADMINISTRATION, an agency
of the United States, et al.

                Defendants.
_____/


MOTION FOR TEMPORARY RESTRAINING ORDER

AND/OR PRELIMINARY INJUNCTION AND MOTION

TO INTERVENE


BEFORE THE HONORABLE MATTHEW F. LEITMAN

United States District Judge

United States Courthouse

600 Church Street

Flint, Michigan 48502

Thursday, April 30, 2020

EXHIBIT W
Page 1

2

APPEARANCES:


For the Plaintiffs:        BRADLEY J. SHAFER
                           Shafer Assoc.
                           3800 Capital City Boulevard
                           Suite 2
                           Lansing, MI 48906-2110
                           517-886-6560
                           Email: Brad@BradShaferLaw.com


                           MATTHEW J. HOFFER
                           Shafer and Assoc
                           3800 Capital City Boulevard
                           Suite 2
                           Lansing, MI 48906
                           517-886-6560
                           Email: matt@bradshaferlaw.com


                           PETER E. GARRELL
                           Fortis LLP
                           650 Town Center Drive
                           Suite 1530
                           Costa Mesa, CA 92626
                           714-839-3800
                           Email: pgarrell@fortislaw.com


                           GARY S. EDINGER
                           Benjamin, Aaronson, Edinger & Patanzo, P.A.
                           1700 E. Las Olas Blvd.
                           Suite 202
                           Ft. Lauderdale, FL   33301
                           954-779-1700
                           gsedinger12@gmail.com



For Intervenor
        Plaintiffs:        JENNIFER M. KINSLEY
                           Kinsley Law Office
                           PO BOx 19478
                           Cincinnati, OH 45219
                           513-708-2595
                           Email: kinsleylawoffice@gmail.com

3

APPEARANCES:    (Continued)

For Intervenor
        Plaintiffs:      DANIEL A. SILVER
                         Silver & Silver, LP
                         One Liberty Square
                         New Britain, CT    06051
                         860-225-3518
                         Email:  Daniel@lawsilver.com


For the Defendants:      JAMES J. GILLIGAN
                         DOJ-Civ
                         Federal Programs Branch
                         1100 L St., N.W.
                         Ste 11200
                         Washington, DC 20005
                         202-514-3358
                         Email: james.gilligan@usdoj.gov


                         PETER A. CAPLAN
                         United States Attorney's Office
                         211 W. Fort Street
                         Suite 2001
                         Detroit, MI 48226-3211
                         313-226-9784
                         Email: peter.caplan@usdoj.gov


                         INDRANEEL SUR
                         U.S. Department of Justice,
                         Civil Division, Federal Programs Branch
                         1100 L St., N.W.
                         Ste 11200
                         Washington, DC 20005
                         202-514-3358
                         indraneel.sur@usdoj.gov


Transcribed by:          PEG L. GOODRICH, CSR-0258, RMR
                         Federal Official Court Reporter
                         www.transcriptorders.com

**EXHIBIT** W
**Page 3**

4

# T A B L E   O F   C O N T E N T S

PAGE

PRELIMINARY COMMENTS:                                              5


QUESTIONS BY THE COURT:

    To Defendants                                             8
    To Plaintiffs                                            15


ARGUMENT ON MOTIONS:

    By Plaintiffs                                            29
    By Defendants                                            37
    By Plaintiffs                                            69


CLOSING COMMENTS:                                                 72


COURT'S RULING ON MOTION TO INTERVENE:                           77


CERTIFICATE OF COURT REPORTER:                                   79



EXHIBITS:                                     IDENTIFIED   RECEIVED

    None marked.

8

1  argument.

2          Okay.  Mr. Gilligan, so my first set of questions are for

3  you.  And what I'm trying to do, when I think about this case, is to

4  get my head around how the core regulation at issue here, 13 CFR

5  120.110(p) works.  And Mr. Gilligan, when I look at that regulation,

6  I see that it doesn't ban SBA funding for companies that produce live

7  performances if that's all they do.  It doesn't ban funding for

8  companies that produce live performances of a sexual nature if that's

9  all they do.  But what it does ban is funding for companies that

10 present live performances of a prurient sexual nature.

11         Can you help me understand what the SBA means by the term

12 "prurient" and the phrase "prurient sexual nature?"

13         MR. GILLIGAN:  Yes, I can, your Honor.  Very briefly, when

14 the SBA uses the term "prurient" in this regulation, it is not using

15 the term as it is used, for example, in the *Miller* test for obscenity

16 which interprets the term to mean a morbid or shameful interest in

17 sex.  The SBA applies the lay person, if you will, dictionary

18 definition of "prurient" which means, you know, tending to arouse a

19 "lustful" or, you know, "lascivious" interest in sex.

20         THE COURT:  Mr. Silver, could you mute your line again,

21 there, please?

22         MR. SILVER:  Yes.

23         THE COURT:  Thank you.  Okay.  Mr. Gilligan, can you help me

24 understand the criteria that the SBA uses to determine whether a live

25 performance is of a prurient sexual nature?

57

1        All right.  So then if you go to the dictionary definition

2    of "lascivious," which is what you told me "prurient" means, you get

3    to "wanton and lewd" is the first definition.  So if -- help me

4    understand how that is different from the Supreme Court saying that

5    "immoral" is viewpoint.

6            MR. GILLIGAN:  Several things, your Honor.  I'm not familiar

7    with the *Iancu* case your Honor referred to.  I am a little bit more

8    familiar with the trademark case that preceded it and was cited in

9    the plaintiffs' reply, the *Mattel* case.  And the -- the lead opinion

10   there, I believe, was by Justice Alito that distinguished federal

11   trademark regulation from the government subsidy cases.

12           THE COURT:  Hold on.  I get that.  What I'm talking about

13   here is the narrow question of whether something is viewpoint or

14   content-based.  And your position is that the -- because this is a

15   funding or a subsidy case, government has broad discretion to make

16   distinctions based on content.  Prurient sexual nature is content,

17   not viewpoint.

18           So you say we are comfortably in this realm where we have

19   broad discretion, even to consider content.  And you acknowledge that

20   in the government subsidy cases, what you can't do is have viewpoint

21   discrimination.  And you want to talk about invidious viewpoint

22   discrimination.  The Supreme Court in *Iancu* doesn't -- even though

23   it's not a benefit case, says all viewpoint discrimination is bad

24   stuff.  It's equally bad.  You don't have non-invidious viewpoint

25   discrimination when you're the government.  It's all invidious.

58

1    And the Supreme Court says immoral is viewpoint.  How is

2    immoral -- an immoral trademark different from a prurient expression

3    of sexual conduct?

4        MR. GILLIGAN:  Well, "lascivious and lustful," your Honor,

5    the SBA's interpretation of "prurient," simply refers to, you know,

6    invoking, you know, an avert strong sexual interest.  It doesn't make

7    the term -- doesn't make a value judgment about whether that's good

8    or bad.  Obviously, when you use a term like "immoral" and a term

9    like that, certainly there is more of an inherent value judgment

10   being made with the term "immoral."

11       THE COURT:  But look, I pressed you on this.  You offered

12   the term "lascivious" as an element of the definition of "prurient."

13   "Lascivious," I just read you the regular definition.  That's not one

14   that would just be a healthy lustful reaction.  That's kind of

15   immoral stuff.  That's -- that's what I think of when I think of

16   "lascivious."

17       MR. GILLIGAN:  That's -- that's -- that is not -- this is

18   one point that I had an opportunity to consult with my client about

19   in preparation for today's argument.  That is not the -- that is not

20   the way that the agency looks at it.  It is -- it is simply, you

21   know, "lustful" may be perhaps a better way for the Court to think

22   about it.

23       THE COURT:  Isn't this -- I don't mean to be -- I don't mean

24   to be rude, Mr. Gilligan, but isn't your struggles today to provide a

25   definition with any precision Exhibit A to the problem with this

EXHIBIT W
Page 7

1 regulation?

2 You know, first it means -- it could potentially mean the

3 "prurient" in the *Miller* context but no, no, it doesn't. It means

4 something less. But it really doesn't mean something less when the

5 something less runs into the *Iancu* decision. We are going to keep

6 dialing it back until we clear every possible hurdle and it just --

7 it seems to me Exhibit A for the notion that this is a moving

8 scale.

9 MR. GILLIGAN: Your Honor, it's -- I couldn't -- if your

10 Honor asked me what do, you know, general standards of decency or

11 respect for the diverse values of the American people mean, I

12 couldn't -- I couldn't begin to tell you what those mean. But

13 those were the --

14 THE COURT: You would cite me to the *NEA* case which is

15 distinguishable here in so many ways. That was one factor that was

16 considered among many. It wasn't a dispositive factor. It was a

17 statute that expressly built in subjective value judgments just like

18 that. Congress said we want grants that look at things that sound

19 like decency. I mean, that case, I understand your reliance on it.

20 If I was you, I would be relying on it, too. But I'm not yet

21 prepared to make the jump that just because that term was okay there,

22 this is necessarily okay.

23 MR. GILLIGAN: Well, there are several things to say about

24 that, your Honor. And I've got a few points I think I need to make

25 in light of our colloquy here.

EXHIBIT W
Page 8

# EXHIBIT X

1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION


DV DIAMOND CLUB OF FLINT, LLC, et al.,

                 Plaintiffs,

v.                                      File No. 20-10899

SMALL BUSINESS ADMINISTRATION, an agency
of the United States, et al.

                 Defendants.
_____/


MOTION FOR TEMPORARY RESTRAINING ORDER

AND/OR PRELIMINARY INJUNCTION CONTINUED



BEFORE THE HONORABLE MATTHEW F. LEITMAN

United States District Judge

United States Courthouse

600 Church Street

Flint, Michigan  48502

Tuesday, May 5, 2020

EXHIBIT X
Page 1

2

APPEARANCES:

For the Plaintiffs:     BRADLEY J. SHAFER
                      Shafer Assoc.
                      3800 Capital City Boulevard
                      Suite 2
                      Lansing, MI 48906-2110
                      517-886-6560
                      Email: Brad@BradShaferLaw.com

                      MATTHEW J. HOFFER
                      Shafer and Assoc
                      3800 Capital City Boulevard
                      Suite 2
                      Lansing, MI 48906
                      517-886-6560
                      Email: matt@bradshaferlaw.com

                      PETER E. GARRELL
                      Fortis LLP
                      650 Town Center Drive
                      Suite 1530
                      Costa Mesa, CA 92626
                      714-839-3800
                      Email: pgarrell@fortislaw.com

                      GARY S. EDINGER
                      Benjamin, Aaronson, Edinger & Patanzo, P.A.
                      1700 E. Las Olas Blvd.
                      Suite 202
                      Ft. Lauderdale, FL   33301
                      954-779-1700
                      gsedinger12@gmail.com

For Intervenor
       Plaintiffs:     JENNIFER M. KINSLEY
                      Kinsley Law Office
                      PO BOx 19478
                      Cincinnati, OH 45219
                      513-708-2595
                      Email: kinsleylawoffice@gmail.com

3

APPEARANCES:   (Continued)

For Intervenor
       Plaintiffs:        DANIEL A. SILVER
                          Silver & Silver, LP
                          One Liberty Square
                          New Britain, CT   06051
                          860-225-3518
                          Email:  Daniel@lawsilver.com


For the Defendants:       JAMES J. GILLIGAN
                          DOJ-Civ
                          Federal Programs Branch
                          1100 L St., N.W.
                          Ste 11200
                          Washington, DC 20005
                          202-514-3358
                          Email: james.gilligan@usdoj.gov


                          PETER A. CAPLAN
                          United States Attorney's Office
                          211 W. Fort Street
                          Suite 2001
                          Detroit, MI 48226-3211
                          313-226-9784
                          Email: peter.caplan@usdoj.gov


                          INDRANEEL SUR
                          U.S. Department of Justice,
                          Civil Division, Federal Programs Branch
                          1100 L St., N.W.
                          Ste 11200
                          Washington, DC 20005
                          202-514-3358
                          indraneel.sur@usdoj.gov


Transcribed by:           PEG L. GOODRICH, CSR-0258, RMR
                          Federal Official Court Reporter
                          www.transcriptorders.com

4

T A B L E   O F   C O N T E N T S

PAGE

PRELIMINARY COMMENTS:                                      5




QUESTIONS BY THE COURT:

    To Plaintiffs                                        7
    To Defendants                                       15
    To Plaintiffs                                       44




DISCUSSION ON TAKING OF DEPOSITIONS:                      48




CERTIFICATE OF COURT REPORTER:                            57

EXHIBITS:                                  IDENTIFIED  RECEIVED

    None marked.

13

1  on that one term and saying that term has a commonly understood

2  meaning.  Why doesn't that mode of analysis apply to "prurient" which

3  arguably means the same thing as "lascivious?"

4          MR. SHAFER:  For a couple of reasons, your Honor.  First of

5  all, as we have seen in this case, there is no one standard.  There

6  are -- some of the clients are getting approved under these

7  standards.  Some of them are getting denied.  Some of them are not

8  being able to file applications.

9          We've also seen the fact that, you know, irrespective of

10  what Mr. Gilligan said last week, the fact that the brothel had a

11  restaurant, Mr. Hoffer was pretty elaborate in regard to his

12  complaint -- the amended complaint which he prepared that went

13  through all of the various licenses that all the plaintiffs have and

14  they in fact -- a number of them have food permits as well.

15          But, your Honor, what I would more call the Court's

16  attention to is while the government submitted late last night the

17  stay order from the Seventh Circuit -- or the temporary stay order,

18  what they did not submit to your Honor were first their motion to

19  Judge Adelman, their emergency motion.  Second, Judge Adelman's order

20  giving them another 36 hours.  And third, their emergency stay order

21  in the Seventh Circuit.  And the language, your Honor --

22          THE COURT:  I -- I read all those.

23          MR. SHAFER:  Okay.  So you now know, you now know, we are

24  not at "lewd and lascivious."  We are now at "erotic."  That's what

25  the SBA's newest position is, that "prurient" apparently equates to

EXHIBIT X
Page 5

1  "erotic."

2       And, your Honor, if I could, one of the other things that

3  they cited in those materials is the case of *Barnes v. Glen Theatre*,

4  United States Supreme Court, that I was on and this is what Justice

5  Souter says, this is the language that the government relies on.

6       Your Honor, if you look at Sixth Circuit precedent, judge,

7  *Barnes* is a polarity opinion under *Marks v. United States*.  The Sixth

8  Circuit has determined that Justice Souter's opinion is the

9  constitutional holding on *Barnes*.  It says:

10       "Pasties and a G-string moderate the expression to some

11       degree, to be sure, but only to a degree.  Dropping the final

12       stitch is prohibited but the limitation is minor when measured

13       against the dancer's remaining capacity and opportunity to

14       express an erotic message."

15       And this is in fact, your Honor, the language that the SBA

16  in the Seventh Circuit and in front of Judge Adelman, that's what

17  they were saying.  Nor so far as we were told is the dancer or her

18  employer limited by anything short of obscenity laws from expressing

19  an erotic message.

20       And your Honor has been, you know, interested in the

21  viewpoint aspect of this.  And so, your Honor, if you can go back to

22  the legislative history that we have cited for this particular

23  prohibition, they talk about that; for example, our clients are not

24  precluded from expressing their message.  So the government is now

25  admitting this is message distinct.  They are now trying to limit

EXHIBIT X
Page 6

1  this to "erotic."  It has nothing to do with "lewd and lascivious."

2  You can't be lewd -- you can't be lewd if you're fully -- if you're

3  fully clothed.  But they are just saying, okay, now this is "erotic."

4  That message of eroticism, that is in fact what we are not going to

5  fund, your Honor.  They have themselves admitted in these pleadings,

6  this is viewpoint specific.

7        THE COURT:  What is the -- your argument here is that

8  "erotic" is viewpoint?

9        MR. SHAFER:  Absolutely, your Honor.  As we -- as I pointed

10  out last week, this is a message that nudity, eroticism, sexuality,

11  is okay.  That, you know, it's nothing that is supposed to be thrown

12  under the bus.  It's not anything that has to be hidden.  And it is

13  that message, your Honor, they have now -- they are now admitting,

14  it's that message that they don't want to fund.  Now, you know,

15  gambling is okay now but not my client's message.

16        THE COURT:  Okay.  That's all the questions that I had for

17  you at this point, Mr. Shafer.

18        So let me turn to Mr. Gilligan, if I could.  Mr. Gilligan,

19  can you unmute, please?

20        MR. GILLIGAN:  Yes, your Honor.

21        THE COURT:  All right.  Good morning to you.

22        MR. GILLIGAN:  Good morning.

23        THE COURT:  Mr. Gilligan, I have read all of the papers in

24  the *Camelot* case before Judge Adelman.  And one of the things I noted

25  in the government's motion for a stay before Judge Adelman or motion

1       "This Court faulted the government for not pausing to

2    address the threshold issue of whether the SBA's regulation

3    applies to plaintiffs.  But no pause is necessary as plaintiffs'

4    conduct falls within the heart of the regulation."

5      And then it goes on:

6      "Plaintiffs themselves didn't argue that they are entitled

7    to loans because the regulation doesn't apply to them.  Instead,

8    they attacked it on the First Amendment grounds."

9      But the -- the part of that that jumped out at me was the

10 statement that:

11     "Knowing nothing more, the government took the position that

12    plaintiffs' conduct falls within the heart of the regulations."

13     And then the last sentence of this section of the filing

14 says:

15     "Even if dancers at some of the plaintiffs' establishments

16    wore certain materials in accordance with local law to make the

17    dancing slightly less graphic, plaintiffs' businesses are

18    nonetheless licensed to offer live performances that are

19    explicitly intended to be erotic and the regulation applies."

20     So that suggested to me that the government's position is,

21 if I know there's a live performance that involves semi-nude dancing

22 that's intended to be erotic, the regulation applies and there is no

23 need for an individualized assessment.

24     I know this is unfair because you haven't read this but do

25 you have any reaction to that?

1          MR. GILLIGAN:  Well, as I said, your Honor, it is -- it is

2    my understanding just in discussion with my client about how the

3    statute -- excuse me -- the regulation is administered in individual

4    cases when a lender says, hey, I have this applicant, you know, they

5    are an adult-oriented establishment, are they covered by this

6    regulation.  What the agency will do is, it will -- it will, as I

7    said, not simply rely on labels which is essentially what the

8    plaintiffs are asking the Court to do in this case.  But what they

9    will do is they will investigate using the advantages of technology

10   that the 21st century provides, the actual kind of entertainment

11   that the -- that the establishment itself is telling the world is

12   provided -- that they provide.

13          And so it is not -- it is not simply, as I say, you know,

14   nude dancing, period, that's it.  Or some sort of label, erotic

15   entertainment.  They actually -- they actually will try to

16   investigate what kind of entertainment is actually presented at the

17   establishment.  Now --

18          THE COURT:  Let me ask you this.

19          MR. GILLIGAN:  Can I expound on one part, your Honor?

20          THE COURT:  Sure.

21          MR. GILLIGAN:  Regarding Judge Adelman's opinion, I believe

22   it's page 12, I think that's the portion of the opinion you're also

23   referring to.  He says:

24          "Plaintiffs contend that the erotic entertainment they offer

25       is not prurient.  More specifically, they allege -- they allege,

Case 3:20-cv-03062-L-BE Document 66 Filed 08/06/20 Page 121 of 125

22

1          that their entertainment is not obscene and appeals to the

2          healthy human interests and desires in sexual matters."

3              So there was no evidence, at least as described by Judge

4     Adelman.  It was an allegation.  And then --

5              THE COURT:  Excuse me.  Mr. Gillian, wasn't it a verified

6     complaint like in our case?

7              MR. GILLIGAN:  Yes, but, your Honor, as the Supreme Court

8     said in *Lujan v. National Wildlife Federation*, when a plaintiff's

9     burden is to come forth with evidence, one cannot simply substitute

10    conclusory allegations in a complaint with conclusory allegations in

11    an affidavit.  There has to be some sort of presentation of specific

12    facts that would allow the Court to decide whether or not the

13    entertainment provided is prurient or not.  And in a simple verified

14    complaint which is the equivalent of an affidavit, that is, itself,

15    utterly conclusory on that point.  It doesn't carry their burden as

16    far as -- as far as that would go.

17             THE COURT:  All right.  You mentioned what your client would

18    do or will do if faced with an inquiry about a loan guarantee for one

19    of these adult-oriented businesses.  Has your client in fact actually

20    done that?  Has there been any occasion on which an inquiry to your

21    knowledge has made its way to the general counsel's office as

22    directed in the SOP and the general counsel has undertaken to

23    determine whether an adult-oriented business qualifies or doesn't

24    qualify?

25             MR. GILLIGAN:  Yes.  It happens with some regularity, your

41

1  the statute reaches a substantial amount of speech beyond its

2  legitimate applications, that an overbreadth challenge could not

3  be -- could not be made there.

4      So I think what that tells us here is that since -- since we

5  are, yes, dealing with speech or expressive conduct, that the Supreme

6  Court has said does fall within the outer perimeters of the First

7  Amendment, the overbreadth doctrine might apply but there has been no

8  showing that the situation that we have -- that your Honor has

9  posited is a situation that comes up with such frequency or in such

10  numbers that this regulation is reaching far beyond, in practice,

11  its -- its intended scope.

12      That would certainly be true, your Honor, I think of part

13  one of the regulation which talks about businesses which present live

14  performances of a prurient sexual nature.  So that provision doesn't

15  even apply to the -- to the kind of establishments that sell books or

16  have videos or have the separate room for adults behind the red

17  curtain.

18      THE COURT:  Well, let me ask you, when you -- this circles

19  back to the discussion that you and I had at our prior hearing about

20  what the term "prurient" means and where the government has come down

21  on that in this case and Judge Adelman's case.

22      My recollection was, when you and I were last together, you

23  had settled on something in the neighborhood of "lustful," not

24  necessarily requiring "lasciviousness."  And in front of Adelman and

25  the Seventh Circuit, your colleagues have taken the view that if

42

1  something is "erotic," that would fall within the core of the

2  regulation.

3        If that's what "prurient sexual conduct" means, then why

4  isn't there a real overbreadth problem?  There's all sorts of

5  entertainment, live entertainment that is erotic, all sorts of plays,

6  dances, poetry readings, you name it, that are meant to arouse

7  thoughts about sex in an erotic way that nobody would question for a

8  second is improper or unlawful.

9        Is your answer that just as a practical matter, you're not

10  enforcing the regulations against those entities?  Because if the --

11  if the word is the equivalent of "erotic," then it seems to me there

12  is a potential to reach a lot of clearly protected speech and the

13  overbreadth exception might apply.

14        MR. GILLIGAN:  Well, your Honor, as we discussed the last

15  time, last Thursday, as I said, the agency described the standard to

16  mean "lascivious" or "lustful" speech.  And as I look at the

17  dictionaries online, they are pretty synonymous.  "Lasciviousness" is

18  described as "inclined to lustfulness, arousing sexual desire."

19        So it seems to me that in terms of simply identifying speech

20  that the government has simply determined it does not wish to fund,

21  that that is -- that is a perfectly, as the Second Circuit said in

22  *General Media*, commonsensical standard, which actually distinguishes

23  it from a broader category of expression that might be deemed to fall

24  within -- if you simply use, you know, the term of a sexual nature.

25        I think, though, your Honor, we have to recall, the

1  plaintiffs have not made an overbreadth argument here.  And so I

2  think that, you know, if that is -- if that is an issue that we are

3  going to -- that we are going to explore, that there should be

4  further briefing on it.  But I don't think that a provision that says

5  the government is simply going to refuse to fund expression of a

6  "lascivious or lustful" nature is properly subject to an overbreadth

7  or is -- it can be invalidated on overbreadth grounds.

8        There is a certain overlap here in the analysis between

9  vagueness and overbreadth because the concern with overbreadth is

10  that a statute, because of its overreach, might chill expression,

11  might cause people to curtail their speech or conform it to an

12  approved government message.  That's the same concern that the

13  Court -- that the cases look at, at least in the funding context,

14  when they are examining the statute -- or the regulation for

15  vagueness purposes.

16        THE COURT:  Can you give an example -- can you give an

17  example of a live entertainment performance of a sexual nature?

18  I've now eliminated the word "prurient."  A live entertainment

19  performance of a sexual nature that would qualify for funding?

20        MR. GILLIGAN:  Your Honor, if I had some time to think about

21  it and I could confer with my client about it, maybe they -- you

22  know, a live performance of a sexual nature that wouldn't be

23  considered -- wouldn't be considered prurient, your Honor?  Is that

24  the question?

25        THE COURT:  Yeah.

EXHIBIT  X
Page 13

44

1          MR. GILLIGAN:  I -- your Honor, I would have to give that

2     some thought.

3          THE COURT:  Okay.  All right.  I will -- I want to move on.

4     The last issue I want to talk about is Mr. Shafer's request for a

5     deposition but I will give Mr. Shafer three minutes to respond to my

6     colloquy with Mr. Gilligan.

7          MR. SHAFER:  Sure, your Honor.  And I will try to be quick.

8     Obviously, we didn't make a facial overbreadth argument because it

9     was not until last night that we found out that the government is now

10    taking the position that all erotic speech is in fact subject to this

11    regulation.  And your Honor, if -- the example that Mr. Gilligan

12    couldn't come up with -- you read *Southeastern Performances v.*

13    *Conrad*, United States Supreme Court, go to the concurring opinion.

14    Because the concurring opinion discusses the depictions in the play

15    "Hair."  So I think Mr. Gilligan would have to acknowledge they are

16    not going to fund the play "Hair."

17          Your Honor, I call the Court's attention to a case --

18    another one of the sanctuary city cases, *City of Los Angeles v.*

19    *William Barr*.  That's at 929 F. 3d 1163.  It's a 2019 case, your

20    Honor.  And here, this was where they were trying to attach not

21    getting police funding from the United States government through the

22    sanctuary city laws.  And what the -- and this is the Ninth Circuit.

23          What the Ninth Circuit says, in quoting directly the United

24    States Supreme Court in *South Dakota v. Dole* — I won't give you the

25    cite, it's in here -- it says when Congress decides to impose

EXHIBIT X
Page 14