1  Douglas J. Melton, Bar No. 161353
   Shane M. Cahill, Bar No. 227972
2  LONG & LEVIT LLP
   dmelton@longlevit.com
3  scahill@longlevit.com
   465 California Street, 5th Floor
4  San Francisco, California  94104
   Telephone:     (415) 397-2222
5  Facsimile:     (415) 397-6392

6  ATTORNEYS FOR ALL PLAINTIFFS

7

8                  UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12 DEJA VU-SAN FRANCISCO, LLC; BIJOU-          Case No. 3:20-cv-03982
   CENTURY, LLC; SAN FRANCISCO
13 GARDEN OF EDEN, LLC; DEJA VU
   SHOWGIRLS OF SAN FRANCISCO, LLC;          **PLAINTIFFS' SUPPLEMENTAL BRIEF IN**
14 GOLD CLUB-SF, LLC; DEJA VU                **SUPPORT OF MOTION FOR**
   COLORADO SPRINGS, INC.; ROUGE             **PRELIMINARY INJUNCTION**
15 PORTLAND, LLC; DEJA VU SPOKANE,
   INC.; DREAMGIRLS OF LAKE CITY, LLC;       Date:       August 27, 2020
16 DEJA VU SEATTLE, LLC; DEJA VU LAKE        Time:       9:30 a.m.
   CITY, INC.; DREAMGIRLS OF TACOMA,         Courtroom:  B – 15th Floor
17 LLC; DREAMGIRLS OF SEATTLE, LLC;          Judge:      Hon. Magistrate Laurel Beeler
   SAW ENTERTAINMENT, LTD; AND BT
18 CALIFORNIA, LLC,

19              Plaintiffs,
                v.
20
   UNITED STATES SMALL BUSINESS
21 ADMINISTRATION; JOVITA CARRANZA,
   ADMINISTRATOR OF THE SMALL
22 BUSINESS ADMINISTRATION, IN HER
   OFFICIAL CAPACITY; AND THE UNITED
23 STATES OF AMERICA,
   Defendants.
24
                Defendants.
25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

CASE NO. 3:20-CV-03982

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      PLAINTIFFS' SUPPLEMENTAL CHEVRON ATTACK BASED UPON 15 U.S.C. § 633(E) ............................................................................. 1

II.     CONGRESS HAS SPOKEN DIRECTLY TO THE ISSUE AT HAND ........................... 1

III.    THE LEGISLATIVE HISTORY VERIFIES THE CONCLUSION THAT THE STATUTE IS UNAMBIGUOUS ........................................................................ 5

IV.     THE STATUTORY CANON OF *EXPRESSIO UNIUS* FURTHER DEMONSTRATES THE STATUTE'S LACK OF AMBIGUITY .................................. 12

V.      CONGRESS KNEW OF THE "CLUSTER OF IDEAS" THE TERM "OBSCENE" CARRIES WHEN IT DRAFTED THE STATUTORY LOAN BAN LIMITATION, AND THE SBA'S VARIOUS OPERATIONALIZATIONS OF "PRURIENT" IN THESE LAWSUITS ARE NOT THEM ............................................ 13

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

CASE NO. 3:20-CV-03982

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1

## TABLE OF AUTHORITIES

2

**Cases**

Altera Corp. & Subsidiaries v. CIR
   No. 19-1009, 2020 WL 3405861 ................................................................. 3

Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue ("Altera")
   926 F.3d 1061, 1075 (9th Cir. 2019)........................................................ 3, 12

Barnhart v. Peabody Coal Co.
   537 U.S. 149, 168 (2003) .......................................................................... 13

Brockett v. Spokane Arcades, Inc.
   472 U.S. 491, 498-99 (1985)....................................................................... 9

Campos-Hernandez v. Sessions
   889 F.3d 564, 568 (9th Cir. 2018)............................................................... 3

Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.
   467 U.S. 837, 843 (1984)....................................................................... 1, 11

E. Bay Sanctuary Covenant v. Barr ("East Bay")
   385 F. Supp. 3d 922, 938 (N.D. Cal.) ......................................................... 3

Garcia v. United States
   469 U.S. 70, 76 (1984) ............................................................................... 5

General Media Comm., Inc. v. Cohen
   131 F.3d 273, 287  (2d Cir. 1997)............................................................. 10

Gonzalez v. Arizona
   677 F.3d 383, 403 n.29 (9th Cir. 2012)....................................................... 5

Iancu v. Brunetti
   139 U.S. 2294 (2019)................................................................................. 9

In re First T.D. & Inv., Inc.
   253 F.3d 520, 527 (9th Cir. 2001)............................................................... 5

King v. Burwell
   135 S. Ct. 2480, 2489 (2015) ..................................................................... 3

Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n
   453 U.S. 1, 13 (1981).............................................................................. 3, 5

Miller v. California
   413 U.S. 13 (1973) ............................................................................ passim

Morissette v. United States
   342 U.S. 246, 263 (1952) .......................................................................... 13

N.B. Indus., Inc. v. Wells Fargo & Co.
   465 F. App'x 640 (9th Cir. 2012)................................................................ 2

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.
  545 U.S. 967, 982 (2005)..................................................................................... 2

Nw. Envtl. Advocates v. U.S. E.P.A.
  537 F.2d 1006, 1014 (9th Cir. 2008).................................................................. 3

Oregon Rest. & Lodging Ass'n v. Perez
  816 F.3d 1080, 1088 (9th Cir. 2016).................................................................. 2

PGM International Division, L.L.C. v. Rumsfeld
  303 F.3d 1163, 1166 (9th Cir. 2002).................................................................. 9

Pope v. Illinois
  481 U.S. 497 (1987)............................................................................................ 7

Rainsong Co. v. F.E.R.C.
  106 F.3d 269, 273 (9th Cir. 1997)...................................................................... 2

Rainsong Co. v. F.E.R.C.
  106 F.3d at 273................................................................................................. 11

Roth v. United States
  354 U.S. 476, 487 n. 20 (1957).......................................................................... 9

Shipyards Corp. v. Dir., Office of Workers Comp. Programs
  950 F.2d 607, 610 (9th Cir. 1991).................................................................... 11

Silvers v. Sony Pictures Entm't, Inc.
  402 F.3d 881, 885 (9th Cir. 2005).................................................................... 12

Smith v. United States
  431 U.S. 291 (1977)............................................................................................ 7

State of Or. By & Through Div. of State Lands v. Bureau of Land Mgmt., Dep't of the Interior
  U.S., 876 F.2d 1419, 1425 (9th Cir. 1989) ...................................................... 11

United States v. Vonn
  535 U.S. 55, 65 (2002)...................................................................................... 13

United States v. X-Citement Video, Inc.
  513 U.S. 64, 78-79 (1994)................................................................................ 10

Wheeler v. City of Santa Clara
  894 F.3d 1046, 1054 (9th Cir. 2018)................................................................ 12

**Statutes**

13 C.F.R. § 120.110(p) ........................................................................................ 6

13 C.F.R. 120.101–2(b) ....................................................................................... 6

15 U.S.C. § 631 ............................................................................................. 11, 13

15 U.S.C. § 633(e) .................................................................................. 1, 3, 4, 11, 12

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

CASE NO. 3:20-CV-03982

15 U.S.C. § 633(f) ................................................................................................................ 5

15 U.S.C. § 636(a)(1)(B) ...................................................................................................... 4

5 U.S.C. § 706(2)(A) ............................................................................................................ 2

5 U.S.C., § 706(2)(c) ............................................................................................................ 3

**Other Authorities**

S. REP. 103-332, 23-24, 1994 U.S.C.C.A.N. 3407, 3430-31 ............................................. 7

59 FR 36042-01, 36044 ...................................................................................................... 11

H.R. CONF. REP. 103-824, 54, 1994 U.S.C.C.A.N. 3436, 3455 ....................................... 7

S. REP. 103-332, 24, 1994 U.S.C.C.A.N. 3407, 3431 ....................................................... 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- iii -

CASE NO. 3:20-CV-03982

**I.      PLAINTIFFS' SUPPLEMENTAL CHEVRON ATTACK BASED UPON 15 U.S.C. § 633(E)**

Plaintiffs previously levied a "Chevron" attack on the Regulation's applicability to the CARES Act EIDL program alleging that Congress, through the CARES Act—15 U.S.C. § 9009(a)(1)-(2), (b)—spoke explicitly as to the eligibility for CARES Act EIDLs such that the Regulation did not apply to CARES Act EIDLs regardless of its applicability to traditional EIDLs. Plaintiffs also levied a "State Farm" attack on the Regulations alleging that the Regulations were not the product of reasoned decision-making, as well as various constitutional challenges.

Plaintiffs now believe that a Chevron challenge to the Regulation based upon the clear and unambiguous language of 15 U.S.C. § 633(e) (hereafter referred to as the "Statutory Loan Ban Limitation"), which Plaintiffs initially brought to this Court's attention on July 29, 2020 [ECF 58; and accompanying brief in ECF 58-1], and as is substituted by this Memorandum and supplemented below, is dispositive such that the previously briefed Chevron and State Farm arguments under the CARES Act, and the various constitutional challenges, need not be reached. Plaintiffs' Chevron argument with regard to the Statutory Loan Ban Limitation renders the Regulation to be void even independent of the CARES Act..

**II.     CONGRESS HAS SPOKEN DIRECTLY TO THE ISSUE AT HAND**

"The judiciary is the final authority on issues of statutory construction and *must reject administrative constructions that are contrary to clear congressional intent*." Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984) (emphasis added). Thus, if the Statutory Loan Ban Limitation is unambiguous, the court may "accept the [SBA's] interpretation of [the statute] *only if it is compatible with Congress' clear intent as expressed by the **plain***

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

-1-                                    CASE NO. 3:20-CV-03982

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

*meaning of the statute*." <u>Rainsong Co. v. F.E.R.C.</u>, 106 F.3d 269, 273 (9th Cir. 1997) (all emphasis added); *see also* <u>N.B. Indus. v. Wells Fargo & Co.</u>, No. C 10-03203 LB, 2010 WL 4939970, at *5 (N.D. Cal. Nov. 30, 2010), <u>aff'd sub nom.</u> <u>N.B. Indus., Inc. v. Wells Fargo & Co.</u>, 465 F. App'x 640 (9th Cir. 2012) (J. Beeler) (emphasis added) ("If the statute's definition of [what material or services are to be excluded from SBA aid] were ambiguous, the court would be inclined to give the [Regulations] substantial deference under <u>Chevron</u> . . . [however] a regulation promulgated by the [SBA] is entitled to controlling weight *unless it is* arbitrary, capricious, or *manifestly contrary to the statute*.").

Consequently, the precise issue here is this: Has Congress directly spoken as to what type of sexual expression may be excluded from SBA loan programs? The answer here is certainly "yes."  As discussed in detail below, the Statutory Loan Ban Limitation unambiguously prohibits SBA loans *only* to businesses that have been the subject of *a judicial adjudication of obscenity*; thereby, unambiguously protecting, as eligible for SBA loans, businesses lawfully engaged in protected (albeit sexual) First Amendment speech.  <u>Oregon Rest. & Lodging Ass'n v. Perez</u>, 816 F.3d 1080, 1088 (9th Cir. 2016) (quoting <u>Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.</u>, 545 U.S. 967, 982 (2005) (noting "the court 'leaves no room for agency discretion' when "a statute unambiguously protects or prohibits certain conduct").

15 U.S.C. § 633 (the Statutory Loan Ban Limitation) reads, in part:

> **(e) Prohibition on provision of assistance**
> Notwithstanding any other provision of law, the Administration *is prohibited* from providing any financial or other assistance to any business concern or other person engaged in the production or distribution of any product *or service* that has been <u>*determined* to be obscene <u>by a court of competent jurisdiction</u></u>.

(all emphasis added, and sometimes simply referred to as "§ 633(e)").

"[W]here a plaintiff alleges that, as a result of an erroneous legal interpretation, the agency's action was 'not in accordance with the law,' 5 U.S.C. § 706(2)(A), or 'in excess of

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

statutory jurisdiction, authority, or limitations, or short of statutory right,' id. § 706(2)(c), courts apply the Chevron framework."  E. Bay Sanctuary Covenant v. Barr ("East Bay"), 385 F. Supp. 3d 922, 938 (N.D. Cal.), order reinstated, 391 F. Supp. 3d 974 (N.D. Cal. 2019), aff'd, 964 F.3d 832 (9th Cir. 2020), and aff'd, 964 F.3d 832 (9th Cir. 2020) (citing Nw. Envtl. Advocates v. U.S. E.P.A., 537 F.2d 1006, 1014 (9th Cir. 2008)). "Under Chevron, the Court first considers 'whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter.'" Id. (quoting Campos-Hernandez v. Sessions, 889 F.3d 564, 568 (9th Cir. 2018)).

Court's "start with the plain statutory text and, 'when deciding whether the language is plain, we must read the words in context and with a view to their place in the overall statutory scheme.'" Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue ("Altera"), 926 F.3d 1061, 1075 (9th Cir. 2019), cert. denied sub nom. Altera Corp. & Subsidiaries v. CIR, No. 19-1009, 2020 WL 3405861 (U.S. June 22, 2020) (quoting King v. Burwell, 135 S. Ct. 2480, 2489 (2015)). "In addition," however, courts "examine the legislative history, the statutory structure, and 'other traditional aids of statutory interpretation' in order to ascertain congressional intent." Id. (quoting Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 13 (1981)).

The plain statutory text clearly states that to be excluded from SBA assistance, a business must be "engaged in the production or distribution of any product or service that has been *determined to be obscene by a court of competent jurisdiction*." § 633(e) (emphasis added). Nothing is left ambiguous.  This statutory language leaves no room for SBA discretion or further regulation; simply put, this is the clear Congressional mandate describing those limited forms of sexual expression that can serve as the basis of loan denial.

Further demonstrating the Congressional limitation for excluding loans only to those engaged in sexual expression that has been *adjudicated* to be obscene, and therefore *illegal*, is the

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

CASE NO. 3:20-CV-03982

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

statutory provision contained in 15 U.S.C. § 636(a)(1)(B).   Therein, in a subheading titled "background checks" under the general heading of "Loans to small business concerns," Congress provided that prior to the approval of any loan the Administrator may:

> . . .verify the applicant's criminal background, or lack thereof, through the best available means, including, if possible, use of the National Crime Information Center computer system at the Federal Bureau of Investigation.

Consequently, Congress has certainly empowered the SBA to deny loans based upon the criminal record of the applicant. If it could not, there would be absolutely no reason for this statutory provision. A criminal record would include, for example, an *adjudication* of obscenity. What would *not* constitute a criminal record is presenting live performances that may satisfy one facet of one component of the constitutional test of obscenity but that nevertheless remain fully protected under the First Amendment. Simply because expression may not be liked by officials at the SBA does not mean that loan application determinations can be based on the ever-evolving subjective standard that the SBA posits on any given day in any given lawsuit. An adjudication by a court of criminality must have first been made.

This should all be contrasted with the statutory provision immediately following § 633(e) involving another statutory basis for loan denial, and that involves the failure to pay child support. 15 U.S.C. § 633(f). That subsection reads in its entirety:

> (f) Certification of compliance with child support obligations
> (1) In general
> For financial assistance approved after the promulgation of final regulations to implement this section, each recipient of financial assistance under this chapter, including a recipient of a direct loan or a loan guarantee, shall certify that the recipient is not more than 60 days delinquent under the terms of any--
> (A) administrative order;
> (B) court order; or
> (C) repayment agreement entered into between the recipient and the custodial parent or State agency providing child support enforcement services, that requires the recipient to pay child support, as such term is defined in section 662(b) of Title 42.
> (2) Enforcement
> *Not later than 6 months after October 22, 1994, the Administration shall*

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

CASE NO. 3:20-CV-03982

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

*promulgate such regulations as may be necessary to enforce compliance with the requirements of this subsection.*

15 U.S.C. § 633(f) (emphasis added).

Here, however, there is nothing to promulgate. Congress has clearly specified the *sole* circumstance in which a business engaged in sexual expression may have a loan application denied. *See also* the canon of statutory construction discussed in Section IV below, known as *expresio unius*.

### III.   THE LEGISLATIVE HISTORY VERIFIES THE CONCLUSION THAT THE STATUTE IS UNAMBIGUOUS

Unlike when analyzing the legality of a state regulation under California law, legislative history is to be used *from the beginning* as an interpretive tool at the outset of a federal inquiry under the APA. *Compare* In re First T.D. & Inv., Inc., 253 F.3d 520, 527 (9th Cir. 2001) ("apply[ing] California's rules of statutory construction" which "consider[s] extrinsic evidence of the legislatures intent, including the . . . history and background of the statute" only if "the wording of the statute is ambiguous")*, with* Middlesex Cty. Sewerage Auth., 453 U.S. at 13 (noting courts "review the legislative history . . . to determine congressional intent.").

The Supreme Court has "repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill[.]" Garcia v. United States, 469 U.S. 70, 76 (1984);[1] Gonzalez v. Arizona, 677 F.3d 383, 403 n.29 (9th Cir. 2012) (""With respect to the legislative history, [an act's] Conference Report . . . is the most authoritative and reliable legislative material[,]").

Here, the Congressional Record verifies the conclusion that Congress intended for § 633(e) to exclude *only* expression that has been adjudicated to be obscene by a court of law from

---

[1]   Committee Reports include "reports of conference committees." Congress.gov, https://www.congress.gov/congressional-reports/about (last visited Aug. 4, 2020).

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

CASE NO. 3:20-CV-03982

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

SBA assistance. The Statutory Loan Ban Limitation was first included in the Code on October 22, 1994, via Pub. L. 103-403. The final engrossed Senate version of the provision that would ultimately become Pub. L. 103-403 stated:

> Notwithstanding any other provision of law, the Administration is prohibited from providing any financial or other assistance to any business concern or other person engaged in the production or distribution of any product *or service that is deemed to be obscene*.

S. 2060 Engrossed in Senate, 103D Congress, 2d Session (August 18, 1994) (all emphasis added) [ECF 58-1, p. 18]. As written, this would have left the "deem[ing]" of a product or service as "obscene" to the SBA. Id. Nevertheless, Congress did not adopt this version. The related Senate Report explains the intent of this statutory provision:

> During Committee markup of the bill, Senator Pressler offered an amendment, that was unanimously accepted by the Committee, to prohibit the Administration from providing assistance to businesses engaged in the production and distribution of obscene products or services. The amendment was offered in response to the Administration's recent repeal of its "opinion molder rule" promulgated in 1953. Under that rule, the Administration, with few exceptions, could not provide assistance to small businesses engaged in the "creation, origination, expression, dissemination, propagation or distribution of ideas, values, thought, opinions or similar intellectual property, regardless of medium, form, or content" (13 CFR 120.101–2(b)). With the repeal of the rule, businesses such as newspapers, movie theaters, radio stations and bookstores now are eligible for Administration assistance. However, members of the Committee were concerned a blanket repeal of the rule would allow businesses involved in the production and distribution of obscene products and services to seek Administration support and that the agency would have no means by which to deny such loans or other assistance. **Senator Pressler's amendment makes it <u>clear</u> the Administration is not authorized to provide any assistance to those engaged in "obscene" businesses (<u>and thus not entitled to First Amendment protection</u>[2]) as defined by the U.S. Supreme**

---

[2]  Demonstrating that the SBA understood *neither* the mandate from Congress nor the constitutional limitations in this regard is the legislative history underlying 13 C.F.R. § 120.110(p), which was the initial "prurient sexual nature" regulation adopted by the SBA -- that being applicable to  Section 7(a) loans -- where the SBA, in specifically citing to <u>Miller v. California</u>, 413 U.S. 13 (1973),  stated that:  "Having considered the legal precedent and the Congressional mandate, SBA has determined that it may exclude small businesses engaged in *lawful activities of an obscene ... nature.*"  60 Fed. Register, 64360 (proposed Dec. 15, 1995) (emphasis added).  This statement is, of course, a legal and constitutional non sequitur given that engaging in *obscenity* is <u>not</u>, *by definition and as pointed out by <u>Congress</u>*, a "*lawful* activit[y]." (Emphasis added).

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

CASE NO. 3:20-CV-03982

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

**Court. The amendment is <u>intended</u> to cover the narrow range of adult theme businesses**, including adult book stores, adult theaters, adult film and video producers, and adult film and video distributors. **It is not meant to apply to businesses** such as convenience stores that may carry adult materials **<u>that do not fall within the Supreme Court's definition of obscenity</u>**.

S. REP. 103-332, 23-24, 1994 U.S.C.C.A.N. 3407, 3430-31 (all emphasis added; clarification in original).

The House bill modified the Senate's proposed language to its current form. The Congressional justification reiterates the above, but the Conciliation Conference notes added:

The House bill had no similar provision.

The conferees adopted the Senate provision with the clarification that ***any materials in question must have been <u>judicially determined</u>, in either a civil or criminal action, to be <u>legally obscene</u> under the <u>prevailing constitutional standards in order for the ban to apply</u>***.

H.R. CONF. REP. 103-824, 54, 1994 U.S.C.C.A.N. 3436, 3455 (Section 611, all emphasis added).

There is nothing vague or ambiguous concerning this statutory language itself, and certainly not when combined with this clear legislative history. Congress has imposed a strict, bright line, limitation of the circumstances when those engaged in sexual expression can be denied governmental loans. The SBA can refuse to provide such loans only if there is been a *judicial determination* of *obscenity* utilizing the *appropriate constitutional standards*.[3]

Nevertheless, and irrespective of the fact that the legislative history unequivocally states that Congress was limiting the Loan Ban Limitation only to expression that has been *judicially* determined to be *devoid of constitutional protections under the First Amendment*, from the

---

[3] Not coincidentally, this is the *exact same argument* that Plaintiffs made in their initial brief supporting their motion for preliminary injunction by pointing out that the Regulation was invalid because it did not conform to the three-part "<u>Miller</u> Test" test of constitutional obscenity set forth in <u>Miller v. California</u>, 413 U.S. 15 (1973); <u>Smith v. United States</u>, 431 U.S. 291 (1977); and <u>Pope v. Illinois</u>, 481 U.S. 497 (1987). [*See* ECF 33 at pp. 23-27].

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

CASE NO. 3:20-CV-03982

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

previous oral argument, the Government apparently contends that:

- court adjudication is unnecessary and it can treat the clear congressional limitation as virtually meaningless;[4]

- the SBA may deny a loan application even when there has been no *judicial* determination of obscenity;

- the SBA may deny a loan application even when the materials or services still then receive protections from governmental infringement under the First Amendment;

- two of the three mandatory components to adjudicate obscenity set forth by the Supreme Court under the <u>Miller</u> Test may be completely ignored in determining loan eligibility;[5]

- the SBA need not impose the full three-part <u>Miller</u> Test of obscenity (the acknowledged "*prevailing constitutional standards*") in order to determine loan eligibility; [6]

- the SBA can deny a loan based on only *one portion of one test component* of the three-part <u>Miller</u> Test of obscenity;[7]

---

[4] *But see*, authorities cited above.

[5] These three test components being:  Prurient appeal; patent offensiveness; and lack of serious value. [*See* ECF 33 at pp. 24, 26]; s*ee also* Bradley J. Shafer, <u>Patent Offensiveness: The Black Hole of *Miller*</u>, 10 T.M. Cooley L. Rev. 1, 1-69 (1993).

[6] *Cf.*, e.g., Reno v. ACLU, 521 U.S. 844, 873 (1997) (all three components of the <u>Miller</u> Test must be used in order to constitutionally limit the vagueness of the obscenity standards).  *See* additional cites at ECF 33 at pp. 24, 26, 30; ECF 54 at p. 24.

[7] The first component of the <u>Miller</u> Test being that "the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest. . . ."  <u>Miller</u>, 413 U.S. at 24.  Gone from the Regulation are the concepts of:  1) utilizing the average person standard; 2) who must apply contemporary community standards; and 3) who must then evaluate the work taken as a whole, in order to determine its prurient appeal.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

CASE NO. 3:20-CV-03982

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

- the SBA need not follow the Supreme Court's definition of "prurient" as set forth in the <u>Miller</u> Test and its progeny;[8]

- the SBA need not clearly articulate *any* definition for the phrase "prurient sexual nature";[9]

- the SBA may go back and forth *and back again* in attempting to find a definition for the phrase "prurient sexual nature" that will get it out of its litigation "hole" in these CARES Act cases involving sexual expression;[10] and

---

[8] The Supreme Court having specifically defined "prurient" as being materials that appeal to a "*shameful or morbid*," and "*unhealthy*" interest in sex, as opposed to "normal, healthy sexual desires." <u>Roth v. United States</u>, 354 U.S. 476, 487 n. 20 (1957); <u>Brockett v. Spokane Arcades, Inc.</u>, 472 U.S. 491, 498-99 (1985); *see also* ECF 31-1, Ex. W, p. 8 (Mr. Gilligan acknowledging in the Michigan litigation that the SBA was not using the definition of "prurient" used in the <u>Miller</u> Test).

[9] *See* ECF 48-1, Defendants' Corrected Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Temporary Restraining Order [sic] Preliminary Injunction (no attempt being made whatsoever therein to provide either this Court or the Plaintiffs a definition of the phrase "prurient sexual nature," even in response to Plaintiffs' vagueness argument.

[10] In the Michigan litigation, the government took the position that "prurient" meant "lustful" or "lascivious." [ECF 31-1, Ex. W, p. 8]. This then caused Judge Leitman to point out that for the dictionary definition of lascivious, "you get to 'wanton and lewd,'" which the judge believed was really no different than the "immoral" standard found to be viewpoint-based discrimination in <u>Iancu v. Brunetti</u>, 139 U.S. 2294 (2019) [ECF 31-1, Ex. W, pp. 6-8] (thereby rendering the Regulation, even under the "subsidy" cases relied upon the government, and irrespective of the clear judicial limitations provided for in those cases, to be undeniably unconstitutional). So, the SBA had to abandon the "lascivious" definition found, of course, nowhere in the Regulation (or the statute). *Cf.* <u>PGM International Division, L.L.C. v. Rumsfeld</u>, 303 F.3d 1163, 1166 (9th Cir. 2002) (Department of Defense regulation banning "sexually explicit material" on military bases *specifically defining that phrase* as material "produced in any medium, the dominant theme of which depicts or describes nudity, including sexual or excretory activities or organs, in a *lascivious* way") (quoting 10 C.F.R. §2489a) (emphasis added). It then came up with the "erotic" definition first in the Wisconsin litigation, [ECF 31-1, Ex. X, pp. 5-6, 11-12], leading Judge Leitman in the Michigan litigation to then observe the substantial overbreadth of the regulation in light of the government's new definition. [<u>Id.</u>, Ex. X, pp. 11-14]. So, now, apparently, the SBA has decided to randomly go back to "lascivious" in order to try to claim that Plaintiffs' constitutional arguments are somehow governed by <u>PMG</u> (ignoring, of course, the later and more relevant decision of the *Supreme Court* in Iancu). Plaintiffs' arguments are not, however, governed by <u>PMG</u> for the reasons stated both in this footnote and elsewhere in this memorandum.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

- 9 -                                                    CASE NO. 3:20-CV-03982

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

- the SBA may operationalize the term "prurient" with a definition not found *anywhere* in the jurisprudence of this country and which, confusingly, arises from a *different prong* of the Miller Test.[11]

To reach such conclusions would render the Statutory Loan Ban Limitation meaningless

---

[11] Having apparently recognized that it's decision in the Wisconsin litigation to apply a definition of "erotic" to the phrase "prurient sexual nature" was a litigation misstep that resulted in a significant overbreadth challenge to the Regulations, [*see, e.g*., ECF 31-1, Ex. X, pp. 11-12 (judge Leitman challenging Mr. Gilligan with examples of overbreadth by using the definition of "erotic")], the government now retreats to its position first raised in the Michigan litigation that "prurient" actually means "lascivious." But "lascivious" is relevant to, if anything, the *patent offensiveness prong* of the Miller Test, which requires the trier of fact to determine whether the "work depicts or describes, in a patently offensive way, sexual conduct specifically defined by applicable [] law." Miller, 413 U.S. at 24. And, therein, the Court provides "a *few plain examples*" of what a statute *could* define to encompass patently offensive depictions, including "*lewd* exhibition of the genitals." Id. at 25 (emphasis added); *see also* Shafer, *supra*, fn. 5, at 37-38. The mixing by the SBA of the two separate and distinct legal standards (prurient appeal and patent offensiveness) is demonstrated three ways.

First, in the Michigan litigation when the government took the position that "prurient" meant "lustful" or "lascivious," Judge Leitman acknowledged that the dictionary definitions for "lascivious" included "lewd." [ECF 33-1, Ex. W, p. 6]; *see also Lascivious*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/lascivious (last visited Aug. 4, 2020) (defining "Lascivious" as "filled with or showing sexual desire: *lewd*, lustful) (emphasis added). Second, even the cases relied upon by the government here note that "lewd" and "lascivious" are one-and-the-same. *See* United States v. X-Citement Video, Inc., 513 U.S. 64, 78-79 (1994) (declaring as "insubstantial" respondent's argument that congressional replacing of the term "lewd" with "lascivious" rendered statute overbroad and vague); PMG, 303 F.3d at 1166 (Department of Defense  regulation banning "sexually explicit material" on military bases defining "Lascivious" as "*Lewd* and intended or designed to elicit a sexual response"); General Media Comm., Inc. v. Cohen, 131 F.3d 273, 287  (2d Cir. 1997) (in relying on Excitement Video, and more importantly the lower *Ninth Circuit decision* thereof at 982 F.2d 1285, 1288 (9th Cir. 1992), rev'd on other grounds at 513 U.S. 64, the court notes that "'lascivious' could be equated with 'lewd,'" "which the Ninth Circuit described as 'a commonsensical term whose constitutionality was specifically upheld in Miller . . .'"). The government does not even *attempt* to explain:  1) why in this Regulation it is *now* abandoning the Miller standard of "prurient appeal" (which, certainly, any reasonable person would have previously understood the phrase to mean, particularly given the reference to Miller in the Federal Register comments underlying the enactment of the initial "prurient sexual nature" regulation) and replacing it, rather, with *part* of the constitutional standard for *patent offensiveness*; 2) the basis it claims that would allow it to do so in these circumstances; and/or 3) how this switch satisfies the constitutional standards of vagueness as articulated in Plaintiffs' prior briefing.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

- 10 -

CASE NO. 3:20-CV-03982

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

and a virtual nullity. Regulations cannot so invalidate statutory directives from Congress. *See, e.g.*, Chevron, 467 U.S. at 843; <u>Rainsong Co. v. F.E.R.C.</u>, 106 F.3d at 273; <u>Todd Shipyards Corp. v. Dir., Office of Workers Comp. Programs</u>, 950 F.2d 607, 610 (9th Cir. 1991) ("We must reject administrative constructions which are contrary to congressional intent."); <u>State of Or. By & Through Div. of State Lands v. Bureau of Land Mgmt., Dep't of the Interior, U.S.</u>, 876 F.2d 1419, 1425 (9th Cir. 1989) (citing <u>Chevron</u>, 467 U.S. at 843 n.9) (same).

If the SBA had the plenary authority it claims to deny assistance to any small business concern it disfavors, as embodied in the Regulations, § 633(e) is completely unnecessary. This is, of course, at odds with the Senate committee's understanding that absent § 633(e), the SBA "would have no means by which to deny" assistance to obscene businesses. S. REP. 103-332, 24, 1994 U.S.C.C.A.N. 3407, 3431. Yet, even the SBA itself explained over the course of repealing the opinion molder rule, it then-existing practices were "sufficient to protect the public interest," especially in light of "the prohibition on funding illegal activities." 59 FR 36042-01, 36044. Section 633(e) narrowly expands that prohibition to matters civilly determined to be obscene. After all, the SBA's statutory purpose, which is only emphasized by the current pandemic and the CARES Act, is to aid small business concerns "insofar as is possible . . . to maintain and strengthen the overall economy of the Nation." 15 U.S.C.A. § 631. Excluding businesses from assistance on matters of taste, untethered from economic concerns, is contrary to the SBA's purpose for existing.

Moreover, any claim by the SBA that the statutory language is somehow ambiguous,[12] thereby giving it maneuvering room to further preclude loans to businesses engaged in sexual expression, is foreclosed by unequivocal statements found in the Congressional Record. As

---

[12] Interestingly, the SBA seems to contend that virtually every relevant congressional dictate relied on by the Plaintiffs is "at least ambiguous," while its ever-changing actions here are the model of clarity. [ECF 45 at p. 22].

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

originally written in the Senate version, "Congress [would have] 'explicitly left a gap for [the SBA] to fill, [thus] there [would have been] an express delegation of authority to [the SBA] to elucidate a specific provision of the statute by regulation[.]" Altera Corp., 926 F.3d at 1076; *compare* S. 2060 Engrossed in Senate, 103D Congress, 2d Session (August 18, 1994) (emphasis added) ("to any business concern or other person engaged in the production or distribution of any product or service *that is deemed to be obscene*"), *with* § 633(e) (emphasis added) ("to any business concern or other person engaged in the production or distribution of any product or service that has been determined to be obscene *by a court of competent jurisdiction*"). As modified by the House, any discretion that may have been provided to the SBA under the *Senate Bill* to make these decisions of "obscenity" was foreclosed. To bar a loan, legal obscenity must be found, and it must be found by a *court of law* using "prevailing constitutional standards." The Regulation is completely inconsistent with this and must therefore give way.

## IV. THE STATUTORY CANON OF *EXPRESSIO UNIUS* FURTHER DEMONSTRATES THE STATUTE'S LACK OF AMBIGUITY

The statutory interpretation canon of *expressio unius est exclusion alterius* applies to "create[] a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'" Wheeler v. City of Santa Clara, 894 F.3d 1046, 1054 (9th Cir. 2018) (quoting Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881, 885 (9th Cir. 2005) (en banc)). The Statutory Loan Ban Limitation specifically designates persons producing or distributing judicially adjudged obscene entertainment as ineligible to receive SBA assistance. § 633(e). Under this canon, then, the presumption is that all things omitted—for example, constitutionally protected exotic dance, or, really any material *not* "determined to be obscene by a court of competent jurisdiction"—are to be excluded from the "[p]rohibition on provision of assistance"—meaning any product or service *not* judicially adjudged "obscene" is

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

presumed *eligible* for SBA loans. § 633(e).

The Supreme Court has "repeatedly" held that this canon is strongest "when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." <u>Barnhart v. Peabody Coal Co.</u>, 537 U.S. 149, 168 (2003) (quoting <u>United States v. Vonn</u>, 535 U.S. 55, 65 (2002)). Here, out of all the types of sexual expression Congress could have excluded, Congress chose to exclude adjudged obscene expression knowing full well that the term "obscene" invokes a "cluster of ideas;" *i.e*., the three part test of obscenity found in the <u>Miller</u> Test, discussed, *infra*.

This canon makes clear that by specifically excluding only businesses engaged in "the production or distribution" of judicially adjudged obscene expression, Congress left all others (those engaged in *constitutionally protected* speech and conduct) eligible.  Further, the Statutory Loan Ban Limitation is the only place in the SBA's enabling act, 15 U.S.C. §§ 631 *et seq*, that discusses obscenity. Thus, when this canon is applied and the Statutory Loan Ban Limitation is read in context, it becomes even clearer that Congress has spoken directly to the issue and left no room for the SBA's discretion.

## V.    CONGRESS KNEW OF THE "CLUSTER OF IDEAS" THE TERM "OBSCENE" CARRIES WHEN IT DRAFTED THE STATUTORY LOAN BAN LIMITATION, AND THE SBA'S VARIOUS OPERATIONALIZATIONS OF "PRURIENT" IN THESE LAWSUITS ARE NOT THEM

"[W]here Congress borrows terms of art . . . it presumably knows and adopts the cluster of ideas that were attached to each borrowed word . . . and the meaning its use will convey to the judicial mind unless otherwise instructed." <u>Morissette v. United States</u>, 342 U.S. 246, 263 (1952). Here, when Congress specifies a prerequisite adjudication of obscenity, it clearly contemplated application (by a *court*) of each and every element of the <u>Miller</u> Test utilizing the standards and definitions adopted by the Supreme court; not, respectfully, a bastardization of one component of

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

- 13 -

CASE NO. 3:20-CV-03982

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

one of the three prongs of <u>Miller</u> (*see* further discussion, *infra*).

First, as discussed, *supra*, the Congressional Record clearly states that Congress chose the "Supreme Court's definition of obscenity . . . under the prevailing constitutional standards in order for the ban to apply." H.R. CONF. REP. 103-824, 54, 1994 U.S.C.C.A.N. 3436, 3455; *see also, e.g.* <u>Id.</u>; S. REP. 103-332, 23-24, 1994 U.S.C.C.A.N. 3407, 3431 (the "Administration is not authorized to provide any assistance to those engaged in 'obscene' businesses . . . *as defined by the U.S. Supreme Court*") (emphasis added). As "defined by the U.S. Supreme Court" in <u>Miller</u>, an obscenity determination requires evaluation of *three test elements*; prurience being only one of them. *See* fn.5, *supra*. Second, the Federal Register acknowledges in the SBA's initial adoption of the "prurient sexual nature" regulation that the <u>Miller</u> Test is the applicable standard for finding obscenity, and the SBA therefore has no authority whatsoever to adopt a definition of a component of that test that is found nowhere in the jurisprudence of this country (let alone in <u>Miller</u>). Third, the SBA has *specifically eschewed* the one and only definition of "prurience" as adopted by the Supreme Court for an obscenity determination ("shameful or morbid," and "unhealthy" interest in sex).

Congress "borrowed a term of art;" the <u>Miller</u> Test of obscenity. It is not for the SBA to ignore that and produce its own lower (and vague) standards to determine eligibility.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

- 14 -                                                                CASE NO. 3:20-CV-03982

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1   Dated: August 6, 2020                    LONG & LEVIT LLP

2

3                                            By: /s/ Douglas J. Melton
                                                DOUGLAS J. MELTON
4                                               SHANE M. CAHILL
                                                Attorneys for Plaintiffs Deja Vu-San
5                                               Francisco, LLC; Bijou-Century, LLC; San
                                                Francisco Garden of Eden, LLC; Deja Vu
6                                               Showgirls of San Francisco, LLC; Gold Club-
                                                SF, LLC; Deja Vu Colorado Springs, Inc.;
7                                               Rouge Portland, LLC; Deja Vu Spokane, Inc.;
                                                Dreamgirls of Lake City, LLC; Deja Vu
8                                               Seattle, LLC; Deja Vu Lake City, Inc.;
                                                Dreamgirls of Tacoma, LLC; and Dreamgirls
9                                               of Seattle, LLC.

10                                           SHAFER & ASSOCIATES, P.C.

11

12                                           By: /s/ Bradley J. Shafer
                                                BRADLEY J. SHAFER (MI P36604)*
13                                              brad@bradshaferlaw.com
                                                MATTHEW J. HOFFER (MI P70495)*
14                                              matt@bradshaferlaw.com
                                                ZACHARY M. YOUNGSMA (MI P84148)*
15                                              zack@bradshaferlaw.com
                                                SHAFER & ASSOCIATES, P.C.
16                                              3800 Capital City Boulevard, Suite 2
                                                Lansing, MI 48906
17                                              (517) 886-6560

18                                              *ADMISSION PRO HAC VICE PENDING
                                                Attorneys for All Plaintiffs
19

20

21       Plaintiffs' Supplemental Brief 4841-2676-7815 v.1.docx
22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104
(415) 397-2222

- 15 -                      CASE NO. 3:20-CV-03982

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION