Douglas J. Melton, Bar No. 161353
Shane M. Cahill, Bar No. 227972
LONG & LEVIT LLP
dmelton@longlevit.com
scahill@longlevit.com
465 California Street, 5th Floor
San Francisco, California 94104
Telephone: (415) 397-2222
Facsimile: (415) 397-6392

ATTORNEYS FOR ALL PLAINTIFFS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DEJA VU-SAN FRANCISCO, LLC; BIJOU-CENTURY, LLC; SAN FRANCISCO GARDEN OF EDEN, LLC; DEJA VU SHOWGIRLS OF SAN FRANCISCO, LLC; GOLD CLUB-SF, LLC; DEJA VU COLORADO SPRINGS, INC.; ROUGE PORTLAND, LLC; DEJA VU SPOKANE, INC.; DREAMGIRLS OF LAKE CITY, LLC; DEJA VU SEATTLE, LLC; DEJA VU LAKE CITY, INC.; DREAMGIRLS OF TACOMA, LLC; DREAMGIRLS OF SEATTLE, LLC; SAW ENTERTAINMENT, LTD; AND BT CALIFORNIA, LLC,<br><br>Plaintiffs,<br>v.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION; JOVITA CARRANZA, ADMINISTRATOR OF THE SMALL BUSINESS ADMINISTRATION, IN HER OFFICIAL CAPACITY; AND THE UNITED STATES OF AMERICA,<br>Defendants.<br><br>Defendants. | Case No. 3:20-cv-03982<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: August 27, 2020<br>Time: 9:30 a.m.<br>Courtroom: B − 15th Floor<br>Judge: Hon. Magistrate Laurel Beeler |

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 3

    I.    SECTION 633(E) LEAVES NO ROOM FOR FURTHER SBA REGULATION ..... 3

    II.   THE SBA'S INTERPRETATION OF ITS BROAD POWERS WOULD CREATE AN UNCONSTITUTIONAL DELEGATION OF POWER OUT OF ITS ENABLING ACT ........................................................................................................ 8

    III.  THE LEGISLATIVE HISTORY MUST BE CONSIDERED ................................... 10

    IV.  EVEN CONGRESS RECOGNIZED THE SBA'S 'PUBLIC INTEREST' MANDATE WAS NOT CARTE BLANC TO EXCLUDE AN BUSINESS IT DEEMED APPROPRIATE ........................................................................................ 11

CONCLUSION ........................................................................................................................ 12

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

- ii -    CASE NO. 3:20-CV-03982

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**CASES**

Aid Ass'n for Lutherans v. U.S. Postal Serv.
    321 F.3d 1166 (D.C. Cir. 2003) .................................................................................... 4

Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue
    926 F.3d 1061 (9th Cir. 2019) ........................................................................... 3, 10, 11

Am. Bar Ass'n v. F.T.C.
    430 F.3d 457 (D.C. Cir. 2005) ...................................................................................... 4

Am. Petroleum Inst. V. EPA
    52 F.3d 1113 (D.C. Cir. 1995) ...................................................................................... 4

Am. Trucking Associations, Inc. v. U.S. E.P.A.
    175 F.3d 1027 (D.C. Cir. 1999) .................................................................................... 9

Anderson v. Yungkau
    329 U.S. 482 (1947) ..................................................................................................... 6

Burns v. United States
    501 U.S. 129 (1991) ..................................................................................................... 4

California Sea Urchin Comm'n v. Bean
    883 F.3d 1173 (9th Cir.), as amended (Apr. 18, 2018) ................................................ 8

Chamber of Commerce of U.S. v. N.L.R.B.
    721 F.3d 152 (4th Cir. 2013) ........................................................................................ 4

Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.
    467 U.S. 837 (1984) ............................................................................................. passim

City & Cty. of San Francisco v. U.S. Dep't of Transp.
    796 F.3d 993 (9th Cir. 2015) ........................................................................................ 7

City of Arlington, Tex. v. F.C.C.
    569 U.S. 290 (2013) ..................................................................................................... 5

Coffelt v. Fawkes
    765 F.3d 197 (3d Cir. 2014) ......................................................................................... 4

E. Bay Sanctuary Covenant v. Barr
    385 F. Supp. 3d 922 (N.D. Cal.), order reinstated, 391 F. Supp. 3d 974 (N.D. Cal. 2019) 10

E. Bay Sanctuary Covenant v. Barr
    964 F.3d 832, 845 (9th Cir. 2020) .............................................................................. 11

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

- iii -    CASE NO. 3:20-CV-03982

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Entergy Corp. v. Riverkeeper, Inc.
 556 U.S. 208 (2009) .................................................................................................... 3

Heavenly Hana LLC v. Hotel Union & Hotel Indus. of Hawaii Pension Plan
 891 F.3d 839 (9th Cir. 2018) ...................................................................................... 10

King v. Burwell
 576 U.S. 473 (2015) ..................................................................................................... 7

Lin-Zheng v. Att'y Gen.
 557 F.3d 147 (3d Cir. 2009) ......................................................................................... 4

Marchese v. Shearson Hayden Stone, Inc.
 822 F.2d 876 (9th Cir. 1987) ...................................................................................... 12

Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n
 453 U.S. 1 (1981) .................................................................................................. 7, 10

Mistretta v. United States
 488 U.S. 361 (1989) ..................................................................................................... 8

Moralez v. Perdue
 770 Fed. App'x 348 (9th Cir. 2019) ........................................................................... 12

Moralez v. Vilsack
 No. 1:16-CV-0282, 2016 WL 7404756 (E.D. Cal. Dec. 21, 2016) ............................ 12

Moran v. Screening Pros, LLC
 943 F.3d 1175 (9th Cir. 2019) ...................................................................................... 4

Morissette v. United States
 342 U.S. 246 (1952) ..................................................................................................... 6

Oregon Rest. & Lodging Ass'n v. Perez
 843 F.3d 355 (9th Cir. 2016) ........................................................................................ 3

Rainsong Co. v. F.E.R.C.
 106 F.3d 269 (9th Cir. 1997) ........................................................................................ 7

Resilient Floor Covering Pension Fund v. M & M Installation, Inc.
 No. C08-5561 BZ, 2012 WL 669765 (N.D. Cal. Feb. 29, 2012) ............................... 10

Ry. Labor Executives' Ass'n v. Nat'l Mediation Bd.
 29 F.3d 655 (D.C. Cir.), amended, 38 F.3d 1224 (D.C. Cir. 1994) ........................ 4, 5

Sauer v. U.S. Dep't of Educ.
 668 F.3d 644 (9th Cir. 2012) ........................................................................................ 6

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

SBA v. McClellan
  364 U.S. 446 (1960) ........................................................................................... 8, 9

Sierra Club v. E.P.A.
  311 F.3d 853 (7th Cir. 2002) ................................................................................ 4

State of Ill., Dep't of Pub. Aid v. Schweiker
  707 F.2d 273 (7th Cir. 1983) ................................................................................ 4

State v. Running Wolf
  2020 MT 24, 398 Mont. 403, 457 P.3d 218 ........................................................ 4

Tapia v. United States
  564 U.S. 319 (2011) .............................................................................................. 5

Texas v. United States
  809 F.3d 134 (5th Cir. 2015) ................................................................................ 4

Touby v. United States
  500 U.S. 160 (1991) .............................................................................................. 8

United States v. Booker
  543 U.S. 220 (2005) .............................................................................................. 4

United States v. Kelly
  874 F.3d 1037 (9th Cir. 2017) .............................................................................. 8

United States v. Mead Corp.
  533 U.S. 218 (2001) .............................................................................................. 3

United States v. Rodgers
  461 U.S. 677 (1983) .............................................................................................. 6

Util. Air Regulatory Grp. v. E.P.A.
  573 U.S. 302 (2014) .............................................................................................. 5

Whitman v. Am. Trucking Associations
  531 U.S. 457 (2001) ......................................................................................... 8, 9

**STATUTES**

15 U.S.C. § 631 ............................................................................................... passim

15 U.S.C. § 633 ............................................................................................... passim

15 U.S.C. § 636 ...................................................................................................... 2, 5

15 U.S.C.A. § 9009 ..................................................................................................... 2

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

- v -   CASE NO. 3:20-CV-03982

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

CARES Act, Pub. L. 116-136 ................................................................................................... 2

**OTHER AUTHORITIES**

S. REP. 103-332, 24, 1994 U.S.C.C.A.N. 3407 ................................................................ 11, 12

U.S. Const., art. I, § 1 ................................................................................................................ 9

**RULES**

60 Fed. Reg. 64360 ................................................................................................................... 1

63 Fed. Reg. 46643 ................................................................................................................... 1

85 Fed. Reg. 39066 ................................................................................................................... 7

Media Policy Rule, FR Doc No: 94-17187 ............................................................................ 11

**REGULATIONS**

13 C.F.R. § 123.201(f) (2020) ................................................................................................ 12

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

- vi -    CASE NO. 3:20-CV-03982

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

# INTRODUCTION

At this point in the briefing cycle, the parties are significantly 'into the weeds' on the issues such that a quick look back on how we got here may provide some context. In March of 2020, with the passage of the CARES Act,[1] the SBA, a relatively small agency, was thrust to the forefront of the American recovery efforts having been gifted a treasure trove worth, originally $320 billion (inclusive of Paycheck Protection Program and EIDL funding), which was later increased to nearly three-quarters of a <u>trillion</u> dollars. Its mandate: float the nation's economy through this pandemic. In carrying this out, the SBA dusted off obscure never-before-challenged Regulations and applied them to exclude certain types of businesses from this $679 billion relief package.

Plaintiffs brought this challenge under emergency procedures seeking a small portion of that relief package. On the eve of the parties' preliminary injunction hearing, Plaintiffs uncovered legislative materials that made the dusted-off Regulations the SBA used to deny Plaintiffs' access void *ab initio*.

The SBA defends these regulations largely by confusing its charge to serve the public interest with an affirmative injection of power. It claims that its chief mandate—to act in the public interest—found in its enabling Act, 15 U.S.C. § 631, *et seq.*, passed in 1953, grants it the ability to, in 2020, choose who weathers this pandemic and who does not. Under this interest, it claims in 1994 to have acted solely in the public interest by promulgating the challenged Regulation—neither the proposed rule nor final rule cites any other basis. *See* 60 Fed. Reg. 64360; 63 Fed. Reg. 46643, *et seq.*; [ECF 33, at p. 7-9] (discussing this history). Then, in the midst of a global pandemic, after having been given by Congress an amount greater than some

---

[1] All capitalized terms and phrases herein shall have the same meanings as ascribed to them in Plaintiffs' motion for temporary restraining order and preliminary injunction, [ECF 33], and Plaintiffs' supplemental brief in support of their motion for preliminary injunction, [ECF 67].

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

countries' entire gross domestic product earmarked for economic relief to businesses, the SBA yet claims it is in the "public's interest" to close the relief door on Plaintiffs. Plaintiffs' creditors, employees, food suppliers, beverage suppliers, and the list goes on—who live, work, and pay taxes in the United States but more importantly in *communities* like San Francisco, Seattle, Tacoma, and the like—are cut out because the SBA says the public interest is served. The SBA advocates for this absurd fiction by divorcing its charge to serve the public interest from the statutory aim Congress supplied. With respect to the disaster loan program, Congress instructed the SBA to provide assistance "to the maximum extent possible." 15 U.S.C. § 636(g); *see also* 15 U.S.C.A. § 9009(b) (2020) ("an eligible entity shall be eligible for a loan").

Against this background, in 2020, the year of the pandemic, the SBA resists Congress' clear intent back in 1994 to provide the otherwise unable SBA a means to exclude *certain types* of sexual expression—namely, adjudicated obscene expression. Its justification for so resisting: public interest. To get there, the SBA mischaracterizes the arguments advanced in Plaintiffs' Supplemental Brief, [ECF 67], and desperately seeks to avoid the use of the legislative history of 15 U.S.C. § 631(e), which torpedoes its entire basis for promulgating the Regulation. It microscopically focuses on its 'public interest' mandate at the expense of the remaining mandates found in its enabling Act. It vehemently argues 15 U.S.C. § 633(e) leaves room for it to lower the exclusionary bar from adjudicated obscenity to 'prurience'—a term it refuses to define in this litigation and has defined two separate ways in other litigation.

Congress was unambiguous in 1994: the bar is adjudged obscenity. The Supreme Court had long prior defined obscenity; and any definition of prurience the SBA has advanced to date simply 'ain't it.' Congress was unambiguous in 2020 in its response to the pandemic: spread this pile of cash we just gave you around to "Keep[] American Workers Paid and Employed." CARES Act, Pub. L. 116-136 (noting the Title of Title I thereto). At what point does the SBA's 'public

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

interest' well run dry?

**ARGUMENT**

**I.   SECTION 633(E) LEAVES NO ROOM FOR FURTHER SBA REGULATION**

The Government misunderstands Plaintiffs' point regarding the Statutory Loan Ban Limitation's command. Contrary to the Government's restatement, Plaintiffs arguments are not that the statute "silently meant to compel the SBA to subsidize all other products and services of a prurient sexual nature," [ECF 69, at p. 4], nor do "Plaintiffs ask the Court to accept statutory silence as unambiguous support for their proposed interpretation," [id. at p. 5], rather, Plaintiffs argue that § 633(e) limited the SBA's ability to further regulate on the subject and any silence in the statute supplements and supports Plaintiffs' positions. [*e.g.* ECF 67, at pp. 2, 17].

Such contentions *are* "flip sides of the same coin," [ECF 69, at p. 10], as the Supreme Court recognizes "two very different types of statutory silence." Oregon Rest. & Lodging Ass'n v. Perez, 843 F.3d 355, 360 (9th Cir. 2016) (O'Scannlain, Koziniski, Gould, Tallman, Bybee, Callahan, Bea, M. Smith, Ikuta, N.R. Smith, JJ., dissenting). On one hand, statutory "silence is meant to convey nothing more than a refusal to tie the agency's hands," thus, permitting the agency discretion to regulate. Entergy Corp. v. Riverkeeper, Inc., 556 U.S. 208, 222 (2009). On the other, however, "**statutory silence, when viewed in context, is best interpreted as limiting the agency discretion**," id. at 223 (emphasis added), meaning, the agency may not further regulate because "Congress has directly spoken to the precise question at issue" Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842 (1984), such that there is not an "explicit[] . . . gap [left] for an agency to fill[.]" Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue, 926 F.3d 1061, 1076 (9th Cir. 2019), cert. denied sub nom. Altera Corp. & Subsidiaries v. CIR, No. 19-1009, 2020 WL 3405861 (U.S. June 22, 2020) (quoting United States v. Mead Corp., 533 U.S. 218, 226 (2001)). The SBA's brief left out the second half of the Entergy Court's language.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

It is the second type of 'occupying the field' (to borrow a preemption term)—meaning no room for agency regulation—silence that supports Plaintiffs' position and upon which they argue. [ECF 67, at p. 10]. Contrary to the Government's contention, it is widely accepted that silence does not *per se* constitute a gap for the agency to fill.[2] Neither is it true that all silence compels movement to Chevron step two.[3] Rather, as is the case here, "[w]here Congress has established a

---

[2] *E.g.*, Burns v. United States, 501 U.S. 129, 136 (1991) abrogated on other grounds by United States v. Booker, 543 U.S. 220 (2005) ("Congress' silence signifies merely an expectation that nothing more need be said in order to effectuate the relevant legislative objective."); Texas v. United States, 809 F.3d 134, 186 (5th Cir. 2015), as revised (Nov. 25, 2015) (emphasis added) (noting the "dissent repeatedly claims constitutional silence has conferred on DHS the power to act . . . to the contrary, *any such inaction cannot create such power*"); Coffelt v. Fawkes, 765 F.3d 197, 202 (3d Cir. 2014) (emphasis added) (quoting Lin-Zheng v. Att'y Gen., 557 F.3d 147, 156 (3d Cir. 2009) (en banc)) ("Even where a statute is 'silent' on the question at issue, such silence '*does not confer gap-filling power on an agency* unless the question is in fact a gap—an *ambiguity* tied up with the provisions of the statute."); Chamber of Commerce of U.S. v. N.L.R.B., 721 F.3d 152, 160 (4th Cir. 2013) (emphasis in original) (quoting Am. Bar Ass'n v. F.T.C., 430 F.3d 457, 468 (D.C. Cir. 2005) ("[W]e do not presume a delegation of power simply from the absence of an express withholding of power . . . *Chevron*'s second step is [not] implicated 'any time a statute does not expressly *negate* the existence of a claimed administrative power.'"); Aid Ass'n for Lutherans v. U.S. Postal Serv., 321 F.3d 1166, 1174 (D.C. Cir. 2003) (emphasis added) ("[T]he Postal Service's position seems to be that the disputed regulations are permissible because the statute does not expressly foreclose the construction advanced by the agency. *We reject this position as entirely untenable under well-established case law*."); Sierra Club v. E.P.A., 311 F.3d 853, 861 (7th Cir. 2002) (quoting Am. Petroleum Inst. V. EPA, 52 F.3d 1113, 1120 (D.C. Cir. 1995) ("Courts '*will not presume* a delegation of power based solely on the fact that there is not an express withholding of such power.'"); State v. Running Wolf, 2020 MT 24, ¶ 25, 398 Mont. 403, 416, 457 P.3d 218, 225 (quoting Burns, 501 U.S. at 136) ("An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent."); *see also* Burns, 501 U.S. at 136 abrogated on other grounds by Booker, 543 U.S. 220 (2005) ("An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent."); Moran v. Screening Pros, LLC, 943 F.3d 1175, 1185 (9th Cir. 2019) (quoting Burns, 501 U.S. at 136) ("[W]e heed the Court's admonition that 'not every silence is pregnant,' and Congress's silence may merely reflect its belief that the plain language suffices."); State of Ill., Dep't of Pub. Aid v. Schweiker, 707 F.2d 273, 277 (7th Cir. 1983) ("Not every silence is pregnant[.]").

[3] *E.g.* Am. Bar Ass'n v. F.T.C., 430 F.3d 457, 468 (D.C. Cir. 2005) (quoting Ry. Labor Executives' Ass'n v. Nat'l Mediation Bd., 29 F.3d 655, 671 (D.C. Cir.), amended, 38 F.3d 1224 (D.C. Cir. 1994) (emphasis in original) ("As we have often cautioned, 'to suggest . . . that Chevron step two is implicated any time a statute does not expressly *negate* the existence of a claimed administrative power … is both flatly unfaithful to the principles of administrative law

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

clear line, the agency cannot go beyond it[.]" City of Arlington, Tex. v. F.C.C., 569 U.S. 290, 307 (2013).

Congress' clear line here was: exclusion of sexual expression from SBA funding requires a judicially adjudicated obscenity charge, the SBA cannot 'go beyond that' by lowering the bar to the definitionally fickle 'prurience' bar. This makes sense as Congress is not required to draft legislation in "'thou shalt not' terms"; to contend as such "is both flatly unfaithful to the principles of administrative law . . . and refuted by precedent." Ry. Labor Executives' Ass'n, 29 F.3d at 671, amended, 38 F.3d 1224 (D.C. Cir. 1994).[4] Nothing here is to argue the SBA is compelled to make loans, [ECF 69, at p. 3]; rather, § 633(e) simply forbids the SBA from lowering the exclusionary bar from adjudged obscenity to prurience by having left no gap for the SBA to fill. This is no more acute than when the statute is unambiguous, [ECF 69, at p. 1] ("the express terms of § 633(e) simply and straightforwardly . . ."), for "[a]n agency has no power to 'tailor' legislation to bureaucratic policy goal by rewriting unambiguous statutory terms." Util. Air Regulatory Grp. v. E.P.A., 573 U.S. 302, 325 (2014). Section 633(e) unambiguously set the sexual expression exclusionary bar at adjudged obscenity; the SBA cannot retool that to fit its self-serving 'public interest' goal.

The context of the Small Business Act, 15 U.S.C. § 631, *et seq.*, (hereafter, the "Act") supports this conclusion and a rejection of the first type of silence as well. Throughout the Act, Congress chose its words carefully. In various places, it used mandatory language curtailing the SBA's ability to regulate, while in others it used permissive language thereby giving the SBA a

---

… and refuted by precedent.'"); Chamber of Commerce of U.S. v. N.L.R.B., 721 F.3d 152, 160 (4th Cir. 2013) (same).

[4] *See* Tapia v. United States, 564 U.S. 319, 328 (2011) (noting when Congress does not "insert[] a 'thou shalt not' or equivalent phrase," Courts, when "interpret[ing] a statute cannot allow the perfect to be the enemy of the merely excellent").

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

gap to fill.[5] The Statutory Loan Ban Limitation falls into the former category as it uses mandatory language—"the Administration *is prohibited* . . . that has been determined to be *obscene*," 15 U.S.C. § 633(e) (emphasis added)—to limit the SBA's discretion. This precludes application of the first type of silence—meaning the Regulation does not pass go proceeding to Chevron step two nor does the Statutory Loan Ban Limitation's silence permit agency discretion; it simply writes the standard for the SBA apply. This conclusion is even clearer when read with the reminder that "where Congress borrows terms of art . . . it presumably knows and adopts the cluster of ideas that were attached to each borrowed word . . . and the meaning its use will convey to the judicial mind unless otherwise instructed." Morissette v. United States, 342 U.S. 246, 263 (1952). By deliberately choosing "obscene" coupled with the deliberate choice of words throughout the Act, Congress made clear its intent through the Statutory Loan Ban Limitation to unambiguously *prohibit* SBA loans *only* to businesses that have been the subject of a *judicial adjudication of obscenity*, which does <u>*not*</u> *permit* the SBA to regulate a lower fluctuating 'prurience' exclusion.

---

[5] *Compare, e.g.*, 15 U.S.C. § 636(a)(1)(B) (emphasis added) (regarding criminal background checks: "the Administrator *may* verify the applicant's criminal background . . ."); § 636(a)(1)(C) (emphasis added) ("the Administrator *may* not guarantee a loan . . . if the sole purpose for requesting the guarantee is to allow the lender to exceed the legal lending limit of the debtor"); § 636(a)(2)(E) (referring to "participation in international trade loans," "the Administration may not exceed 90 percent"); § 636(b)(3)(B) ("The administration may make such disaster loans . . . to assist a small business concern . . ."), *with* § 636(2)(F) (referring to "participation in the Paycheck Protection Program," "the participation by the Administration shall be 100 percent); § 636(b)(3)(D) ("Any loan or guarantee extended pursuant to this paragraph shall be made at the same interest rate as economic injury loans . . ."); § 633(g)(2) (a "Business Opportunity Specialist . . . shall have a Level I Federal Acquisition Certification in Contracting . . ."); *see also* Sauer v. U.S. Dep't of Educ., 668 F.3d 644, 651 (9th Cir. 2012) (first quoting United States v. Rodgers, 461 U.S. 677, 706 (1983), then quoting Anderson v. Yungkau, 329 U.S. 482, 485 (1947)) ("As the Supreme Court has explained, '[t]he word 'may,' when used in a statute, usually implies some degree of discretion,' especially 'when the same [provision] uses both 'may' and 'shall,'' in which case, 'the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory[.]'"); *see also* [ECF 69, at pp. 7-8] (though reaching the wrong conclusion, the Government provides a nice colloquy on this point; however, the Government fails to note the mandatory and final language in § 633(e)).

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

Likewise, the Statutory Loan Ban Limitation's legislative history complements this interpretation. The SBA's strong desire to avoid the legislative history here is telling as it completely scuttles the SBA's arguments. The legislative history is not an ignorable piece of the statutory interpretation mosaic as the Government so contends. Rather, it is used "in addition" to examining "the words in their context and with a view to their place in the overall statutory scheme," "in order to ascertain *congressional intent*." City & Cty. of San Francisco v. U.S. Dep't of Transp., 796 F.3d 993, 998 (9th Cir. 2015) (first quoting King v. Burwell, 576 U.S. 473, 486 (2015), then quoting Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 13 (1981)). The SBA's interpretation is "[in]compatible with Congress' clear intent" and "must [be] reject[ed]," Rainsong Co. v. F.E.R.C., 106 F.3d 269, 273 (9th Cir. 1997); Chevron, 467 U.S. at 843, as it runs counter to the plain text and context of the Statutory Loan Ban Limitation, the emanations from the silence therein, and the legislative history. All of which points to Plaintiffs' interpretation.

Finally, the SBA emphasizes their call to regulate "in the public interest," *e.g.* [ECF 69, at pp. 1, 7-8], while conveniently neglecting its other mandates, namely to "aid, counsel, assist, and protect, *insofar as is possible*, the interests of small-business concerns," 15 U.S.C. § 631(a). Myopically focusing on the vague "public interest" would, presumably, permit the SBA to regulate anything it saw fit,[6] which, as discussed immediately below, would violate the separation of powers principle that runs throughout the United States Constitution.

---

[6] Like, for example, sitting atop a nearly ¾ of a trillion dollar pandemic relief fund and selecting which businesses are worthy of its receipt and which are not by amending some of its existing regulations but not others. *See, e.g.*, [ECF 54, at p. 7] (discussing the SBA's waiver of its Affiliation Rules for faith based organizations; 85 Fed. Reg. 39066 (permitting commercial fishing vessels to qualify for a PPP loan on the basis that the owner is in a "joint venture or partnership for the purposes of the PPP" with the independent contractor fishermen).

- 7 -     CASE NO. 3:20-CV-03982

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

## II. THE SBA'S INTERPRETATION OF ITS BROAD POWERS WOULD CREATE AN UNCONSTITUTIONAL DELEGATION OF POWER OUT OF ITS ENABLING ACT

The reaches of the SBA's proposed 'we have broad authority to regulate therefore we can lower the bar from adjudged obscene material to an undefinable prurience standard,' [*e.g.* ECF 67 at pp. 13, 15], runs afoul of the non-delegation doctrine. If the SBA had its way, its "extraordinarily broad powers," SBA v. McClellan, 364 U.S. 446, 447 (1960), would permit it to pick and choose winners and losers during a global pandemic despite the Act's "intelligible principle[s] for promulgating associated regulations." California Sea Urchin Comm'n v. Bean, 883 F.3d 1173, 1184 (9th Cir.), as amended (Apr. 18, 2018) (citing Whitman v. Am. Trucking Associations, 531 U.S. 457, 472 (2001)); 15 U.S.C. § 631 *et seq*.

"The non-delegation doctrine" prevents the SBA's interpretation as it "provides that 'Congress may not constitutionally delegate its legislative power to another branch of Government.'" United States v. Kelly, 874 F.3d 1037, 1047 (9th Cir. 2017) (quoting Touby v. United States, 500 U.S. 160, 165 (1991)); *see also* Mistretta v. United States, 488 U.S. 361, 372-73 (1989). "[T]o survive constitutional scrutiny under the non-delegation doctrine a statute need provide only an intelligible principle for promulgating associated regulations." Bean, 883 F.3d at 1184; Touby, 500 U.S. at 165. To be clear, Plaintiffs do not allege the Statutory Loan Ban Limitation or the SBA's enabling Act violate the non-delegation doctrine; rather, Plaintiffs contend the SBA's current interpretation of its 'public interest' authority in promulgating the Regulation would cause SBA's enabling Act and the Statutory Loan Ban Limitation to be violative of this doctrine.

Here, "Congress has given substantial guidance to the agency." Bean, 883 F.3d at 1184. The SBA's enabling act instructs it to, among other things:

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

- "In administering the disaster loan program authorized by section 636 of this title, *to the maximum extent possible*, the Administration *shall* provide *assistance* and counseling to disaster victims . . ." 15 U.S.C. § 631(g) (emphasis added);

- "aid and assist victims of floods and other *catastrophes*" 15 U.S.C. § 631(e) (emphasis added);

- "aid, counsel, assist, and protect, *insofar as is possible*, the interests of small-business concerns" 15 U.S.C. § 631(a) (emphasis added);

- "maintain and strengthen the overall economy of the Nation" Id.;

- "utilize[] [enumerated assistance programs] to assist in the establishment, preservation, and strengthening of small business concerns . . . with special attention to small business concerns located in urban or rural areas" 15 U.S.C. § 631(d); and

- "establish general policies . . . which shall govern the granting and denial of applications for financial assistance by the Administration" 15 U.S.C. § 633(d).

"[T]o accomplish these important objectives," "[t]he Administration was given extraordinarily broad powers[.]" McClellan, 364 U.S. at 447. Interpretation and use of such powers, however, cannot, at least constitutionally, be so broad so as to render their delegation violative of the constitutional mandate that "[a]ll legislative Powers herein granted [] be vested in a Congress of the United States." U.S. Const., art. I, § 1.[7] Stated differently, the SBA's regulation pursuant to those 'broad powers' remains subject to the intelligible principles outlined in the SBA's enabling

---

[7] At least one court has held an agency's "interpretation (but not the statute itself) violated the nondelegation doctrine." Whitman, 531 U.S. at 472. The lower court concluded the agency could cure the lack of an intelligible principle and remanded for the agency to do so. Am. Trucking Associations, Inc. v. U.S. E.P.A., 175 F.3d 1027, 1033 (D.C. Cir. 1999). Though the Supreme Court ultimately overturned the D.C. Circuit's, it did so on the grounds that the statute did actually lay down an intelligible principle. Whiteman, 531 U.S. at 473. It therefore remains permissible to strike down an agency interpretation that runs afoul of the intelligible principle laid out in the statue.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

Act—the SBA is not a tiny super-legislature on all things small business with powers greater than Congress. The Regulation takes more rope than Congress gave by lowering the Statutory Loan Ban Limitation's adjudged obscenity standard to prurience and pulls its mandate, "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to . . . maintain and strengthen the overall economy of the nation," 15 U.S.C. § 631(a), around to the forbidden side of the constitutional non-delegation doctrine hill.

### III. THE LEGISLATIVE HISTORY MUST BE CONSIDERED

The SBA's proffered interpretation necessitates ignoring the legislative history of the Statutory Loan Ban Limitation as the two directly conflict. As the Supreme Court has long recognized, when conducting statutory interpretation, after a "look . . . to the statutory language," the Court "[t]hen [] review[s] the legislative history and other traditional aids of statutory interpretation to determine congressional intent." Middlesex, 453 U.S. 1, 13 (1981); Chevron, 467 U.S. 837, 843 n.9 (1984) ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that interpretation is the law and must be given effect."). The Ninth Circuit recently reaffirmed that "[u]nder Chevron, we first apply the traditional rules of statutory construction, [and] . . . [i]n addition, we examine the legislative history . . . in order to ascertain congressional intent." Altera Corp., 926 F.3d at 1075 (citing Middlesex, 453 U.S. at 13); Id. at 1087 (emphasis added) ("In light of the statute's plain text *and the legislative history . . . .*"); Heavenly Hana LLC v. Hotel Union & Hotel Indus. of Hawaii Pension Plan, 891 F.3d 839, 844 (9th Cir. 2018) (emphasis added) ("*In addition, we examine the legislative history . . . in order to ascertain congressional intent*").

*This Court*, just over a year ago, conducted a Chevron analysis and succinctly stated the legislative history's role to play in the Chevron step one analysis: "***Consideration of 'the legislative history***, the statutory structure, and other traditional aids of statutory interpretation;

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

*supplements this plain text analysis*." E. Bay Sanctuary Covenant v. Barr ("East Bay"), 385 F. Supp. 3d 922, 938 (N.D. Cal.), order reinstated, 391 F. Supp. 3d 974 (N.D. Cal. 2019), **aff'd, 964 F.3d 832 (9th Cir. 2020), and aff'd, 964 F.3d 832 (9th Cir. 2020)** (emphasis added); *see also* Resilient Floor Covering Pension Fund v. M & M Installation, Inc., No. C08-5561 BZ, 2012 WL 669765, at *2 (N.D. Cal. Feb. 29, 2012) (same). When affirming the East Bay decision, the Ninth Circuit noted "[t]he *legislative history* of [the statute at issue] emphasizes the importance Congress attached to the constraints on the Attorney General's discretion," thereby, affirming the use of legislative history at step one of a Chevron analysis. E. Bay Sanctuary Covenant v. Barr, 964 F.3d 832, 845, 849 (9th Cir. 2020) (emphasis added). Therefore, and contrary to the Government's assertions, the legislative history of the Statutory Loan Ban Limitation is properly considered in this jurisdiction to supplement the plain text analysis.[8]

## IV. EVEN CONGRESS RECOGNIZED THE SBA'S 'PUBLIC INTEREST' MANDATE WAS NOT *CARTE BLANC* TO EXCLUDE A BUSINESS IT DEEMED APPROPRIATE

The SBA contends it "had authority . . . to refuse *or to make* loans to any type of businesses . . . it deemed appropriate in the public interest." [ECF 69, at p. 10] (emphasis in original). Aside from the non-delegation issues such a broad read of its enabling act raises, discussed *supra,* the SBA's boss, the Congress, *disagreed*. In black and white, the Senate Report specifically noted that § 633(e) "was offered in response to the Administration's recent repeal of its 'opinion molder rule'" and that the "blanket repeal of the rule would allow businesses involved in the production and distribution of obscene products and services to seek Administration support and that *the agency would have no means by which to deny such loans or other assistance*." S. REP. 103-332, 24, 1994 U.S.C.C.A.N. 3407, 3431 (emphasis added). Debunking

---

[8] Moreover, Courts cannot be "force[d] . . . to ignore legislative action and express legislative history" at any point. Altera, 926 F.3d at 1079.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

the Government's contention requires only a cursory review of the timeline of events. The SBA repealed its opinion molder rule on July 15, 1994. Media Policy Rule, FR Doc No: 94-17187 (available online, here: https://www.federalregister.gov/documents/1994/07/15/94-17187/media-policy-rule). The Senate published its Report on August 10, 1994 [ECF 58-1, at p. 20]. The SBA proposed its first 'prurience' regulation on December 15, 1995. [ECF 33, at p. 7]; 60 Fed. Reg. 64356.

Given that the SBA's beloved public interest delegation was around since at least the 1965 reorganization, [ECF 69, at p. 7 n.5], and the Senate Report was made in 1994, less than a month after the SBA's repeal of the Opinion Molder Rule, the obvious conclusion is that the Senate did not consider the public interest a "means by which to deny such loans or other assistance" to "businesses involved in the production and distribution of obscene products" that seek SBA assistance. S. REP. 103-332, 24, 1994 U.S.C.C.A.N. 3407, 3431. Especially since Congress is presumed to be aware of existing regulatory and statutory structure when it legislates on a subject-matter. Moralez v. Vilsack, No. 1:16-CV-0282-AWI-BAM, 2016 WL 7404756, at *11 (E.D. Cal. Dec. 21, 2016), aff'd sub nom. Moralez v. Perdue, 770 F. App'x 348 (9th Cir. 2019) (quoting Marchese v. Shearson Hayden Stone, Inc., 822 F.2d 876, 878 (9th Cir. 1987)). The SBA's position is untenable.

Finally, the congressional remarks in the legislative history of § 633(e) are absolutely entitled to weight as they were made in contemplation of passing that particular provision mere months before passing it. It matters not that the remarks were made after the original enactment of the Small Business Act.

## **CONCLUSION**

Plaintiffs respectfully request this Honorable Court issue a preliminary injunction barring enforcement of 13 C.F.R. § 123.201(f) (2020). Moreover, this Court should also order the


- 12 -   CASE NO. 3:20-CV-03982

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

Defendants to approve Plaintiffs' EIDL applications if they are otherwise eligible but for the enforcement of the Regulation and to immediately notify the SBA's Application Processing Department and/or local field offices to discontinue using the aforementioned Regulation as criteria for determining the EIDL applications. Finally, no bond should be required.

Respectfully submitted,

Dated: August 20, 2020          LONG & LEVIT LLP

By: */s/ Douglas J. Melton*
    DOUGLAS J. MELTON
    SHANE M. CAHILL
    Attorneys for Plaintiffs Deja Vu-San Francisco, LLC; Bijou-Century, LLC; San Francisco Garden of Eden, LLC; Deja Vu Showgirls of San Francisco, LLC; Gold Club-SF, LLC; Deja Vu Colorado Springs, Inc.; Rouge Portland, LLC; Deja Vu Spokane, Inc.; Dreamgirls of Lake City, LLC; Deja Vu Seattle, LLC; Deja Vu Lake City, Inc.; Dreamgirls of Tacoma, LLC; and Dreamgirls of Seattle, LLC.

SHAFER & ASSOCIATES, P.C.

By: */s/ Matthew J. Hoffer*
    DOUGLAS J. MELTON
    BRADLEY J. SHAFER (MI P36604)*
    brad@bradshaferlaw.com
    MATTHEW J. HOFFER (MI P70495)*
    matt@bradshaferlaw.com
    ZACHARY M. YOUNGSMA (MI P84148)*
    zack@bradshaferlaw.com
    SHAFER & ASSOCIATES, P.C.
    3800 Capital City Boulevard, Suite 2
    Lansing, MI 48906
    (517) 886-6560

    *ADMISSION PRO HAC VICE PENDING
    Attorneys for All Plaintiffs

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

## CERTIFICATE OF SERVICE

I certify that on August 20, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Douglas J. Melton*

Supplemental Reply Brief - FINAL 4810-9168-9928 v.1.DOCX

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104
(415) 397-2222

- 14 -   CASE NO. 3:20-CV-03982

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION